NON-CONFIDENTIAL VERSION

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| _____ )<br><br>JIANGSU SENMAO BAMBOO AND WOOD )<br>INDUSTRY CO., LTD., *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>)<br>)<br>Defendant. )<br>)<br>AMERICAN MANUFACTURERS OF )<br>MULTILAYERED WOOD FLOORING )<br>)<br>Defendant-Intervenors )<br>_____ ) | Consol. Court No. 20-03885<br><br>**NON-CONFIDENTIAL VERSION**<br>Business Proprietary Information<br>removed at pages 2-4, 11, and 13 |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Jeffrey S. Neeley
Stephen W. Brophy
Husch Blackwell, LLP

750 17th St., N.W.
Suite 900
Washington, D.C. 20006
(202) 378-2357
Jeffrey.Neeley@huschblackwell.com
Stephen.Brophy@huschblackwell.com

Dated:  May 14, 2021

NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

I.    STATEMENT PURSUANT TO RULE 56.2 ................................................................ 1

   A.   The Administrative Determination Under Review ...................................... 1

   B.   Issues Presented ........................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 2

III.  SUMMARY OF ARGUMENT ........................................................................... 5

IV.   STANDARD OF REVIEW ................................................................................ 7

V.    ARGUMENT ................................................................................................... 9

   A.   Commerce's Selection of Respondents for Individual Examination was Not
   Supported by Substantial Evidence or Otherwise in Accordance with Law ...................... 9

   B.   The Margin Commerce Assigned to Separate Rate Respondents was Not
   Supported by Substantial Evidence or Otherwise in Accordance with Law ................... 14

VI.   CONCLUSION ............................................................................................... 16

NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

## Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States,* 36 C.I.T. 419, 422 (2012) ................. 6, 11

*Al Tech Specialty Steel Corp. v. United States*, 28 C.I.T. 1468, 1504 (CIT 2004) ........................ 8

*Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016) ....... 6, 15

*Beijing Tianhai Indus. Co. v. United States,* 52 F. Supp. 3d. 1351, 1361 (Ct. Int'l Trade 2015) ... 8

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) ..................................... 7

*Camp v. Pitts,* 411 U.S. 138, 142–43 (1973) .................................................................................. 8

*Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017) ........ 7, 15

*Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). ............. 8

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ................................................................ 7

*Huaiyin Foreign Trade Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) ................ 7

*Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1327 n.8 (Ct. Int'l Trade 2015) ............... 9, 13

*In re Murchison*, 349 U.S. 133, 136 (1955) ................................................................................... 8

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1347 (Ct. Int'l Trade 2018) ........................................................................................................................... 15

*Melamine Chemicals, Inc. v. United States*, 5 CIT 116, 122, 561 F. Supp. 458, 463 (1983) ......... 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) ................. 8

*Nat'l Knitwear & Sportswear Ass'n v. United States,* 779 F.Supp. 1364, 1373–74, 15 C.I.T. 548, 559 (1991) .................................................................................................................................. 7, 15

*NMB Singapore Ltd. v. United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009) .............................. 8

*Pakfood Pub. Co. v. United States,* 35 C.I.T. 60, 73, aff'd, 453 F. App'x 986 (Fed. Cir. 2011) ... 11

*Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1362 (Ct. Int'l Trade 2018). 15

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) ............................... 8

NON-CONFIDENTIAL VERSION

*Sahaviriya Steel Indus. Pub. Co.* v. *United States,* 649 F.3d 1371, 1375 (Fed. Cir. 2011) ............ 8

*Shanxi Hairui Trade Co. v. United States*, No. 19-00072, 2021 WL 1291671, at *10 (Ct. Int'l Trade Apr. 7, 2021) ................................................................................................................. 15

*Timken U.S. Corp. v. United States,* 421 F.3d 1350, 1355 (Fed.Cir.2005) .................................. 8

*USX Corp. v. United States*, 655 F. Supp. 487, 492 (Ct. Int't Trade 1987) ................................. 7

*YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367, 1380 (Ct. Int'l Trade 2020) ................................................................................................................................................. 15

**Statutes and Regulations**

19 C.F.R. 351.301(c)(5). .............................................................................................................. 13

19 U.S.C. § 1516a ........................................................................................................................... 7

19 U.S.C. § 1677f ............................................................................................................................ 8

19 U.S.C. § 1677f-1 ................................................................................................................ 14, 15

19 U.S.C. 1671d .............................................................................................................................. 14

19 U.S.C. 1677f-1(e)(1) .................................................................................................................. 9

19 U.S.C. 1677f-1(e)(2). ................................................................................................................. 9

NON-CONFIDENTIAL VERSION

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

## I.      STATEMENT PURSUANT TO RULE 56.2

Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao"), Jiangsu Keri Wood Co., Ltd. ("Keri Wood"), and Sino-Maple (Jiangsu) Co., Ltd. ("Sino-Maple") (collectively "Plaintiffs") submit this brief in support of their motion for judgment on the agency record pursuant to Rule 56.2 of the U.S. Court of International Trade.

### A.      The Administrative Determination Under Review

This action is an appeal from the U.S. Department of Commerce's ("Commerce") final results in the countervailing duty administrative review of *Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 76011 (November 27, 2020) ("Final Results"), including the accompanying Issues and Decision Memorandum ("IDM"). (P.R. 361).[1]

### B.      Issues Presented

1.      Whether Commerce's selection of respondents for individual examination was supported by substantial evidence and otherwise in accordance with law.

2.      Whether the CVD margin assigned to non-selected respondents under review was supported by substantial evidence or otherwise not in accordance with law.

---

[1] Citations to confidential documents from the Index to the Administrative Record are designated as "C.R. __," and citations to public documents and public versions are designated as "P.R. __." All record documents cited herein will be included in the Joint Appendix to be filed with the Court.

NON-CONFIDENTIAL VERSION

## II.    STATEMENT OF FACTS

Upon requests filed by interested parties, Commerce initiated the underlying administrative review on March 14, 2019.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 9297 (March 14, 2019).  Commerce subsequently released data from U.S. Customs and Border Protection ("CBP") for purposes of mandatory respondent selection and solicited comments from the parties.  Memorandum to Interested Parties: Customs and Border Protection Data for Respondent Selection, dated March 14, 2019 (C.R. 1 and 2 and P.R. 23).   Various parties, including Senmao, filed such comments with Commerce pointing out flaws in the CBP data and requesting that Commerce issue Quantity and Value Questionnaires to Chinese producers and exporters for purposes of respondent selection and to determine their actual export volumes.   *See e.g.* Comments on CBP Data and Request for Issuance Q&V Questionnaires on behalf of Senmao, dated March 21, 2019 (C.R. 3 and P.R. 39). As noted in Senmao's comments, the CBP data indicated that there were [

          ] which could not be accurate.  Id.    This included two alleged individual entries of [          ] cubic meters and [          ] cubic meters from [

       ], which would have required [       ] and [       ] 40-foot containers, respectively.  Id. As Senmao pointed out, this was simply not possible and demonstrated that there were errors in the CBP data, which may have resulted from misplaced decimals or reporting the incorrect unit of measure.  Id.  Even petitioners, recognizing the same problems with the data, requested that Commerce issue Quantity and Value Questionnaires.  Letter from Wiley Rein LLP to Secretary of Commerce Pertaining to AMMWF Comments on CBP Data and Respondent Selection, dated March 22, 2019.  (C.R. 5, P.R. 44).

Despite these universal objections to the quality of the data, Commerce rejected those requests and on May 21, 2019 selected Baroque Timber Industries (Baroque Timber) and Jiangsu

Guyu International Trading Co., Ltd. (Jiangsu Guyu) as mandatory respondents based on the notion that they supposedly accounted for the largest volume of subject merchandise.   That conclusion was based on the CBP data.  Memorandum from Suzanne Lam, International Trade Analyst to Irene Darzenta Tzafolias, Direction Office VIII: Respondent Selection, dated May 21, 2019 ("Respondent Selection Memorandum") (C.R. 6, P.R. 57).  Following those selections, on May 30, 2019, Commerce rejected a submission by Jiangsu Guyu, which provided its actual exports to the United States during the POR.  Letter to Jiangsu Guyu:  Rejection of Untimely Respondent Selection Comments, dated May 30, 2019 (P.R. 65).  Commerce rejected the submission on grounds that it was submitted after the deadline for comment on respondent selection.  Id.  Commerce also rejected a letter from Senmao.  Letter from USDOC to Husch Blackwell Pertaining to Senmao Rejection Letter, dated May 30, 2019 (P.R. 67); *see also* Response to Department's Rejection of Comments on Respondent Selection, dated May 31, 2019 (P.R. 69) and Response to Department's Rejection of Guyu's Comments of May 28, 2019, dated June 3, 2019 (P.R. 70).  Commerce did not address any other provisions of its rules regarding the timeliness of submissions.

On June 14, 2019, Senmao filed a request to be treated as a voluntary respondent since Commerce had declined to select it as a mandatory respondent.  Request for Voluntary Respondent Selection on behalf of Senmao, dated June 14, 2019 (P.R. 79).  Senmao also filed voluntary responses to Commerce's initial questionnaires.  Section III Affiliation Questionnaire Response on behalf of Senmao, dated June 14, 2019 (C.R. 9, P.R. 80) and Section III Questionnaire Response on behalf of Senmao, dated July 1, 2019 (C.R. 13-21, P.R. 92).  Senmao reported exports to the United States of subject merchandise during the POR amounting to

[               ] square meters valued at [                    ] RMB.  Id. at 6.

By July 16, 2019, Jiangsu Guyu had also filed responses to Commerce's questionnaires, which included their actual exports to the United States during the period of review.  Response to Section III Questionnaire on behalf of Jiangsu Guyu, dated July 15, 2019 (C.R. 23-35, P.R. 95). The submission again confirmed that the CBP data were flawed as Jiangsu Guyu reported exports to the United States of [                    ] kg of subject merchandise during the POR valued at [                ] RMB.  Id. at Exhibit II-20.  This time, almost two months after the initial May submission by Jiangsu Guyu submitting its actual exports during the POR, Commerce accepted the factual information on the correct figures.

On September 26, 2019, Commerce rejected Senmao's request for treatment as a voluntary respondent.   Memorandum from Robert Palmer, Senior International Trade Analyst to Irene Darzenta Tzafolias, Director Office VIII:  Whether to Select Voluntary Respondents, dated September 26, 2019 (P.R. 189).   Commerce rejected the submission of Semnao even as a voluntary respondent, despite the information on the record that showed that Senmao's exports to the United States were higher than those of Jiangsu Guyu.   Commerce did not address why it had not sought out an alternative respondent or address the acceptance of the Senmao response earlier, when it had been apparent since the March comments that the Jiangsu Guyu CBP data were flawed.

The Department published its Preliminary Results on February 6, 2020.  *See Multilayered Wood Flooring from the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2017*, 85 Fed. Reg. 6908 (February 6, 2020) ("Preliminary Results").   Plaintiffs and other parties filed their case briefs on March 13, 2020, in which several respondents again objected to Commerce's selection of mandatory respondents.  *See e.g.* Resubmittal of Case Brief on behalf of Jiangsu

Guyu, dated March 19, 2020 (C.R. 223-224, P.R. 326-327);  Case Brief on behalf of Fine Furniture (Shanghai Limited) and Double F Limited, dated March 13, 2020 (C.R. 218, P.R. 314); Case Brief on behalf of Senmao, Sino-Maple, and Keri Wood, dated March 13, 2020 (P.R. 310).

Commerce published its Final Results November 27, 2020.  *Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 76011 (November 27, 2020).  As a result of Commerce's respondent selection decision, it based its preliminary and final results on the responses of Baroque Timber and Jiangsu Guyu, despite the fact that they were not the largest exporters during the period of review, despite the fact that Commerce stated that it intended to select the two largest exporters (by quantity) during the period of review, and despite the fact that Commerce had sufficient time to select an additional respondent for individual examination once that fact was confirmed.   In the Final Results, Commerce assigned Baroque Timber a margin of 14.09 percent and assigned Jiangsu Guyu a margin of 122.92 percent.  Id. As a result, non-selected respondents subject to review, including Plaintiffs, were assigned a margin of 20.75 percent based on the weighted average of the two mandatory respondents.  Id. and Memorandum to Program Manager: Calculation of the Non-selected Rate for the Final Results, 2017, dated November 23, 2020 (C.R. 232 and P.R. 367).

## III.    SUMMARY OF ARGUMENT

Commerce's decision to rely upon the CBP data for purposes of respondent selection and its selection of Jiangsu Guyu as a mandatory respondent was not supported by substantial evidence or otherwise in accordance with law. The record evidence cited by various interested parties demonstrated that the CBP data was significantly flawed and that Jiangsu Guyu was not one of the largest exporters during the period of review as Commerce claimed and as its selection

NON-CONFIDENTIAL VERSION

methodology relied upon.  Commerce, insisted on relying upon the CBP data and ignored, or sought to keep off the record, overwhelming evidence to the contrary.  Further, after no investigation into the accuracy of the Jiangsu Guyu data initially. Commerce then refused to reconsider its decision during the course of the investigation, despite the fact that there was still sufficient time to select another mandatory respondent or to accept a voluntary respondent.   This Court has held that it must consider evidence on the record that detracted from the reliability of the CBP data in order to meet the basic requirements of the substantial evidence test.  *Ad Hoc Shrimp Trade Action Comm. v. United States,* 36 C.I.T. 419, 422 (2012).   As a result of Commerce's refusal to adequately consider the record evidence, Commerce ultimately failed to select exporters and producers accounting for the largest volume of the subject merchandise as directed by the statute.

Commerce also based the margin for unselected respondents on an average of the margins assigned to Baroque Timber and Jiangsu Guyu, even though Jiangsu Guyu was not one of the largest exporters during the period of review and even though Commerce did not select mandatory respondents based on a statistically valid sample.   Thus, Commerce failed to follow its own announced methodology.  Given that Jiangsu Guyu was not one of the largest exporters, its margin cannot be considered representative of the margin for all producers and exporters, as a required by the statute and precedent.  As the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") and this Court have explained, "[t]he representativeness of the investigated exporters is the essential characteristic that justifies an 'all others' rate based on a weighted average for such respondents."  *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016) *quoting Nat'l Knitwear & Sportswear Ass'n v. United States,* 779

F.Supp. 1364, 1373–74, 15 C.I.T. 548, 559 (1991); *see also Changzhou Hawd Flooring*

*Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017).  Therefore, Commerce's

calculation of the margin for unselected respondents is also not supported by substantial

evidence or otherwise in accordance with law.

We respectfully request that the Court remand these issues to Commerce for

further consideration.

## IV.    STANDARD OF REVIEW

In reviewing a challenge to Commerce's determination in a countervailing duty

administrative review"{t}he Court shall hold unlawful any determination, finding or conclusion

found...to be unsupported by substantial evidence on the record, or otherwise not in accordance

with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Huaiyin Foreign Trade*

*Corp. v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla." *Consol.*

*Edison*, 305 U.S. at 229. A determination cannot be upheld if Commerce fails to articulate a

"rational connection between the facts found and the choices made." *Burlington Truck Lines, Inc.*

*v. United States*, 371 U.S. 156, 168 (1962). Furthermore, an agency determination must have a

reasoned basis, and the Court may not defer to an agency determination premised on inadequate

analysis or reasoning." *USX Corp. v. United States*, 655 F. Supp. 487, 492 (Ct. Int't Trade 1987).

In addition, this Court must hold Commerce's final results unlawful if it is, in any

material respect, arbitrary, or if Commerce acted other than as a fair and objective arbiter of U.S.

trade disputes. It is well established that "{t}he standards of fairness and reasonableness are

inherent" in the trade laws. See, g. *Melamine Chemicals, Inc. v. United States*, 561 F. Supp. 458,

NON-CONFIDENTIAL VERSION

463 (Ct. Int'l Trade 1983). Inherent in these obligations is Commerce's basic responsibility under the law to conduct a fair investigation, which requires that its determination be based upon a reasoned analysis of the information in the record and not upon prejudgments or improper influence. See, e.g., *In re Murchison*, 349 U.S. 133, 136 (1955) ("a fair tribunal is a basic requirement of due process"). In addition, "the path of Commerce's decision must be reasonably discernable" to support judicial review. *NMB Singapore Ltd. v. United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009) (*citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)); *see also Timken U.S. Corp. v. United States,* 421 F.3d 1350, 1355 (Fed.Cir.2005) (explaining that "it is well settled that an agency must explain its action with sufficient clarity to permit 'effective judicial review,' "and that "[f]ailure to provide the necessary clarity requires the agency action be vacated") (*quoting Camp v. Pitts,* 411 U.S. 138, 142–43 (1973)); 19 U.S.C. § 1677f(i)(3)(A) (requiring Commerce to "include in a final determination ... an explanation of the basis for its determination"). It is Commerce's obligation that the trade laws are administered as accurately as possible. *See Al Tech Specialty Steel Corp. v. United States*, 28 C.I.T. 1468, 1504 (CIT 2004) (comparing with *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (the "basic purpose" of the antidumping statute is to calculate duties "as accurately as possible").

Commerce's interpretation of the statute is reviewed under *Chevron U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *See Timken Co.* v. *United States,* 354 F.3d 1334, 1341 (Fed. Cir. 2004); *Beijing Tianhai Indus. Co. v. United States,* 52 F. Supp. 3d. 1351, 1361 (Ct. Int'l Trade 2015). "Under Chevron, the court first asks whether Congress has directly spoken to the precise question at issue; if so, the inquiry ends and the Court 'must give effect to the unambiguously expressed intent of Congress. *Sahaviriya Steel Indus. Pub. Co.* v.

*United States,* 649 F.3d 1371, 1375 (Fed. Cir. 2011) (citation omitted). "If the statute is silent or ambiguous with respect to the issue, the court must ask whether Commerce's interpretation is based on a permissible construction of the statute." *Id. citing Chevron,* 467 U.S. at 843.

## V.    ARGUMENT

### A.    Commerce's Selection of Respondents for Individual Examination was Not Supported by Substantial Evidence or Otherwise in Accordance with Law

The statute directs Commerce to determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise.  19 U.S.C. 1677f-1(e)(1).   If it is not practicable to examine all known exporters or producers, the statute permits Commerce to "determine individual countervailable subsidy rates for a reasonable number of exporters or producers by limiting its examination to--

> (i) a sample of exporters or producers that the administering authority determines is statistically valid based on the information available to the administering authority at the time of selection, or
> (ii) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that the administering authority determines can be reasonably examined;…

19 U.S.C. 1677f-1(e)(2).   As this Court has stated, the purpose of these provisions is to ensure that Commerce captures a representative sample of the export market:

> It is not unreasonable to assume that the goals of these provisions are to capture a broadly representative sample of the export market, whether through the use of a statistically valid sample based on factors pertinent to the case or by the fact that capturing a large percentage of the imported merchandise generally will reflect the various commercial realities in the home market .

*Husteel Co. v. United States,* 98 F. Supp. 3d 1315, 1330 (Ct. Int'l Trade 2015).   In this case, Commerce chose the latter approach and claimed that it selected for individual examination the two companies that accounted for the largest volume of subject merchandise imports during the period of review, Baroque Timber and Jiangsu Guyu.  Respondent Selection Memorandum a 6 (C.R. 6, P.R. 57).

NON-CONFIDENTIAL VERSION

However, the evidence on the record demonstrated that Jiangsu Guyu was not one of the largest exporters during the period of review and, as a result, Commerce did not capture a broadly representative sample of the export market.  Commerce brushed aside these concerns, without any analysis of the accuracy of the CBP data, and simply claimed that there was insufficient evidence that the CBP data was unreliable.   Commerce claimed that "no party has provided evidence to support the claim" that Guyu should not be selected and that "the parties have not provided any information on the record regarding the CBP's data collection methodology or other documents to support their claims that the CBP data is unreliable." Respondent Selection Memorandum at 5 (C.R. 6, P.R. 57).  Commerce failed to discuss the arguments of the parties as to why the Jiangsu Guyu data were flawed, on their face.  Instead, it took the position that "there is nothing to see here, just move on."   When parties raised the issue in their case briefs, Commerce, likewise, blamed respondents for not putting more evidence on the record that the CBP data was inaccurate.   Yet, at that point, Commerce had actual Jiangsu Guyu- submitted data that no party had disputed.  Nevertheless, Commerce seemed to double down on the CBP data.  Commerce stated that while parties contended that the CBP data demonstrate that entries made by certain companies far exceed a reasonable quantity for a single entry, there was "no evidence (*e.g.,* Q&V data, Infodrive data, *etc.*) was placed on the record at the time of respondent selection which contradicted the CBP data or otherwise demonstrated that the CBP dataset was unreliable in its entirety." IDM at 15.   Commerce also claimed that selecting respondents from CBP data generally is an accurate and reliable method, because the data are compiled from actual entries of merchandise subject to the *Order*, and are based on information required by and provided to the U.S. government authority responsible for permitting goods enter into the United States (*i.e.*, CBP).  IDM at 16.

While the Court has generally held that it is reasonable for Commerce to rely on CBP data, it has also held that Commerce must account for record evidence that detracts from the reliability of such data.  In *Pakfood Pub. Co. v. United States,* the Federal Circuit held that it was reasonable for Commerce to rely on CBP data "in the absence of evidence in the record that the CBP data…are in some way inaccurate or distortive."  *Pakfood Pub. Co. v. United States,* 35 C.I.T. 60, 73, aff'd, 453 F. App'x 986 (Fed. Cir. 2011).   In *Ad Hoc Shrimp Trade Action Comm. v. United States,* this Court held that must consider evidence on the record that detracted from the reliability of the CBP data in order to meet the basic requirements of the substantial evidence test.  *Ad Hoc Shrimp Trade Action Comm. v. United States,* 36 C.I.T. 419, 422 (2012).

In this case, Commerce's respondent selection was flawed because it relied on CBP data that contained obvious and significant errors as pointed out by several interested parties and Commerce failed to adequately consider this evidence.  *See e.g.* Comments on CBP Data and Request for Issuance Q&V Questionnaires on behalf of Senmao, dated March 21, 2019 (C.R. 3 and P.R. 39).   As noted in Senmao's comments, the CBP data indicated that there were [                    ] which could not be accurate.  Id.   This included two alleged individual entries of [          ] cubic meters and [          ] cubic meters from [          ], which would have required [       ] and [        ] 40-foot containers, respectively.  Id.  That is simply not realistic and demonstrated that there were errors in the CBP data, possibly resulting from misplaced decimals or reporting the incorrect unit of measure.  Id.  Even petitioners requested that Commerce issue Quantity and Value Questionnaires to determine the largest exporters.  Letter from Wiley Rein LLP to Secretary of Commerce Pertaining to AMMWF Comments on CBP Data and Respondent Selection, dated March 22, 2019.  (C.R. 5, P.R. 44).

The comments filed by interested parties made clear that the volumes reported in the CBP data were unreasonably large and, therefore, interested parties requested that Commerce further investigate by issuing Quantity and Value Questionnaires to confirm the actual volumes exported. Commerce suggests, after the fact, that the parties should have submitted more evidence, but makes no suggestion as to how the parties should have obtained this additional confidential information from Jiangsu Guyu.   Of course, the parties all explicitly argued that such additional information did need to be obtained.  The way to obtain that information was for Commerce to send out quantity and value questionnaires. Commerce also could have sought more information from CBP on the entries of Jiangsu Guyu.  There was sufficient time between the due date of the CBP comments, March 21, 2019, and the two months before the date of Commerce's Respondent Selection Memorandum, May 21, 2019, to take any of these steps. Instead, Commerce refused to act, and relied on flawed data, without any logical explanation.

Commerce's was dedicated to sticking to the CBP data, no matter what information was on the record.  This fact is demonstrated by Commerce continuing to ignore the issue even after it became certain that the CBP data was incorrect.  On May 30, 2019, Commerce rejected a submission by Jiangsu Guyu, which provided its actual exports to the United States during the POR.  Letter to Jiangsu Guyu:  Rejection of Untimely Respondent Selection Comments, dated May 30, 2019 (P.R. 65); *see also* Response to Department's Rejection of Comments on Respondent Selection, dated May 31, 2019 (P.R. 69) and Response to Department's Rejection of Guyu's Comments of May 28, 2019, dated June 3, 2019 (P.R. 70).  Commerce rejected the submission on grounds that it was submitted after the deadline for comment on respondent selection, even though there is no law or regulation preventing Commerce from reconsidering respondent selection.   Moreover, Commerce's own regulations allow the submission of factual

information up to the date that is 30 days prior to the preliminary determination and Jiangsu

Guyu's submission was well within that deadline.   19 C.F.R. 351.301(c)(5).   Yet, this

regulations was not addressed by Commerce.

Moreover, Jiangsu Guyu's questionnaire responses in combination with Senmao's

voluntary questionnaire responses demonstrated the Senmao was a larger exporter than Jiangsu

Guyu.  Senmao reported exports to the United States of subject merchandise during the POR

amounting to [                    ] square meters valued at [                        ] RMB while Jiangsu Guyu

reported  exports to the United States of [                       ] kg of subject merchandise during the

POR valued at [                 ] RMB.  Section III Questionnaire Response on behalf of Senmao,

dated July 1, 2019 at 6 (C.R. 13-21, P.R. 92) and Response to Section III Questionnaire on

behalf of Jiangsu Guyu, dated July 15, 2019 at Exhibit II-20 (C.R. 23-35, P.R. 95).   Commerce,

therefore, had absolute confirmation of this fact by July 15, 2019.  It could have selected another

mandatory or selected Senmao as a voluntary respondent before the preliminary results were

issued in February 2020.  Instead, it decided to keep the blinders on.

The Court of International Trade ("CIT") has found that it is unreasonable for Commerce

to ignore facial evidence of CBP data errors. *See Husteel Co. v. United States*, 98 F. Supp. 3d

1315, 1327 n.8 (Ct. Int'l Trade 2015) (finding that where "Commerce wishes to rely on CBP data

for respondent selection, it is unreasonable for Commerce to ignore evidence on the face of that

data suggesting that the actual number of potential respondents is likely less than the number of

companies separately listed").   In the Final Results, Commerce attempts to distinguish this case

because it addressed the number of respondents to be examined rather than the reliability of the

CBP data.  IDM at 16.  However, the principle is the same as in this case and in *Pakfood* and *Ad

Hoc Shrimp*.   Commerce must take into account inaccuracies in the CBP data when selecting

respondents in order to ensure that it is selecting the largest exporters to serve as a representative sample of the export market.   As argued below, this is particularly important in order to correctly determine an appropriate margin for companies not selected for individual examination. Commerce's failure to account for inaccuracies in the CPB data in this case warrants a remand.

### B.       The Margin Commerce Assigned to Separate Rate Respondents was Not Supported by Substantial Evidence or Otherwise in Accordance with Law

In order to assign a margin to companies that are not selected for individual examination, the statute provides that Commerce use the rates determined for mandatory respondents:

> The individual countervailable subsidy rates determined under subparagraph (A) shall be used to determine the all-others rate under section 1671d(c)(5) of this title.

19 U.S.C. § 1677f-1.  Based on 19 U.S.C. 1671d, Commerce calculates the rate for non-selected respondents based on the weighted average countervailable subsidy rates established for exporters and producers individually investigated.   This methodology is reasonable if Commerce selects mandatory respondents based on a statistically valid sample or based on the largest exporters during the period of review.   Under either methodology, the mandatory respondents will reasonably be considered representative of all exporters.   As this Court has found in the antidumping context, and which is equally applicable to the countervailing duty context:

> The method Congress expressly provided for in 19 U.S.C. § 1677f–1(c)(2)(B) necessarily produces an "all-others" rate that is "untethered to actual record data" on the sales of individual, unexamined respondents. Any "relationship to their actual dumping margins" that exists under § 1677f–1(c)(2)(B) is, by definition, the relationship that exists because the examined respondents are treated as representative of other respondents by virtue of being the largest exporters. Commerce assigned a margin based on the margins of the two largest exporters to the unexamined ("separate rate") respondents because it concluded that the circumstance described in § 1677f–1(c)(2) existed, notwithstanding the margin that an unexamined respondent would have been assigned had it been individually examined.

*Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1362 (Ct. Int'l Trade 2018);

*see also Shanxi Hairui Trade Co. v. United States*, No. 19-00072, 2021 WL 1291671, at *10 (Ct.

Int'l Trade Apr. 7, 2021); *YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367,

1380 (Ct. Int'l Trade 2020); *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322

F. Supp. 3d 1308, 1347 (Ct. Int'l Trade 2018) (Because Senmao was one of the "exporters and

producers accounting for the largest volume of the subject merchandise from the exporting

country," *see* 19 U.S.C. § 1677f–1(c)(2)(B), its pricing practices are presumptively

representative of the other exporters and producers of subject merchandise.").  The Federal

Circuit has also found that the representativeness of the mandatory respondents enables

Commerce to reasonably approximate the margins for all known exporters:

> The very fact that the statute contemplates using data from the largest volume
> exporters suggests an assumption that those data can be viewed
> as representative of all exporters. The statute assumes that, absent such evidence,
> reviewing only a limited number of exporters will enable Commerce to
> reasonably approximate the margins of all known exporters. As the CIT has
> explained, "[t]he representativeness of the investigated exporters is the essential
> characteristic that justifies an 'all others' rate based on a weighted average for
> such respondents."

*Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016) *quoting*

*Nat'l Knitwear & Sportswear Ass'n v. United States,* 779 F.Supp. 1364, 1373–74, 15 C.I.T. 548,

559 (1991); *see also Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed.

Cir. 2017).

In this case, Commerce based the margin for unselected respondents on an average of the

margins assigned to Baroque Timber and Jiangsu Guyu, even though Jiangsu Guyu was shown

to not be one of the largest exporters during the period of review, and even though Commerce

did not select mandatory respondents based on a statistically valid sample.   Given that Jiangsu

Guyu was not one of the largest exporters, its margin cannot be considered representative of the

margin for all producers and exporters.  Commerce use of Jiangsu Guyu's margin in calculating

the margin assigned to unselected respondents is, therefore, contrary to the statute and precedent

and the Court should remand this issue to Commerce for reconsideration.  Commerce either

needs to select an additional mandatory respondent or base the margin for unselected

respondents solely on the margin assigned to Baroque Timber.

## VI.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully requests that the Court:  (1) determine

that Commerce's final results in the countervailing duty administrative review are unsupported

by substantial evidence and otherwise not in accordance with law; (2) remand this case to

Commerce with instructions to reconsider its final results consistent with the findings of this

Court; and (3) provide such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Stephen W. Brophy
**Husch Blackwell LLP**
750 17th St., NW
Suite 900
Washington, DC 20006
(202) 378-2409
Email: Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., Jiangsu Keri Wood Co., Ltd., and Sino-Maple (Jiangsu) Co., Ltd.*

Dated:  May 14, 2021

16

NON-CONFIDENTIAL VERSION

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that this submission complies with the word limitation requirement.  The word count for this submission, as computed by Husch Blackwell's word processing system Microsoft Word, is 5,129 words.

/s/ Jeffrey S. Neeley
_____
Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., Jiangsu Keri Wood Co., Ltd., and Sino-Maple (Jiangsu) Co., Ltd.*