# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. <br><br> AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING <br><br> Defendant-Intervenors | Consol. Court No. 20-03885 <br><br> **PUBLIC VERSION** <br> Business Proprietary Information Removed at pages 2, 5 and 6 |

### REPLY BRIEF OF PLAINTIFFS JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., ET. AL.

Jeffrey S. Neeley
Stephen W. Brophy
Husch Blackwell, LLP

750 17th St., N.W.
Suite 900
Washington, D.C. 20006
(202) 378-2357
Jeffrey.Neeley@huschblackwell.com
Stephen.Brophy@huschblackwell.com

Dated:  September 17, 2021

**TABLE OF CONTENTS**

**I. ARGUMENT** .................................................................................................................. **1**

**II. CONCLUSION** ............................................................................................................... **9**

# TABLE OF AUTHORITIES

## Cases

*Ad Hoc Shrimp Trade Action Comm. v. United States,* 36 C.I.T. 419 (2012) .................................. 4

*Husteel Co. v. United States*, 98 F. Supp. 3d 1315(Ct. Int'l Trade 2015) .................................... 4, 5

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308 (Ct. Int'l Trade 2018) ........................................................................................................................... 7

*Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1362 (Ct. Int'l Trade 2018)... 7

*Shanxi Hairui Trade Co. v. United States*, No. 19-00072, 2021 WL 1291671, at *10 (Ct. Int'l Trade Apr. 7, 2021) ................................................................................................................... 7

*YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367 (Ct. Int'l Trade 2020) ........ 7

## Statutes

19 U.S.C. 1677f-1. ................................................................................................................. 5, 7, 8

# REPLY BRIEF OF PLAINTIFFS JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., ET. AL.

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("Court"), Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao"), Jiangsu Keri Wood Co., Ltd. ("Keri Wood"), and Sino-Maple (Jiangsu) Co., Ltd. ("Sino-Maple") (collectively "Plaintiffs") hereby files this reply to the August 12, 2021 response briefs filed by Defendant, the United States ("Def't Br.") and Defendant-Intervenor Mid Continent Steel and Wire, Inc. ("Def't Int. Br."). For the reasons discussed below, the Court should grant Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record and remand the case to the U.S. Department of Commerce ("Commerce") with instructions to reconsider the final results in the countervailing duty administrative review of *Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 76011 (November 27, 2020).

## I. ARGUMENT

As argued in Plaintiffs' initial brief, Commerce's decision to rely upon the CBP data for purposes of respondent selection and its selection of Jiangsu Guyu International Trading Co., Ltd. (Jiangsu Guyu) as a mandatory respondent was not supported by substantial evidence or otherwise in accordance with law. The record evidence cited by various interested parties at the outset and throughout this review, demonstrated that the CBP data was significantly flawed and that Jiangsu Guyu was not one of the largest exporters during the period of review, despite what Commerce claimed, and which formed the basis of it its selection methodology. Respondents pointed out major problems regarding unusual entry quantities that demonstrated that the CBP

1

data was not reliable for purposes of selecting the two largest exporters as mandatory respondents. Senmao's comments alone explained that the CBP data included [

] which could not be accurate. *See e.g.* Comments on CBP Data and Request for Issuance Q&V Questionnaires on behalf of Senmao, dated March 21, 2019 (C.R. 3 and P.R. 39). These plainly inaccurate entries included two individual entries showing [      ] cubic meters and [     ] cubic meters from [

], which would have required [     ] and [     ] 40-foot containers, respectively. Id. Commerce never addressed this error or explained how this data could be possibly be accurate. It simply ignored how these obvious errors in data called into question the reliability of the CBP data for purposes of selecting Jiangsu Guyu as a mandatory respondent. Commerce could have required quantity and value questionnaires to interested parties and identified which exporters actually were the largest exporters, as it claimed to do in its methodology. Instead, it did nothing. Commerce then further refused to reconsider its decision during the course of the investigation, despite the fact that there was still sufficient time to select another mandatory respondent.

Defendant and Defendant-Intervenor argue the Commerce addressed the concerns raised by the parties in its respondent selection memorandum and in the final results, and that the agency's use of this data was reasonable and sufficiently explained. Def. Br. at 14 and Def. Int. Br. at 30. However, a review of the respondent selection memorandum and the IDM, does not reveal Commerce addressing those concerns or sufficiently explaining its decision. Commerce only provided the following conclusory statement, with no reasoning, in the respondent selection memorandum:

> Although certain interested parties argue that the CBP data are unreliable, we find that no party has provided evidence to support this claim. Specifically, there is no

>record evidence that the CBP data contain unusual entry quantities such that the entire CBP dataset is called into question.

Memorandum from Suzanne Lam, International Trade Analyst to Irene Darzenta Tzafolias, Direction Office VIII: Respondent Selection, dated May 21, 2019 ("Respondent Selection Memorandum") at 5 (C.R. 6, P.R. 57). Commerce also stated the following in the IDM, setting up and knocking down the straw man of respondents supposedly asking that the data be flawless:

> While Fine Furniture contends that the CBP data demonstrate that entries made by certain companies far exceed a reasonable quantity for a single entry, no evidence (e.g., Q&V data, Infodrive data, etc.) was placed on the record at the time of respondent selection which contradicted the CBP data or otherwise demonstrated that the CBP dataset was unreliable in its entirety. As the respondent selection data are used only to rank the exporters under review by volume of shipments during the POR so that Commerce can make a selection determination under section 777A(e)(2)(B) of the Act early in the review, Commerce does not and cannot require that the data be flawless.

Issues and Decision Memorandum ("IDM") at 15-16 (P.R. 361). Defendant changes the subject and points out that Commerce determined that "less than 0.05 percent of the entries in the CBP data lacked quantity and/or unit of measure" and ensured a uniform unit of measure by converting "CBP data reported in square meters to cubic meters CBP data reported in square meters to cubic meters." Def. Br. at 14 *citing* IDM at 15. Plaintiffs' comments, however, were not focused on the units of measure or the conversions required and Commerce's statements do not address Plaintiffs' actual comments, which were related to aberrant entry quantities contained in the CBP data, including quantities attributed to Jiangsu Guyu. Nor does Commerce explain its decision to rely on the CBP data, and fail to investigate the issues raised, in light of those comments. At most, Commerce provided an acknowledgment that those comments were made and the Department's conclusion that the CPB data was reliable. There is no analysis, however, explaining that conclusion in light of the facts. In *Ad Hoc Shrimp Trade Action Comm. v. United States,* this Court

3

held that Commerce must consider evidence on the record that detracted from the reliability of the CBP data in order to meet the basic requirements of the substantial evidence test. *Ad Hoc Shrimp Trade Action Comm. v. United States,* 36 C.I.T. 419, 422 (2012).  In this case, Commerce failed to meet this basic requirement and neither Defendant nor Defendant-Intervenor explains how this requirement was met.

Defendant also argues that the parties had an opportunity to submit Q&V data with their respondent selection comments and that Jiangsu Guyu failed to timely submit such data. Defendant, however, asked for no such data and cites to no regulation or document setting such a deadline, and we know of none.  Memorandum, "Administrative Review of the Countervailing Duty Order of Multilayered Wood Flooring from the People's Republic of China: Customs and Border Protection Data for Respondent Selection" (Mar. 14, 2019) (P.R. 23, C.R. 1).   Even accepting that Jiangsu Guyu's comments were properly considered untimely and rejected, Defendant does not explain how Commerce's respondent selection decision could be reasonable in light of the information submitted by Senmao and other respondents in their timely filed comments on the CBP data which called into question the reliability of the volumes reported in the CBP data, including the volumes reported for Jiangsu Guyu.  The U.S. Court of International Trade ("CIT") has found that it is unreasonable for Commerce to ignore facial evidence of CBP data errors. *See Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1327 n.8 (Ct. Int'l Trade 2015) (finding that where "Commerce wishes to rely on CBP data for respondent selection, it is unreasonable for Commerce to ignore evidence on the face of that data suggesting that the actual number of potential respondents is likely less than the number of companies separately listed").

Defendant and Defendant-Intervenor argue that *Husteel* dealt with only the number of respondents selected for examination, rather than which respondents were selected, and that

4

*Husteel* does not require Commerce to sift through the CBP data. First, this is a major misreading of *Husteel*. *Husteel* was ultimately concerned with Commerce selecting a sufficient number of respondents so that the respondents could be considered representative of the market:

> It is not unreasonable to assume that the goals of these provisions are to capture a broadly representative sample of the export market, whether through the use of a statistically valid sample based on factors pertinent to the case or by the fact that capturing a large percentage of the imported merchandise generally will reflect the various commercial realities in the home market.

*Id.* at 1330. That is the same ultimate issue in this case. As in that case, Commerce here also failed to select mandatory respondents that represented a large percentage of the imported merchandise that can be presumed to reflect the various commercial realities of the market. That is Commerce's fundamental obligation when it decides not to review every respondent, and applies regardless of whether the narrower issue is the number of respondents selected or which respondents are selected. Second, this case does deal with the number of respondents selected, contrary to the claims of Defendant and Defendant-Intervenor. Commerce could have met its obligations by selecting a different mandatory respondent or it could have met its obligations by selecting a third mandatory respondent. In this case, Commerce chose to do neither, and simply proceeded to a final decision with two respondents that did not account for the largest exporters contrary to what Commerce announced when it selected mandatory respondents and which was required by the statute. 19 U.S.C. 1677f-1(e)(2).

Nor does Defendant explain why Commerce could not have reconsidered its respondent selection decision or selected an additional mandatory respondent to fill its statutory obligations, once there was more evidence on the record. As noted in Plaintiffs' opening brief, Senmao filed voluntary responses to Commerce's initial questionnaires and reported its exports to the United States of subject merchandise during the POR amounting to [          ] square meters valued

5

at [          ] RMB.  Section III Questionnaire Response on behalf of Senmao, dated July 1, 2019 at 6 (C.R. 13-21, P.R. 92).  By July 16, 2019, Jiangsu Guyu had also filed responses to Commerce's questionnaires, which included their actual exports to the United States during the period of review and confirmed that the CBP data were flawed as Jiangsu Guyu reported exports to the United States of [          ] kg of subject merchandise during the POR valued at [          ] RMB.  Response to Section III Questionnaire on behalf of Jiangsu Guyu, dated July 15, 2019 at Exhibit II-20 (C.R. 23-35, P.R. 95).  Therefore, by no later than July 16, 2019 Commerce had information on the record which demonstrated that Senmao was a larger exporter than Jiangsu Guyu.  Despite the fact that it would be another six months before Commerce issued its preliminary results, Commerce did nothing to correct its erroneous choice of mandatory respondents.  In fact, well before July 16, Commerce could have confirmed the inaccuracy of the CBP data by issuing Q&V questionnaires to all respondents or just to the largest respondents or just to Jiangsu Guyu, or by making further inquiries to CBP for the details of the problematic entries.  For example, there was sufficient time between when Commerce received CBP data comments, March 21, 2019, and the day when Commerce issued the Respondent Selection Memorandum, May 21, 2019 to examine the issue.  But instead, Commerce did nothing.   Put simply, the reaction of Commerce here at every juncture was simply to dig its heels in more deeply and refuse to do anything about the plainly flawed mandatory respondent selection, despite clear evidence that reliance on CBP data was unjustified.

      Nor do Defendant or Defendant-Intervenor adequately address the fact that the margin assigned to separate rate companies was not calculated in a reasonable manner.   Defendant and Defendant-Intervenor claim that no party argued that the subject merchandise Jiangsu Guyu exported to the United States was atypical of the subject merchandise entered into the United States by other exporters.  However, the statute does not require that Commerce select

mandatory respondents based on whether they sell a typical type of subject merchandise. The statute requires that Commerce select the largest exporters or use a sampling methodology. The statute provides that if it is not practicable to examine all known exporters or producers, Commerce will "determine individual countervailable subsidy rates for a reasonable number of exporters or producers by limiting its examination to--

> (i) a sample of exporters or producers that the administering authority determines is statistically valid based on the information available to the administering authority at the time of selection, or
> (ii) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that the administering authority determines can be reasonably examined;…

19 U.S.C. 1677f-1(e)(2). The selection of the largest exporters as mandatory respondents is essential to the calculation of a reasonable all others rate, which is based on an average of the margins assigned to mandatory respondents. As this Court has found in the antidumping context, and which is equally applicable to the countervailing duty context, any relationship that exists between the mandatory respondents' margin and the all-others rate is by virtue of the mandatory respondents being the largest exporters:

> The method Congress expressly provided for in 19 U.S.C. § 1677f–1(c)(2)(B) necessarily produces an "all-others" rate that is "untethered to actual record data" on the sales of individual, unexamined respondents. Any "relationship to their actual dumping margins" that exists under § 1677f–1(c)(2)(B) is, by definition, the relationship that exists because the examined respondents are treated as representative of other respondents by virtue of being the largest exporters. Commerce assigned a margin based on the margins of the two largest exporters to the unexamined ("separate rate") respondents because it concluded that the circumstance described in § 1677f–1(c)(2) existed, notwithstanding the margin that an unexamined respondent would have been assigned had it been individually examined.

*Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1362 (Ct. Int'l Trade 2018); *see also Shanxi Hairui Trade Co. v. United States*, No. 19-00072, 2021 WL 1291671, at *10 (Ct. Int'l Trade Apr. 7, 2021); *YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367,

7

1380 (Ct. Int'l Trade 2020); *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1347 (Ct. Int'l Trade 2018) (Because Senmao was one of the "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country," see 19 U.S.C. § 1677f–1(c)(2)(B), its pricing practices are presumptively representative of the other exporters and producers of subject merchandise.").

In this case, Commerce based the margin for unselected respondents on an average of the margins assigned to Baroque Timber and Jiangsu Guyu, even though Jiangsu Guyu was shown to not be one of the largest exporters during the period of review, and even though Commerce did not select mandatory respondents based on a statistically valid sample.  Given that Jiangsu Guyu was not one of the largest exporters, its margin cannot be considered representative of the margin for all producers and exporters.  Commerce use of Jiangsu Guyu's margin in calculating the margin assigned to unselected respondents is, therefore, contrary to the statute and precedent and the Court should remand this issue to Commerce for reconsideration.  Commerce either needs to select an additional mandatory respondent or base the margin for unselected respondents solely on the margin assigned to Baroque Timber.  Plaintiffs note that Commerce already has a questionnaire response submitted by Senmao and could select Senmao as the third mandatory.

## II. CONCLUSION

For the reasons stated above, Plaintiffs respectfully requests that the Court: (1) determine that Commerce's final results in the countervailing duty administrative review are unsupported by substantial evidence and otherwise not in accordance with law; (2) remand this case to Commerce with instructions to reconsider its final results consistent with the findings of this Court; and (3) provide such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Stephen W. Brophy
**Husch Blackwell LLP**
750 17th St., NW
Suite 900
Washington, DC 20006
(202) 378-2409
Email: Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., Jiangsu Keri Wood Co., Ltd., and Sino-Maple (Jiangsu) Co., Ltd.*

Dated: September 17, 2021

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that this submission complies with the word limitation requirement.  The word count for this submission, as computed by Husch Blackwell's word processing system Microsoft Word, is 2,606 words.

/s/ Jeffrey S. Neeley
Jeffrey S. Neeley
Husch Blackwell LLP
*Counsel for Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., Jiangsu Keri Wood Co., Ltd., and Sino-Maple (Jiangsu) Co., Ltd.*

**CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing was electronically filed on September 17, 2021, via the Court's ECF filing system, which automatically serves notice on counsel of record.

_____
Jeffrey S. Neeley