C-570-971
Remand
Slip Op. 22-93
POR:  01/01/2017 – 12/31/2017
~~Business Proprietary Document~~
PUBLIC VERSION
E&C/OVIII:  DM/JS

***Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States***
**Court No.  20-03885, Slip Op. 22-93 (CIT August 11, 2022)**
**Multilayered Wood Flooring from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (the Court) in *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, Consol. Court No. 20-03885, Slip Op. 22-93 (August 11, 2022) (*Remand Opinion and Order*).  These final results of redetermination concern *Multilayered Wood Flooring from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2017*, 85 FR 76011 (November 27, 2020) (*Multilayered Wood Flooring from China Final Results*), and accompanying Issues and Decision Memorandum (IDM).  In the *Remand Opinion and Order*, the Court ordered Commerce to address the interested parties' comments on the use of U.S. Customs and Border Protection (CBP) data for respondent selection, and to reconsider the respondent selection determination and the calculation of the countervailing duty (CVD) subsidy rate for non-selected companies under review.[1]

On October 17, 2022, we released our Draft Remand to interested parties.[2]  On October 18, 2022, we extended the deadline for interested parties to submit comments on the Draft

---

[1] *See Remand Opinion and Order* at 35-36 and 39.
[2] *See* Draft Results of Remand Redetermination, *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, Consol. Court No. 20-03885, Slip Op. 22-93 (CIT 2022), dated October 17, 2022 (Draft Remand).

Remand until October 26, 2022.[3]  On October 26, 2022, we received comments from Jiangsu

Senmao Bamboo and Wood Industry Co., Ltd. (Jiangsu Senmao);[4] the American Manufacturers

of Multilayered Wood Flooring (the petitioner);[5] Fine Furniture (Shanghai) Limited and Double

F Limited (collectively, Fine Furniture);[6] Dalian Penghong Floor Products Co., Ltd., Dalian

Shumaike Floor Manufacturing Co., Ltd., Dunhua City Jisen Wood Industry Co., Ltd., Fusong

Jinlong Wooden Group Co., Ltd., Fusong Jinqiu Wooden Product Co., Ltd., Fusong Qianqiu

Wooden Product Co., Ltd., and Dalian Qianqiu Wooden Product Co., Ltd. (collectively, SRA

Companies);[7] and Jiangsu Guyu International Trading Co., Ltd. (Jiangsu Guyu), Shenzhenshi

Huanwei Woods., Co., Ltd., Zhejiang Biyork Wood Co., Ltd., Kemian Wood Industry (Kunshan)

Co., Ltd., Jiangsu Simba Flooring Co., Ltd., Dongtai Fuan Universal Dynamics, LLC, Jiashan

Huijiale Decoration Material Co., Ltd., and Dalian Jiahong Wood Industry Co., (collectively, CH

Plaintiffs).[8]

As discussed below, pursuant to the Court's *Remand Opinion and Order*, Commerce has

addressed the parties' comments regarding the use of CBP data for respondent selection and

reconsidered its respondent selection determination and calculation of the CVD subsidy rate for

non-selected companies under review.  After considering the above-mentioned comments, we

have provided further clarification to our analysis in the Draft Remand concerning respondent

selection and the assignment of Jiangsu Guyu's individually calculated rate to itself.

Additionally, as explained below, in these final results of redetermination we have relied solely

---

[3] *See* Memorandum, "Extension of Deadline to Submit Comments on Draft Remand Redetermination," dated October 18, 2022.
[4] *See* Jiangsu Senmao's Letter, "Comments on Draft Remand Redetermination," dated October 26, 2022 (Jiangsu Senmao's Draft Remand Comments).
[5] *See* Petitioner's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated October 26, 2022 (Petitioner's Draft Remand Comments).
[6] *See* Fine Furniture's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated October 26, 2022 (Fine Furniture's Draft Remand Comments).
[7] *See* SRA Companies' Letter, "Draft Remand Comments," dated October 26, 2022 (SRA Companies' Draft Remand Comments).
[8] *See* CH Plaintiffs' Letter, "Comments on Draft Remand Redetermination," dated October 26, 2022, (CH Plaintiffs' Draft Remand Comments).

on Baroque Timber's individually calculated CVD subsidy rate as the rate assigned to non-selected companies under review.

## II.    BACKGROUND

On March 14, 2019, Commerce initiated an administrative review of the CVD order on multilayered wood flooring from the People's Republic of China (China) for 170 producers and exporters of subject merchandise for the period of review (POR) January 1, 2017, through December 31, 2017.[9]  Also on March 14, 2019, Commerce released CBP data for entries of subject merchandise from China during the POR and invited parties to comment by March 21, 2019.[10]

On March 21, 2019, we received comments regarding the CBP data from the petitioner, Jiaxing Hengtong Wood Co., Ltd. (Hengtong), and Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. (Jiangsu Senmao).[11]  All three parties argued that the CBP data contained inaccurate entry information, based on inconsistent and unusual units of measure (*i.e.*, the data contained entries in meters, square meters, and cubic meters).  The petitioner also noted that several entries in the CBP data lacked a unit of measurement and had a volume of zero.[12]  Hengtong submitted its own quantity and value (Q&V) information for exports to the United States of subject merchandise to demonstrate the difference between the CBP data and its own information and argued that variations in company names (*e.g.*, the omission or inclusion of periods and/or commas in "co." and "ltd.") resulted in inaccurate company totals.[13]  The petitioner, Hengtong,

---

[9] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 FR 9297 (March 14, 2019) (*Initiation Notice*).
[10] *See* Memorandum, "Customs and Border Protection ('CBP') Data for Respondent Selection," dated March 14, 2019 (CBP Data Release).
[11] *See* Petitioner's Letter, "Multilayered Wood Flooring from the People's Republic of China:  Comments on CBP Data and Respondent Selection," dated March 21, 2019 (Petitioner's CBP Comments); *see also* Jiangsu Senmao's Letter, "Multilayered Wood Flooring from the People's Republic of China:  Comments on CBP Data and Request for Issuance Q&V Questionnaires," dated March 21, 2019 (Jiangsu Senmao's CBP Comments); and Hengtong's Letter, "Multilayered Wood Flooring from the People's Republic of China:  Comments on CBP Data and Respondent Selection," dated March 21, 2019 (Hengtong's CBP Comments).
[12] *See* Petitioner's CBP Comments at 4.
[13] *See* Hengtong's CBP Comments at 2-3.

and Jiangsu Senmao also noted that the CBP data contained several entries for [

] and [                                        ] with very large, unrealistic

volumes.  Specifically, Hengtong claimed that each of these large-volume entries would require

[                    ] standard shipping containers.  To remedy these issues, the parties asked

Commerce not to rely on the "flawed" CBP data and instead to issue Q&V questionnaires to

interested parties for respondent selection purposes.[14]

In the Respondent Selection Memorandum, dated May 21, 2019, Commerce addressed

the arguments regarding its selection of respondents for individual examination.[15]  Specifically,

Commerce stated that,

> {a}lthough certain interested parties argue that the CBP data are unreliable, we find
> that no party has provided evidence to support this claim.  Specifically, there is no
> record evidence that the CBP data contain unusual entry quantities such that the
> entire CBP dataset is called into question.  Although the petitioner correctly notes
> that there are a few entries in the CBP data that lack quantity and unit of measure,
> the parties have not provided any information on the record regarding the CBP's
> data collection methodology or other documentation to support their claims that the
> CBP data are unreliable.  Moreover, these line items do not impugn the overall
> integrity of the CBP data.[16]

Regarding the parties' comments about the entries reported in different units (*i.e.*, square and

cubic meters), Commerce converted the entries reported in square meters to cubic meters by

multiplying the values reported in square meters by 0.015 mm, which is the midpoint in the

range of the average thickness of wood flooring, to convert the entries to cubic meters.[17]

Commerce has used this average unit conversion in every administrative review of this

proceeding since the first administrative review.[18]  Regarding the slight variations of names in

the CBP data, Commerce stated that combining minor name variations did not alter the ranking

of top exporters/producers for the purposes of respondent selection.  Commerce also accepted

---

[14] *Id.* at 4; Petitioner's CBP Comments at 4-5; and Jiangsu Senmao's CBP Comments.
[15] *See* Memorandum, "Respondent Selection," dated May 21, 2019 (Respondent Selection Memorandum).
[16] *Id.* at 5 (internal citations omitted).
[17] *Id*.
[18] *See Multilayered Wood Flooring from China Final Results* IDM at 15.

Hengtong's certified Q&V data and substituted those reported Q&V amounts for the CBP data

for Hengtong in its ranking of exporters for respondent selection, in line with Commerce's

practice in prior segments with respect to voluntarily submitted and certified Q&V data.[19]

On May 21, 2019, Commerce issued its Respondent Selection Memorandum noting that

Commerce determined to limit the number of respondents selected for individual examination to

the two largest companies by U.S. import entry volume for which a review was requested

pursuant to section 777A(e)(2)(A)(ii) of the Tariff Act of 1930, as amended (the Act).[20]

Accordingly, Commerce selected Baroque Timber Industries (Baroque Timber) and Jiangsu

Guyu International Trading Co., Ltd. (Jiangsu Guyu) for individual examination.[21]  On May 28,

2019, Jiangsu Guyu submitted comments regarding respondent selection, including its Q&V

data, but Commerce rejected the submission as untimely pursuant to 19 CFR 351.302(d)(1)(i)

and removed it from the record.[22]

We issued the *Preliminary Results* of the administrative review on February 6, 2020.[23]

On March 13, 2020, Fine Furniture (Shanghai) Limited and Double F Limited (collectively, Fine

Furniture) submitted a case brief.[24]  Jiangsu Guyu also submitted a case brief on March 13, 2020,

but Commerce rejected it for containing untimely new factual information and instructed Jiangsu

Guyu to resubmit.[25]  Jiangsu Guyu resubmitted its case brief with the new factual information

redacted on March 19, 2020.[26]  On March 24, 2020, the petitioner filed a rebuttal brief, with

arguments regarding Commerce's selection of Jiangsu Guyu as a mandatory respondent.[27]  Fine

---

[19] *Id.*
[20] *See* Respondent Selection Memorandum.
[21] *Id.*
[22] *See* Commerce's Letter, "Rejection of Untimely Respondent Selection Comments," dated May 30, 2019.
[23] *See Multilayered Wood Flooring from the People's Republic of China:  Preliminary Results of Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2017*, 85 FR 6908 (February 6, 2020) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM).
[24] *See* Fine Furniture's Letter, "Case Brief," dated March 13, 2020 (Fine Furniture's Case Brief).
[25] *See* Commerce's Letter, "Rejection of New Information in Case Brief," dated March 19, 2020.
[26] *See* Jiangsu Guyu's Letter, "Resubmittal of Case Brief," dated March 19, 2020 (Jiangsu Guyu's Case Brief).
[27] *See* Petitioner's Letter, "Rebuttal Brief," dated March 24, 2020 (Petitioner's Rebuttal Brief).

Furniture and Jiangsu Guyu argued in their case briefs that Commerce should not have relied on the CBP data to select Jiangsu Guyu as a mandatory respondent and should therefore rescind the respondent selection of Jiangsu Guyu.[28]  The petitioner argued that Commerce properly considered the alleged errors in the CBP data and correctly selected Jiangsu Guyu as the mandatory respondent.[29]  The petitioner further claimed that if Commerce de-selected Jiangsu Guyu, the only subsidy rate calculated would be that of Baroque Timber, which would result in a rate that is less representative of the Chinese industry as a whole.[30]

Commerce published the *Multilayered Wood Flooring from China Final Results* on November 27, 2020.  In the *Multilayered Wood Flooring from China Final Results*, Commerce calculated rates of 14.09 percent *ad valorem* for Baroque Timber and 122.92 percent *ad valorem* for Jiangsu Guyu, and determined a weighted-average rate of 20.75 percent *ad valorem* for non-selected companies.  In Comment 1 of the IDM, Commerce addressed the parties' arguments regarding its selection of Jiangsu Guyu as a mandatory respondent.  In responding to the claims about the reliability of the CBP data, Commerce stated that it had used its conversion factor of 0.015 mm, which has been relied on since the first administrative review, to convert entries in square meters to cubic meters, and that "less than 0.05 percent of the entries in the CBP data lacked quantity and/or unit of measure."[31]  Therefore, Commerce concluded that neither of these issues rendered the CBP data as a whole unusable for respondent selection purposes.  Commerce also noted that only one company, Hengtong, timely submitted its Q&V data during the respondent selection period and, in line with its practice, Commerce accepted the certified Q&V data in lieu of the CBP data for Hengtong's entries of subject merchandise during the POR.[32]

---

[28] *See* Fine Furniture's Case Brief at 3-5; and Jiangsu Guyu's Case Brief at 16-17.
[29] *See* Petitioner's Rebuttal Brief at 22-25.
[30] *Id*. at 23-24.
[31] *See Multilayered Wood Flooring from China Final Results* IDM at 15.
[32] *Id*.

Regarding Fine Furniture's claims in its case brief that the CBP data contained entries with unreasonably large quantities for certain companies, Commerce said that,

> no evidence (*e.g.*, Q&V data, Infodrive data, *etc.*) was placed on the record at the time of respondent selection which contradicted the CBP data or otherwise demonstrated that the CBP dataset was unreliable in its entirety. As the respondent selection data are used only to rank the exporters under review by volume of shipments during the POR so that Commerce can make a selection determination under section 777A(e)(2)(B) of the Act early in the review, Commerce does not and cannot require that the data be flawless {footnote omitted}.[33]

Commerce also disagreed that it should have issued Q&V questionnaires, as CBP data are based on information required by and provided directly to CBP and, thus, are generally accurate and reliable for respondent selection purposes. Commerce concluded that Fine Furniture and Jiangsu Guyu had not provided "any compelling arguments that have not already been addressed" that would require Commerce to deviate from its preferred practice of relying on CBP data in respondent selection.[34]

Finally, Commerce noted that no party argued that Jiangsu Guyu is unrepresentative of the Chinese wood-flooring industry, or that the subject merchandise it entered into the United States was atypical of the subject merchandise entered into the United States by other exporters.[35] Therefore, Commerce determined that the CBP data were reliable for determining the mandatory respondents in the 2017 review and that de-selecting Jiangsu Guyu for the *Multilayered Wood Flooring from China Final Results* would be inappropriate.

## III.    REMAND OPINION AND ORDER

In the *Remand Opinion and Order*, the Court ordered Commerce to fully address the interested parties' comments on the use of CBP data for respondent selection, and to reconsider the respondent selection determination and the calculation of the CVD subsidy rate for non-selected companies under review. In the *Remand Opinion and Order*, the Court held that

---

[33] *Id*. at 15-16.
[34] *Id*. at 16.
[35] *Id*.

Commerce lawfully rejected Jiangsu Guyu's untimely submitted Q&V data on May 30, 2019. However, the Court explained that the timely filed respondent selection comments presented certain information that "detracts from the weight of the data relied on," and Commerce must account for such information in its respondent selection.[36]  The Court held that, in this particular case, Commerce provided a reasonable explanation regarding how the variations in the company names did not compromise the reliability of the CBP data.[37]  Additionally, the Court found that parties failed to articulate how certain entries with no unit of measurement and volume of zero affected the overall reliability of the CBP data.[38]

However, the Court stated that Commerce did not adequately consider all of the arguments and information placed on the record concerning possible discrepancies in the CBP data used to select the mandatory respondents.  Specifically, Commerce did not consider the inconsistent units of measurement in meters for one entry.[39]  Furthermore, Commerce did not consider very large entries from several companies recorded in cubic meters that were called into question by timely submitted evidence demonstrating apparent inconsistencies in the CBP data.[40]  Accordingly, the Court ordered Commerce to reevaluate the calculation of the CVD subsidy rate for non-selected companies under review based on its reconsideration of the respondent selection process, reasoning that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies."[41]

Therefore, as ordered, Commerce is addressing the comments made by interested parties concerning the reliability of the CBP data for respondent selection and reconsidering its selection

---

[36] *See Remand Opinion and Order* at 33 (citing *Ad Hoc Shrimp I*, 35 CIT 1115-17, 1332-34791 F. Supp. 2d (2011)).
[37] *Id.* at 29.
[38] *Id.*
[39] *Id.* at 28.
[40] *Id.* at 35.
[41] *Id.* at 35-36 and 39.

of mandatory respondents for individual examination, as well as the rate for the non-selected

companies.

A.      **Commerce's Use of CBP Data for Respondent Selection**

Per the *Initiation Notice*, Commerce placed CBP data on the record and permitted

interested parties with the opportunity to comment on the CBP data.  As noted in the Respondent

Selection Memorandum:

> {o}n March 21, 2019, we received comments regarding the CBP data from the
> American Manufacturers of Multilayered Wood Flooring (the petitioner), Jiaxing
> Hengtong Wood Co., Ltd. (Hengtong), and Jiangsu Senmao Bamboo and Wood
> Industry Co., Ltd. (Jiangsu Senmao).   In its CBP data comments, Hengtong
> provided its quantity and value (Q&V) of exports to the United States during the
> POR.[42]

As noted above, the Court agreed with certain of Commerce's responses to comments

raised by the interested parties.  In particular, the Court agreed that the minor variations of names

in the CBP data and the few entries with no unit of measurement and volume of zero do not

affect the overall reliability of the CBP data used in respondent selection.  However, while

Commerce addressed certain comments in the Respondent Selection Memorandum, Commerce

acknowledges that it did not specifically address the comments regarding:  (1) an entry in the

CBP data with the unit of measure labeled in "meters"; and (2) certain very large entry volumes

labeled in cubic meters.  In particular, with respect to the second point, Commerce did not

specifically address interested parties' explanation that "the average 40-foot container has a

capacity of 67.7 cubic meters and the number of containers it would take to transport all of this

merchandise is not realistic."[43]

Regarding the entry in the CBP data for which the unit of measure was labeled in

"meters," we note that this was the [                      ] in the CBP dataset with that unit of measure.[44]

---

[42] *See* Respondent Selection Memorandum at 2.
[43] *See Remand Opinion and Order* at 11.
[44] *See* CBP Data Release at Attachment.

By comparison, there were [                    ] with zero as the quantity in the CBP data and the Court noted that, "interested parties in their comments to Commerce and the moving parties in their briefs failed to articulate how entries that lack a unit of measurement or have a volume of '0' affect the overall reliability of the Customs data."[45]  Similarly, although the petitioner noted that the CBP data included [            ] recorded in meters, it did not explain how [              ] would impact respondent selection or detract from the reliability of the CBP data as a whole. Upon review, Commerce notes that exclusion or inclusion of the [            ] in meters did not affect the ranking of top exporters for the purpose of respondent selection, nor did it impact the overall reliability of the CBP data.

More importantly, in line with the Court's *Remand Opinion and Order*, we are reconsidering the record evidence submitted by Jiangsu Senmao and Hengtong indicating that the average 40-foot container holds a capacity of 67.7 cubic meters of goods.[46]  As Jiangsu Senmao noted, the CBP data included very large entries from four companies which were not, upon further review, realistic when compared to the information on the record concerning container size, and in relation to the other entries in the CBP data.[47]  We note that we used Q&V data submitted by Hengtong in making our respondent selection determination, but were unable to use Jiangsu Guyu's Q&V data for respondent selection because it was untimely submitted, not only after the deadline for comments on the CBP data but also after the Respondent Selection Memorandum was issued.  Furthermore, we also note that neither [                    ] nor [                                        ] submitted comments concerning the reliability of the CBP data placed on the record or certified Q&V data, although both companies had very large entries in the CBP data, similar to those for [            ] and [                ].

---

[45] *See Remand Opinion and Order* at 29.
[46] *Id.* at 30.
[47] *Id.*

However, upon further review of the record, we agree that Jiangsu Senmao's and Hengtong's CBP data comments and the evidence they presented on shipping container size do indicate that certain of the CBP data relating to [

                    ] appear to be unrealistic.  As noted above, Commerce did not specifically address Jiangsu Senmao's and Hengtong's exhibits in their CBP data comments providing information about shipping containers that noted the maximum capacity of 67.7 cubic meters for 40-foot containers.  Based on the maximum capacity of 67.7 cubic meters for 40-foot containers, [   ] entries in the CBP data would require unrealistically large numbers of shipping containers.  Specifically, the smallest of these entries has a reported quantity of [      ] cubic meters, which would require [    ] 40-foot shipping containers.  Additionally, the reported quantity for this entry is several multiples greater than the quantity of the next largest reported entry.  The other [   ] unrealistically large entries would require nearly [           ] shipping containers and, consequently, seem even more implausible.[48]  On this basis, Commerce agrees with the parties and the Court that the specific subset of [   ] CBP data entries with unrealistically large quantities are unreliable for the purpose of selecting mandatory respondents for individual review.

As expressed by the Court in *Pakfood*, it is reasonable for Commerce to select respondents using CBP data unless those data are unusable.[49]  While the interested parties argued that the unrealistically large entries detract from the reliability of the CBP data as a whole, we disagree.  The entries with unrealistically large quantities constitute only 0.1 percent of all entries in the CBP data and there is no indication that the remaining 99.9 percent of entries are unusable, based on record evidence in this review.  We conclude that only certain entries in the CBP data are unusable and, therefore, it would have been appropriate to request the four companies with unrealistically large entries in the CBP data to submit their Q&V data for purposes of respondent

---

[48] *See* Attachment I.
[49] *See Pakfood Pub. Co. v. United* States, 753 F. Supp. 2d 1334, 1345-46 (CIT 2011) (*Pakfood*).

selection.[50]  However, because it would be impractical to reopen the record to request Q&V data

from those four companies at this stage, we continue to rely on the CBP data on the record.  To

address the problem presented by the entries with unrealistically large quantities, we find it

reasonable and appropriate to exclude those [  ] largest entries from the CBP data for the

purposes of reconsidering the respondent selection.

As outlined in the Respondent Selection Memorandum, Baroque Timber and Jiangsu

Guyu were the top exporters of subject merchandise into the United States during the POR,

based on the CBP data and Hengtong's certified Q&V data.  After removing those [  ] entries

with unrealistically large quantities from the CBP data, Jiangsu Guyu is no longer one of the top

two exporters.[51]  However, Baroque Timber, based on entries combined with those of its cross-

owned affiliate, Riverside Plywood Corporation (Riverside Plywood), remains among the top

two exporters.[52]  As a result, we agree that the selection of Jiangsu Guyu as a mandatory

respondent was not supported by substantial evidence and, accordingly, we further agree that de-

selecting Jiangsu Guyu as a mandatory respondent would be appropriate.  Furthermore, although

we are reconsidering respondent selection, it is not practicable at this stage to select another

mandatory respondent and proceed with a full review of the newly selected company.

Regarding the selection of Baroque Timber, its status as a cross-owned affiliate with

Riverside Plywood was originally established in the 2016 administrative review, when it was

first selected as a mandatory respondent in an administrative review of this CVD order, and

reaffirmed in the *Multilayered Wood Flooring from China Final Results*.[53]  Accordingly,

Commerce treats Baroque Timber and Riverside Plywood as a combined producer/exporter and

---

[50] *Id.*, 753 F. Supp. 2d at 1343-44.

[51] *See* Attachment II.

[52] *Id.*

[53] *See Multilayered Wood Flooring from the People's Republic of China:  Preliminary Results of Countervailing Duty Administrative Review, Rescission of Review, in Part, and Intent to Rescind Review, in Part; 2016*, 83 FR 67229 (December 28, 2018), and accompanying PDM, unchanged in *Multilayered Wood Flooring from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2016*, 84 FR 38221 (August 6, 2019).

assigns the two companies a single CVD rate.  Therefore, for the purpose of reconsidering respondent selection with respect to the 2017 administrative review, we cumulate entries for both companies to correctly calculate the total shipment volume for the combined entity.  Further, no party in the administrative review and in the litigation challenged Baroque Timber's selection as a mandatory respondent.  Therefore, because we do not find that the CBP dataset as a whole is unreliable, and because Baroque Timber continues to be one of the two largest exporters by volume after removing the unreasonably large entries from the CBP data, we conclude that the selection of Baroque Timber as mandatory respondent in this review is supported by substantial evidence.

**B.      Rate for Jiangsu Guyu and Baroque Timber**

Neither the Court's remand decision nor the evidence on the record with respect to certain CBP data entries invalidates the individual subsidy rates calculated for Jiangsu Guyu and Baroque Timber, as those rates were based on substantive record evidence and were calculated using the companies' own submitted data.  Accordingly, Commerce will continue to apply the rates calculated for Jiangsu Guyu and Baroque Timber to each company, respectively.

Commerce seeks to determine the most accurate subsidization rates as possible and the rate assigned to Jiangsu Guyu, resulting from an individual examination of its own company-specific information on the record, remains the most accurate for Jiangsu Guyu.  Furthermore, it would be inappropriate to assign Jiangsu Guyu the same rate as the non-selected companies. Section 705(c)(5)(A) of the Act describes the "all-others rate" as applicable to "the exporters and producers not individually investigated."  In this case, Jiangsu Guyu was an individually investigated exporter/producer, which remains true despite Commerce's reevaluation of Jiangsu Guyu as a mandatory respondent based on it no longer being one of the top two largest exporters/producers after removing the entries with the unrealistically large volumes from the

CBP data.  Therefore, we will continue to apply to Jiangsu Guyu the rate calculated for it in the *Multilayered Wood Flooring from China Final Results* (*i.e.*, 122.92 percent).

## C.    Rate for Non-Selected Companies

Based on our reconsideration of the reliability of certain entries of CBP data, it is also necessary to reconsider the rate assigned to the non-selected companies.  In the Draft Remand, we determined that it was appropriate to include Jiangsu Guyu's rate in the calculation of the non-selected rate, in accordance with section 705(c)(5)(A) of the Act.[54]  In these final results of redetermination, and as explained in detail below, we have revised that conclusion and are not including Jiangsu Guyu's rate in calculating the rate for non-selected companies.  Specifically, as a result of our determination that Jiangsu Guyu is not one of the largest exporters, for the purposes of this redetermination, we are only including Baroque Timber's calculated subsidy rate in the rate for the non-selected companies, as the sole mandatory respondent.

As the Court stated in its *Remand Opinion and Order*, "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies."[55]  Although the statute and Commerce's regulations do not address the establishment of a rate to be applied to non-selected companies under review, Commerce generally looks for guidance to section 705(c)(5) of the Act, which provides instructions for calculating the all-others rate in an investigation.  Section 705(c)(5)(A)(i) of the Act sets forth the "general rule" that the all-others rate is calculated using "the weighted average countervailable subsidy rates established for exporters and producers individually investigated," excluding those with zero or *de minimis* rates, and those determined entirely on the basis of facts available.

---

[54] *See* Draft Remand at 14-17.
[55] *See Remand Opinion and Order* at 36.

In our reconsideration of respondent selection, we have determined that Baroque Timber is the sole exporter and/or producer of subject merchandise selected as a mandatory respondent in this review.  In the underlying review, Baroque Timber received a countervailable subsidy rate of 14.09 percent, which is above *de minimis* and not based entirely on facts available.[56] Therefore, for these final results of redetermination, and in accordance with section 705(c)(5)(A)(i) of the Act, we are assigning the subsidy rate of 14.09 percent *ad valorem* to each of the 157 companies for which a review was requested and not rescinded, and which were not selected as mandatory respondents, with the exception of Jiangsu Guyu for the reasons discussed in "B. Rate for Jiangsu Guyu and Baroque Timber" above.

## IV.    INTERESTED PARTY COMMENTS

We have analyzed and addressed the comments received in the Petitioner's Draft Remand Comments, Jiangsu Senmao's Draft Remand Comments, Fine Furniture's Draft Remand Comments, and CH Plaintiffs' Draft Remand Comments.  The SRA Companies stated that they "support and incorporate by reference" the comments from other respondents in this proceeding on the Draft Remand.[57]

As stated above and explained further below, we have revised our conclusion with respect to the calculation of the rate for non-selected companies under review.  We continue to reach the same conclusion in the Draft Remand regarding our reconsideration of respondent selection and selection of Baroque Timber as the sole mandatory respondent, which no party challenged, as well as the assignment of Jiangsu Guyu's individually calculated CVD subsidy rate to itself.

---

[56] *See Multilayered Wood Flooring from China Final Results*.
[57] *See* SRA Companies' Draft Remand Comments at 1.

**Issue 1: Whether Commerce Should Select Additional Respondents**

*Jiangsu Senmao's Comments*

- Commerce rightly acknowledged that certain CBP data are unrealistic but offered no explanation as to why it ignored the comments on the CBP data from Jiangsu Senmao and Hengtong about the data's reliability in the underlying review.[58]

- Commerce also provides no explanation when it says it is not "practicable" to conduct the review properly by selecting another mandatory respondent.[59]  Commerce admits it acted contrary to law, but essentially argues that it is too late to provide a remedy.  There is nothing preventing Commerce from asking the Court for more time to reopen the record and reach a determination in accordance with the law.[60]

- Commerce should issue Q&V questionnaires to the 10 largest exporters based on the CBP data and select the second largest exporter as a new mandatory respondent. Alternatively, Commerce could select Jiangsu Senmao as the second mandatory respondent, because Jiangsu Senmao would have been the second largest exporter if Commerce had used reliable data and it has already provided a voluntary response.[61]

- After admitting that it erred, Commerce must provide plaintiffs with a remedy. Commerce should proceed with a full review of Jiangsu Senmao, which volunteered as a respondent and has been fully cooperative, as the respondent in place of Jiangsu Guyu.[62]

---

[58] *See* Jiangsu Senmao's Draft Remand Comments at 3.
[59] *Id*. at 4 (citing Draft Remand at 12).
[60] *Id*.
[61] *Id*. at 4-5.
[62] *Id*. at 9.

**Commerce's Position:**

Section 777A(e)(1) of the Act directs Commerce to determine an individual countervailable subsidy rate for each known exporter or producer of subject merchandise; however, section 777A(e)(2) of the Act provides that when it is not practicable to determine individual subsidy rates for each known exporter or producer due to a "large number of exporters or producers" involved in a review, Commerce may limit its examination to a "reasonable number" of exporters or producers.  In our reconsideration of respondent selection for this redetermination, we continue to find that we have examined as many exporters/producers as practicable, consistent with Commerce's statutory obligation and its respondent selection practice in this and previous reviews.[63]  Commerce fully examined two respondents – Jiangsu Guyu and Baroque Timber – in the underlying review.  Although we are no longer treating Jiangsu Guyu as a mandatory respondent in these final results of redetermination, we find that it would not be practicable or necessary to reopen the record and select additional respondents at this point in the proceeding.

First, section 777A(e)(2) of the Act does not require Commerce to meet a minimum threshold in determining the number of mandatory respondents.  We thus disagree with Jiangsu Senmao that it should be selected in this redetermination or that Commerce should issue Q&V questionnaires to the 10 largest exporters and producers according to the revised CBP data.[64]  Commerce is not obligated to select a certain number of respondents nor issue Q&V questionnaires under the statuary framework for respondent selection.[65]

In the underlying review, Commerce selected two mandatory respondents from the top two exporters/producers based on the CBP data.[66]  In the re-ranking of the top

---

[63] *See e.g.,* Respondent Selection Memorandum.
[64] *See* Jiangsu Senmao's Draft Remand Comments at 4-5.
[65] *See* section 777A(e)(2) of the Act.
[66] *See* Respondent Selection Memorandum.

exporters/producers using CBP data with the anomalous entries excluded, Baroque Timber (including its cross-owned affiliate, Riverside Plywood) and Jiangsu Senmao are the top two exporters/producers.  Baroque Timber remains an individually examined company in this review, with a rate on the record calculated using the company's own data for the POR.  Although Jiangsu Senmao requested selection as a voluntary respondent in the underlying review, Commerce has not individually examined Jiangsu Senmao in this review and has not calculated a CVD subsidy rate for it.  Section 782(a) of the Act does not require Commerce to select voluntary respondents, but rather permits it to do so if the selection of voluntary respondents "would {not} be unduly burdensome and inhibit the timely completion of the {proceeding}." Although Jiangsu Senmao requested voluntary treatment at the time of respondent selection and submitted an initial questionnaire response in the underlying review,[67] Commerce did not select voluntary respondents in the underlying review due to resource constraints.[68]   In this remand proceeding, if we were to select Jiangsu Senmao or any other company as an additional respondent, we would need to analyze questionnaire responses, prepare supplemental questionnaires and perform the necessary calculations in order to assign an individual rate to the selected company.  Given the complexity of the underlying review, the resource constraints Commerce continues to face, and the accelerated timeframe of a redetermination, we do not find it would be practicable to select an additional respondent at this point in the proceeding. Moreover, we have on the record an individually calculated rate for one of the two largest exporters based on our revised CBP data rankings, Baroque Timber.  Thus, we do not agree that it is necessary to examine additional respondents in order to reach a determination which is in accordance with the law or the Court's remand order.

**Issue 2: Jiangsu Guyu's Individually Assigned CVD Rate**

---

[67] *See* Jiangsu Senmao's Draft Remand Comments 5; *see also* Jiangsu Senmao's Letter, "Section III Questionnaire Response," dated July 1, 2019.
[68] *See* Memorandum, "Whether to Select Voluntary Respondents," dated September 26, 2019.

*Fine Furniture's Comments*

- Commerce correctly determined that the selection of Jiangsu Guyu was not supported by substantial evidence and that it is not appropriate to consider Jiangsu Guyu a mandatory respondent. However, Commerce incorrectly continued to assign Jiangsu Guyu the rate calculated in the final results and should instead assign Jiangsu Guyu the same rate as non-selected companies.[69]

- Although section 777A(e)(1) of the Act provides Commerce the statutory basis for determining individual subsidy rates for each firm requesting a review, in this review, Commerce relied on the exemption in section 777A(e)(2)(A)(ii) of the Act, which requires that the exporters and producers accounting for the largest volume of subject merchandise from the exporting country be selected for individual examination.[70]

- The SAA states that "Commerce will calculate individual dumping margins for those firms selected for examination and an 'all others' rate to be applied to those firms not selected for examination."[71]

- Additionally, the Court explained that the SAA makes clear that an individual dumping margin calculated for an exporter or producer selected for examination is one which Commerce will use to calculate an individual dumping margin under section 771A(c).[72]

- The statute divides firms into two groups: firms selected for examination and firms not selected for examination. In this case, Commerce de-selected Jiangsu Guyu as a mandatory respondent and therefore had no legal basis to assign Jiangsu Guyu an individually calculated rate.[73]

---

[69] *See* Fine Furniture's Draft Remand Comments at 4.
[70] *Id*. at 5.
[71] *Id.* at 5 (citing Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, Vol. 1 (1994) (SAA) at 872).
[72] *Id.* at 5 (citing *China Mfrs. Alliance, LLC v. United States*, 205 F. Supp. 3d 1325, 1336 (CIT 2017) (*China Mfrs. Alliance*)).
[73] *Id.* at 6.

- Commerce has refused to calculate an individual rate for non-selected companies in past cases.  For instance, in *Nantong Uniphos Chems*, Commerce received a questionnaire response and verified the responses from Nantong, a possible cross-owned affiliate of a mandatory respondent, but ultimately decided that Nantong was not cross-owned and therefore not subject to the proceeding, refusing the company's request to assign it a rate because it was not a mandatory respondent.[74]

- Commerce was justified in *Nantong Uniphos Chems* to not independently review Nantong because it was not one of the largest exporters and producers.  Furthermore, Commerce expressly recognized that its authority to assign an individual rate to a company was tied to respondent selection, saying, "{b}ecause Nantong Uniphos was neither a mandatory respondent nor a voluntary respondent, Commerce was not required to calculate an individual rate for it."[75]

- Commerce has made similar decisions in other cases where cross-owned companies submitted responses, but Commerce decided not to treat the affiliated companies as cross-owned and excluded them from the subsidy rate calculation.[76]

- In those cases, Commerce strictly insisted that only companies selected as respondents were entitled to their own rates and those non-selected companies received the non-selected rate.  However, in this case, Commerce reversed course and is willing to assign an individual rate to Jiangsu Guyu, not selected as a mandatory or voluntary respondent.

- In *China Mfrs. Alliance*, an antidumping proceeding, the Court rejected Commerce's decision not to assign an individually-calculated margin to the plaintiff, Double Coin,

---

[74] *Id.* (citing *Nantong Uniphos Chems. Co. v. United States*, Slip Op. 18-78, Ct. No. 17-00150, 2018 CIT LEXIS 86, at *10 (CIT 2018) (*Nantong Uniphos Chems*)).

[75] *Id.* at 6-7 (citing *Nantong Uniphos Chems*, Defendant's Response Brief at 22).

[76] *Id.* at 7-8 (citing *Certain New Pneumatic Off-the-Road Tires From India:  Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination With Final Antidumping Determination*, 81 FR 39903 (June 20, 2016), and accompanying Decision Memorandum at 11; and *Aluminum Extrusions From the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 76 FR 18521 (April 4, 2011)).

because Commerce had selected it as a mandatory respondent.[77]

- In this case, Jiangsu Guyu was not selected as a mandatory respondent and thus the inverse is true – Commerce is not authorized to calculate an individual rate for Jiangsu Guyu.[78]

- The consistent legal interpretation of section 777A(c) of the Act is that the selection of a respondent for individual examination is a necessary prerequisite for assigning an individually calculated rate.[79]

- Commerce's practice to only calculate a company-specific rate for a respondent selected for individual examination is further supported by additional decisions from the Court explaining that voluntary respondent treatment is the only other option available to a respondent who was not chosen as a mandatory respondent but desires a rate based on its own sales.[80]

- The Draft Remand contradicts Commerce's policy of refusing to calculate rates for non-selected companies by assigning Jiangsu Guyu a CVD rate of 122.92 percent.

- Commerce explained at length that the CBP data that Commerce used to initially select Jiangsu Guyu were flawed but only had two paragraphs justifying its continued assignment of an individually calculated rate to Jiangsu Guyu.[81]

- Although Commerce explains that the all-others rate calculated under section 705(c)(5)(A) is for non-selected companies, Commerce fails to provide a sufficient reason for its decision not to assign that rate to Jiangsu Guyu, given that Commerce has now determined it is a non-selected company in this review.[82]

---

[77] *Id.* at 8-9 (citing *China Mfrs. Alliance* at 1331).
[78] *Id.* at 9.
[79] *Id.*
[80] *Id.* (citing *DuPont Teijin Films China Ltd. v. United States*, 38 CIT 1282, 1302, 7 F. Supp. 3d 1338, 1357 (2014)).
[81] *Id.* at 10.
[82] *Id.* (citing *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001)).

- After determining Jiangsu Guyu's selection as mandatory respondent was unsupported, there are no reasonable grounds for Commerce to continue to assign Jiangsu Guyu a rate that would never have been calculated in the first place but for Commerce's unlawful respondent selection in the underlying review.[83]

- Contrary to Commerce's claim in the Draft Remand that Jiangsu Guyu's rate remains valid, after rightly de-selecting Jiangsu Guyu as a mandatory respondent Commerce must void the conclusions drawn pursuant to that premise (*i.e.*, the collection of Jiangsu Guyu's data to calculate an individual rate).[84]

- In similar situations, Commerce has revised foundational determinations in an investigation after appeal.  For example, in *Arcelor Mittal Dofasco Inc. v. United States*, 33 CIT 71, 72, 602 F. Supp. 2d 1330, 1331 (2009), the Court rejected Commerce's argument that it had expended significant resources to conduct the review, in defending its decision to not rescind the underlying review upon requests to do so by Canadian steel producers and the domestic industry.[85]

- Additionally, in *N.M. Garlic Growers Coal. & El Bosque Farm v. United States*, 352 F. Supp. 3d 1281, 1288 (CIT 2018), Commerce rescinded a review because it determined that the review request "was illegitimate ab initio."[86]

- Commerce's should completely rewind its decision to reflect what would have occurred absent its wrongful selection of Jiangsu Guyu as a mandatory respondent by eliminating Jiangsu Guyu's calculated rate from the record.[87]

- The Court recognized the consequential nature of Commerce's respondent selection phase.  The Court "not{ed} for Commerce the key importance of deciding correctly

---

[83] *Id.* at 11.
[84] *Id.*
[85] *Id.* at 12.
[86] *Id.*
[87] *Id.*

foundational aspects in any investigation or review. Those foundational aspects include respondent selection."[88]

- The Court understood that if Commerce revised its respondent selection and de-selected Jiangsu Guyu, the time and resources spent would be wasted because Jiangsu Guyu's rate would have been calculated for no purpose as it was not a mandatory respondent.[89]

- Based on Commerce's decision to de-select Jiangsu Guyu as a mandatory respondent, it is only logical for Commerce to void Jiangsu Guyu's rate, and by extension, exclude Jiangsu Guyu's rate from the non-selected rate calculation.[90]

*CH Plaintiff's Comments*

- Commerce's explanation that "Jiangsu Guyu remains in the review as a company with an individually calculated rate" is fatally flawed and ignores the established respondent selection process.[91]

- Section 777A(e)(2)(A) of the Act allows Commerce to calculate CVD rates based on the investigation of a reasonable number of exporters, determined by (1) a sample of exporters or producers that Commerce determines is statistically valid based on the information available at the time of selection, or (2) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that Commerce determines can be reasonably examined.[92]

- In the instant review, Commerce opted for the second option rather than conduct a sampling analysis "at the time of selection," and it is unlawful for Commerce to revert to a type of sampling at this stage.[93]

---

[88] *Id.* at 13 (citing *Remand Opinion and Order* at 38).
[89] *Id.*
[90] *Id.* at 13.
[91] *See* CH Plaintiff's Draft Remand Comments at 5 (citing Draft Remand at 12).
[92] *Id*.
[93] *Id*.

- Commerce acknowledged that Jiangsu Guyu's selection was "not supported by substantial evidence," therefore, the rate calculated for Jiangsu Guyu is also not supported by substantial evidence because it should never have been investigated in the first place.[94]

- Jiangsu Guyu was a non-mandatory respondent and affirmatively advocated not to be selected as an individually reviewed respondent.  Commerce's explanation that Jiangsu Guyu remained an "individually investigated exporter/producer" is founded upon the false premise that it should have been individually investigated in the first place.[95]

- Unlawfully forcing Jiangsu Guyu to participate in the review only to use its rate – regardless of whether the rate is favorable – denies Jiangsu Guyu the opportunity of full relief, *i.e.*, the freedom from participating in the proceeding.[96]

**Commerce's Position:**

As explained in our analysis above, neither the Court's remand decision nor the evidence on the record with respect to certain CBP data entries invalidates the individual subsidy rates calculated for Jiangsu Guyu and Baroque Timber, as those rates were based on substantive record evidence and were calculated using the companies' own submitted data.   Although we have determined that Jiangsu Guyu is not one of the exporters/producers accounting for the largest volume of the subject merchandise during the POR within the meaning of section 777A(e)(2)(A)(ii) of the Act, we have already calculated an individual rate for it, and to assign it any other rate (*i.e.*, the non-selected rate) would yield a less accurate outcome.  The courts have repeatedly highlighted that a central goal of the statute is to determine rates as accurately as possible.[97]  In light of the unique circumstances in this case, we will continue to apply Jiangsu

---

[94] *Id.* at 3 (citing Draft Remand at 12).
[95] *Id*. at 5-6 (citing Draft Remand at 13).
[96] *Id*. at 6.
[97] *See, e.g., Rhone Poulenc, Inc. .v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) ("{T}he basic purpose of the statute {is} determining current margins as accurately as possible."); *see also* section 701(a) of the Act.

Guyu's individually-calculated rate to itself, despite our determination that it is not one of the largest exporters/producers of subject merchandise.

We disagree with Fine Furniture that after determining that Jiangsu Guyu is not one of the largest exporters/producers under review Commerce lacks the authority to assign it the rate calculated for it during the review.[98]  Fine Furniture cites to several cases to support its argument that Commerce's selection of a respondent is linked with its authority to calculate an individual rate for that company.[99]  However, many of the cited cases involve situations in which Commerce declined to calculate a rate for a company that was not selected as a mandatory or voluntary respondent.  For example, in *Nantong Uniphos Chems*, Nantong Uniphos Chemicals was neither a mandatory respondent nor a voluntary respondent, but Commerce issued questionnaires and conducted a verification of the company because the mandatory respondent, Nanjing University of Chemical Technology Changzhou Wujin Water Quality Stabilizer Factory, had identified it as an affiliate.[100]  However, in Commerce's final determination in that investigation, it found the two entities were not cross owned and consequently assigned Nantong Uniphos Chemicals the all-others rate.  Nantong Uniphos Chemicals challenged Commerce's decision not to assign it an individually calculated rate, despite having the necessary information to do so.  The Court sustained Commerce's decision, saying that having analyzed and verified Nantong Uniphos Chemicals' submissions "does not then require that Commerce take the further step of calculating a separate rate for Nantong {Uniphos Chemicals}," which was neither a mandatory nor voluntary respondent.[101]

---

[98] *See* Fine Furniture's Draft Remand Comments at 6.
[99] *Id*.
[100] *See Nantong Uniphos Chems*., Slip Op. 18-73 at *1-2.
[101] *Id*. at *4.  We also find *China Mfrs. Alliance* inapposite to this proceeding.  In that case, the CIT held that Commerce erred in assigning a mandatory respondent in an antidumping proceeding the China-wide rate after failing to qualify for a separate rate.  However, the Federal Circuit reversed the CIT's decision, finding that Commerce could permissibly assign the China-wide entity rate to the respondent.  *See China Mfrs. Alliance*, 1 F.4th 1028, 1039-40 (Fed. Cir. 2021).  Thus, *China Mfrs. Alliance,* which addressed Commerce's separate rate practice in non-market economy antidumping proceedings, is not pertinent to whether Jiangsu Guyu should receive its own calculated CVD rate.

Those cases are thus distinguishable from the facts of this case, in which we calculated an individual rate for Jiangsu Guyu in the underlying review.  Thus, these final results of redetermination do not reverse past Commerce practice of not calculating rates for non-selected companies, as Fine Furniture argues,[102] because Jiangsu Guyu's rate has already been calculated. The United States' position in *Nantong Uniphos Chems* was that Commerce is not required to calculate an individual rate for companies not selected as mandatory or voluntary respondent. This case differs from that situation because here Commerce has already calculated a rate for Jiangsu Guyu in the underlying review.  Although we are no longer treating Jiangsu Guyu as a mandatory respondent in these final results of redetermination, the record still contains an individually calculated rate for Jiangsu Guyu that is derived from company-specific data and is thus the most accurate subsidy rate for that company during the POR.  Moreover, the *Remand Opinion and Order* did not challenge the calculated rate for Jiangsu Guyu, notwithstanding the other issues raised in the underlying litigation.  The CH Plaintiffs and Fine Furniture have not identified any instance in a prior case where Commerce was prohibited from assigning to a company under review a rate that Commerce had calculated for it using its own data.  Moreover, assigning Guyu the individual rate that has already been calculated for it from record evidence is also consistent with the general goal of section 777A(e) of the Act that Commerce calculate individual subsidy rates for as many exporters or producers as possible.

Finally, we disagree with the CH Plaintiffs that, by continuing to apply Jiangsu Guyu's calculated rate to it, Commerce is denying Jiangsu Guyu the full relief it is due as a result of the *Remand Opinion and Order*.[103]  First, the *Remand Opinion and Order* does not specifically address the rate Commerce should assign Jiangsu Guyu, and the CH Plaintiffs do not identify any support in the *Remand Opinion and Order* for their claim that Jiangsu Guyu is owed an

---

[102] *See* Fine Furniture's Draft Remand Comments at 8 and 10.
[103] *See* CH Plaintiffs' Draft Remand Comments at 6.

opportunity of "full relief" not to participate in the proceeding.[104]  Furthermore, there is no right under Commerce's statute or regulations to be free from participating in an administrative review.  Notwithstanding the CH Plaintiffs' comment that Jiangsu Guyu and other exporters make business decisions in order to avoid selection as mandatory respondents,[105] we note that Jiangsu Guyu requested to be included in the underlying administrative review.[106]

## Issue 3:  The CVD Rate for Non-Selected Companies

*Fine Furniture's Comments*

- Commerce's determination to include Jiangsu Guyu in the non-selected company rate was contrary to the *Remand Opinion and Order* and unsupported by substantial evidence and not in accordance with law.[107]

- When calculating the subsidy rate for non-selected companies, pursuant to section 705(c)(5)(A)(i) of the Act, Commerce generally uses "an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and *de minimis* countervailable subsidy rates, and any rates determined entirely under section 776 {of the Act}."[108]

- When an administrative review involves a large number of exporters or producers, Commerce may limit its examination to "exporters and producers accounting for the largest volume of the subject merchandise for the exporting country that the administering authority determines can be reasonably examined," pursuant to section 777A(e)(2)(A)(ii) of the Act.[109]

- The Court recognized the interplay between sections 705(c)(5)(A)(i) and

---

[104] *Id.*
[105] *Id.*
[106] *See* Anhui Boya Bamboo & Wood Products Co., Ltd.'s *et al* Letter, "Requests for Administrative Review: Multilayered Wood Flooring from the People's Republic of China," dated December 20, 2018.
[107] *See* Fine Furniture's Draft Remand Comments at 14.
[108] *Id.* at 15.
[109] *Id.*

777A(e)(2)(A)(ii) of the Act, dealing with the all-others rate and respondent selection respectively, and unambiguously stated that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies."[110]

- The Court also recognized that the non-selected companies' rate is tied directly to the mandatory respondents' rate by stating that "{a}s Commerce's selection of mandatory respondents is not supported by substantial evidence, the calculation of the rate for non-selected companies using the individual margins assigned to Jiangsu Guyu and Baroque Timber was not reasonable, and, therefore, the court remands to Commerce for reconsideration the calculation of the rate for non-selected companies."[111]

- Commerce ignored the Court's order and continued to include Jiangsu Guyu's rate in the non-selected rate.  In order to bring the remand into accordance with the *Remand Opinion and Order*, Commerce must use the rate for the sole mandatory respondent, Baroque Timber, that remains one of the largest producers and is representative of the industry.[112]

- Commerce should not minimize the Court's directive not to use Jiangsu Guyu's CVD rate in the non-selected rate calculation.  The Court of Appeals for the Federal Circuit (Federal Circuit) has recognized that "mandatory respondents are assumed to be representative of all exporters."[113]

- The use of Jiangsu Guyu's CVD rate in the non-selected rate calculation ignores that the only reason it selected Jiangsu Guyu in the first place was because it determined that Jiangsu Guyu was one of the two largest companies "that account for the largest volume

---

[110] *Id.* (citing *Remand Opinion and Order* at 36).
[111] *Id.* at 16 (citing *Remand Opinion and Order* at 36).
[112] *Id.*
[113] *Id.* (citing *Bosun Tools Co. v. United States*, Nos. 2021-1929, 2021-1930, 2022 U.S. App. LEXIS 624, at *1 (Fed. Cir. 2022); and *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017)).

of subject merchandise imports during the POR."[114]

- The Federal Circuit has determined that the use of data from the largest volume exporters makes an assumption that the data are representative of all exporters and reviewing only a limited number will enable Commerce to reasonably approximate the margins of all known exporters.[115]

- Further, the Federal Circuit stated that "the representativeness of the investigated exporters is the essential characteristic that justifies an 'all others' rate based on a weighted average for such respondents."[116]

- In the Draft Remand, Commerce makes no direct finding that Jiangsu Guyu is representative of the industry, only that because Baroque Timber's and Jiangsu Guyu's sales data are the most accurate reflection of the companies' respective share of exports to the United States, using these sales data to determine the non-selected companies' rate is sufficient to alleviate the Court's concern about the non-selected rate.[117]

- There is no basis in this case for Commerce to find that Jiangsu Guyu is representative of the industry, because it is not one of the largest exporters and its rate is an outlier and highly exorbitant when compared to the rates assigned to other mandatory respondents in previous reviews.[118]

- Commerce failed to address its obligation to calculate the non-selected rate as accurately as possible and the binding Federal Circuit precedent regarding representativeness in the Draft Remand.[119]

- Commerce must recognize the Federal Circuit's interpretation of the statute and revise

---

[114] *Id.* at 17 (citing Respondent Selection Memorandum).

[115] *Id.* at 17 (citing *Albemarle v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016)) (*Albemarle v. United States*)).

[116] *Id.* at 17 (citing *Albemarle v. United States quoting Nat'l Knitwear & Sportswear Ass'n v. United States*, 779 F. Supp. 1364, 1373-74, 15 CIT 548 (CIT 1991)).

[117] *Id.* at 18 (citing Draft Remand at 16).

[118] *Id.* at 18-19.

[119] *Id.* at 20 (citing *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 61 F. Supp. 3d 1306, 1337 (CIT 2015) (quoting *Rhone Poulenc v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).

the non-selected rate to only incorporate data from the largest exporter alone, Baroque Timber.[120]

- Additionally, Commerce must follow the same approach as decided in *Fine Furniture v. United States*, where Commerce calculated a separate rate based solely on one company's weighted-average dumping margin, the only remaining mandatory respondent after the antidumping order was revoked with regards to the other individually examined mandatory respondent, *i.e.*, Fine Furniture.[121]

- In the Draft Remand, Commerce erred in its treatment of Jiangsu Guyu as akin to a voluntary respondent based on *MacLean-Fogg*.  In that case, the Federal Circuit explained that the statute requires that the rates for voluntary respondents that were not *de minimis*, zero, or based on facts available must be included in the calculation of the non-selected rate.[122]

- *MacLean-Fogg* arose from a CVD investigation where all three mandatory respondents refused to cooperate and were assigned rates under adverse facts available (AFA), but the two voluntary respondents were assigned rates ranging from 8-10 percent.[123]  The appellants in *MacLean-Fogg* argued that Commerce should rely on the rates calculated for the voluntary respondents instead of using the AFA rates applicable to the mandatory respondents.[124]

- The Federal Circuit agreed and determined that "exporters and producers individually investigated" pursuant to section 705(c)(5)(A) of the Act must include voluntary respondents.[125]

---

[120] *Id.*
[121] *Id.* (citing *Fine Furniture (Shanghai) Ltd. v. United States*, No. 16-00145, 2021 CIT LEXIS 27 (March 3, 2021 (*Fine Furniture v. United States*)).
[122] *Id.* at 21 (citing *MacLean-Fogg* at 1240).
[123] *Id.* (citing *MacLean-Fogg* at 1239).
[124] *Id.* (citing *MacLean-Fogg* at 1240).
[125] *Id.* (citing *MacLean-Fogg* at 1246).

- The central issue in *MacLean-Fogg* related to the reasonableness of Commerce assigning the non-selected companies under review the mandatory respondents' AFA rate of 374.15%, thus leaving Commerce with "nothing left with which it could calculate the all-others rate under the general rule."[126]

- After multiple remands from the Court in *MacLean-Fogg*, Commerce decided to employ a reasonable method to establish the all-others rate of 137.65% by "subtracting the contributions of subsidy programs specific to the voluntary respondents from the 374.15% rate previously given to the mandatory respondents based on all subsidy programs."[127]

- The circumstances in *MacLean-Fogg* are different from the 2017 review of wood flooring.  In this case, Commerce calculated a rate for Baroque Timber, which as the largest exporter by volume in the POR, is representative of the non-examined companies under review and fully usable by Commerce to calculate the all-others rate under section 705(c)(5)(A)(i) of the Act.  Thus, Commerce does not need to resort to other individually-calculated rates, like from a voluntary respondent or Jiangsu Guyu.[128]

- There were no voluntary respondents and Jiangsu Guyu never requested to be treated as a voluntary respondent.  Jiangsu Guyu was erroneously selected as a mandatory respondent based on flawed CBP data.[129]

- Commerce has a well-established practice, affirmed by the Court, of not relying on data that is improperly on the administrative record, even if that information otherwise has some independent probative value or is not itself flawed.[130]

- For example, in *Hyosung v. United States*, the Court upheld Commerce's rejection of

---

[126] *Id.* at 22 (citing *MacLean-Fogg* at 1239).
[127] *Id.* (citing *MacLean-Fogg* at 1240).
[128] *Id.* at 22-23.
[129] *Id.* at 23.
[130] *Id.*

Hyosung Corporation's untimely Q&V information and assignment of the AFA rate to Hyosung Corporation even though the Q&V information, if accepted, would have demonstrated Hyosung Corporation had no shipments during the POR.[131]

- In this case, because Commerce relied on information not properly collected, Commerce renders its Draft Remand unsupported by substantial evidence. For the final remand filed with the Court, Commerce should refrain from relying on any Jiangsu Guyu information in the non-selected rate.[132]

*CH Plaintiff's Comments*

- Commerce's use of Jiangsu Guyu's rate to calculate the non-selected rate after acknowledging its de-selection as a mandatory respondent is unlawful because Jiangsu Guyu never volunteered nor was selected by Commerce as a "voluntary respondent" in the underlying review.[133]

- For practical purposes, Commerce did not actually de-select Jiangsu Guyu as a mandatory respondent, because it relied on information gathered when Guyu was labeled a mandatory respondent and kept the rate which is calculated for the company.[134]

- Commerce's continued selection of Baroque Timber already satisfies the requirement of selecting the largest exporters during the POR needed to calculate the non-selected rate. The Court has upheld Commerce's decision to use a single mandatory respondent to calculate the rate for non-selected companies in the companion antidumping review in this wood flooring case.[135]

- Commerce can only effectively de-select Jiangsu Guyu as a mandatory respondent by

---

[131] *Id.* at 24 (citing *Hyosung Corp. v. United States*, 35 CIT 343 (2011)).
[132] *Id.*
[133] *See* CH Plaintiff's Draft Remand Comments at 4.
[134] *Id*. at 7.
[135] *Id*. at 7-8 (citing *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1347 (CIT 2018)).

disregarding information gathered during its unlawful selection as a mandatory respondent.[136]

- Commerce's explanation that it is not "practicable" to select and review a new mandatory respondent rings hollow because it was presented with an actual voluntary respondent during the review – Jiangsu Senmao.[137]  Although, Commerce may be correct, because it has previously attempted to reinvestigate and recalculate rates through a voluntary remand in the companion antidumping case on multilayered wood flooring and determined it was a futile exercise.[138]

- Given its limited resources, it is reasonable for Commerce to calculate the non-selected CVD rate based on the rate of the single remaining mandatory respondent, Baroque Timber.[139]

*Jiangsu Senmao's Comments*

- Commerce's treatment of Jiangsu Guyu as "akin" to a voluntary respondent is given no explanation and is contrary to the company's efforts to not be selected as a respondent at all.[140]  Commerce then argues that a voluntary respondent must be included in the non-selected rate.[141]

*The Petitioner's Comments*

- Commerce appropriately selected the mandatory respondents based on the CBP data and calculated the non-selected companies rate based on the subsidy rates calculated for those respondents in the underlying review.[142]

- However, the petitioner recognizes the Court's *Remand Opinion and Order* and believes

---

[136] *Id*. at 8.
[137] *Id*. (citing Draft Remand at 12).
[138] *Id*. at 9 (citing *Changzhou Hawd Flooring Co., Ltd. v. United States*, 44 F. Supp. 3d 1376, 1383 (CIT 2015)).
[139] *Id*.
[140] *See* Jiangsu Senmao's Draft Remand Comments. at 6.
[141] *Id*.
[142] *See* Petitioner's Draft Remand Comments at 4.

Commerce has issued its Draft Remand in accordance with the Court's order.[143]

- In the Draft Remand, Commerce correctly calculated the rate for non-selected companies and submits that the CVD rates that the agency calculated in the Draft Remand are factually supported.[144]

**Commerce's Position:**

Upon review of the interested parties' comments and a re-examination of the *Remand Opinion and Order*, we agree that it is not appropriate to continue to include Jiangsu Guyu's rate in the calculation of the non-selected rate. Accordingly, for these final results of redetermination, we are relying solely on Baroque Timber's rate (*i.e.*, 14.09 percent) to establish the non-selected rate. As discussed further below, we conclude that including Jiangsu Guyu's rate in the calculation of the non-selected rate would not be consistent with the clear direction of the Court's *Remand Opinion and Order.*

As noted by Fine Furniture, the Court's *Remand Opinion and Order* states that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies."[145] As we have re-considered respondent selection with the revised CBP data and consequently determined that Jiangsu Guyu is not one of the top exporters or producers of subject merchandise during the POR, consistent with the Court's *Remand Opinion and Order,* we have determined not to include its individual rate in the calculation of the rate for non-selected companies. Moreover, we acknowledge that Jiangsu Guyu was not a voluntary respondent in the underlying review, and thus are no longer treating it as "akin to a voluntary respondent." Accordingly, we are not including its rate in the calculation of the non-selected rate as contemplated in *MacLean-Fogg.*

---

[143] *Id*.
[144] *Id.*
[145] *Remand Opinion and Order* at 36.

Therefore, we conclude that relying on the rate for the sole selected respondent in this review (*i.e.*, Baroque Timber) as the non-selected rate complies with the Court's *Remand Opinion and Order*.

## V.   FINAL RESULTS OF REDETERMINATION

Consistent with the *Remand Opinion and Order*, we have reconsidered the use of CBP data in determining that Baroque Timber and Jiangsu Guyu were the top two producers and exporters of the subject merchandise, in light of certain unreasonably large entry volumes in the CBP data used to select mandatory respondents.  As a result, we have determined that Jiangsu Guyu was not one of the largest producers and exporters under section 777A(e)(2)(A)(ii) of the Act and no longer consider it a mandatory respondent for purposes of these final results of redetermination.  But as explained above, we have continued to assign it its own individually calculated rate.  In the Draft Remand, we treated Jiangsu Guyu as akin to a voluntary respondent with its own rate and included it in the calculation of the rate for non-selected companies.  However, as explained above, for these final results of redetermination we are calculating the rate applicable to the non-selected companies based only on the rate individually calculated for Baroque Timber.

12/7/2022

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance

**ATTACHMENT I**

**Top 20 Largest Entries in CBP Data**
*Business Proprietary Information in its Entirety*
*(Not subject to public summary)*

[

]

**ATTACHMENT II**

**Top Ten Largest Exporters/Producers of Subject Merchandise
After Removal of Anomalous Entries from CBP Data**

*Contains Business Proprietary Information*

| TOP TEN EXPORTERS/PRODUCERS (in alphabetical order) | QUANTITY (Cubic Meters) |
|---|---|
| BAISHAN HUAFENG WOODEN PRODUCTION* | [   ] |
| BAROQUE TIMBER INDUSTRIES & RIVERSIDE PLYWOOD CORPORATION | [   ] |
| DALIAN PENNY INT'L* | [   ] |
| DONG WOO PRINTING | [   ] |
| DONGTAI FUAN UNIVERSAL DYNAMICS, LLC* | [   ] |
| FINE FURNITURE | [   ] |
| FUSONG JINLONG WOODEN* | [   ] |
| JIANGSU SENMAO BAMBOO WOOD INDUSTRY CO., LTD. | ] |
| ZHEJIANG DADONGWU AUTO ELEC | [   ] |
| ZHEJIANG FUERJIA WOODEN CO., LTD.* | [   ] |

*Entries reported with quantities in square meters were converted to cubic meters using the 0.015 mm conversion factor relied on in the underlying review.