C-570-971
Remand
POR:  01/01/2017 – 12/31/2017
~~Business Proprietary Document~~
PUBLIC VERSION
E&C/OVIII:  JS/JZ

*Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et. al. v. United States*
**Consol. Court No.  20-03885 (CIT February 14, 2023)**
**Multilayered Wood Flooring from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.   SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the February 14, 2023, remand order of the U.S. Court of International Trade (the Court) in *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et. al. v. United States*, Consol. Court No. 20-03885 (February 14, 2023) (*Remand Order*).  These final results of redetermination concern the final results of the 2017 administrative review of countervailing duty (CVD) order on multilayered wood flooring from the People's Republic of China (China).[1]  Specifically, these final results of redetermination concern the *First Remand Results*, wherein Commerce deselected one of the two mandatory respondents in the underlying review and assigned to the non-selected companies the CVD rate for the sole remaining mandatory respondent.[2]

In the *Remand Order*, the Court granted Commerce's request for a voluntary remand to consider whether there are any implications of the U.S. Court of Appeals for the Federal

---

[1] *See Multilayered Wood Flooring from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2017*, 85 FR 76011 (November 27, 2020) (*Multilayered Wood Flooring from China Final Results*), and accompanying Issues and Decision Memorandum (IDM)

[2] *See Final Results of Redetermination Pursuant to Court Remand, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et. al. v. United States*, Consol. Court No. 20-03885, Slip op. 22-93 (CIT 2022), dated October 17, 2022 (*First Remand Results*).

Circuit's (Federal Circuit) recent decision in *YC Rubber*[3] on Commerce's respondent selection and non-examined company rate determinations in this review.  On March 10, 2023, we released our Draft Remand to interested parties.[4]  On March 17, 2023, we received comments from Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. (Jiangsu Senmao);[5] Fine Furniture (Shanghai) Limited and Double F Limited (collectively, Fine Furniture);[6] Jiangsu Guyu International Trading Co., Ltd. (Jiangsu Guyu), Shenzhenshi Huanwei Woods., Co., Ltd., Zhejiang Biyork Wood Co., Ltd., Kemian Wood Industry (Kunshan) Co., Ltd., Jiangsu Simba Flooring Co., Ltd., Dongtai Fuan Universal Dynamics, LLC, Jiashan Huijiale Decoration Material Co., Ltd., and Dalian Jiahong Wood Industry Co. (collectively, Jiangsu Guyu *et. al.*);[7] and Struxtur, Inc. (Struxtur) and Evolutions Flooring, Inc. (Evolutions).[8]  We also received timely filed comments from the American Manufacturers of Multilayered Wood Flooring (the petitioner), but asked  it to resubmit its comments because the comments were filed on the record of the incorrect segment of the proceeding.  On March 21, 2023, the petitioner correctly refiled its comments on the record of this remand proceeding.[9]

As discussed below, Commerce has considered whether there are implications from *YC Rubber* on its respondent selection process detailed in the *First Remand Results*, and concludes

---

[3] *See YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489 (Fed. Cir. 2022) (*YC Rubber*).

[4] *See* Draft Results of Redetermination, *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et. al. v. United States*, Consol. Court No. 20-03885 (CIT 2022), dated March 10, 2023 (Draft Remand).

[5] *See* Jiangsu Senmao's Letter, "Comments on Draft Remand Redetermination," dated March 17, 2023 (Jiangsu Senmao's Draft Remand Comments).

[6] *See* Fine Furniture's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated March 17, 2023 (Fine Furniture's Draft Remand Comments).

[7] *See* Jiangsu Guyu *et. al.*'s Letter, "Letter in Lieu of Comments on Second Draft Remand Redetermination," dated March 17, 2023 (Jiangsu Guyu *et. al.'s* Draft Remand Comments).

[8] *See* Struxtur and Evolutions' Letter, "Comments on Draft Remand Redetermination," dated March 17, 2023 (Struxtur and Evolutions' Draft Remand Comments).

[9] *See* Petitioner's Letter, "Resubmission of Comments on Draft Results of Redetermination Pursuant to Court Remand," dated March 21, 2023 (Petitioner's Draft Remand Comments).

that it is reasonable and in accordance with law to continue to decline to select a replacement mandatory respondent in this review.

## II.    BACKGROUND

On March 14, 2019, Commerce published the initiation of an administrative review of the CVD order on multilayered wood flooring from China for 170 producers and exporters of subject merchandise for the period of review (POR) January 1, 2017, through December 31, 2017.[10]

On May 21, 2019, Commerce issued its Respondent Selection Memorandum noting that Commerce determined to limit the number of respondents selected for individual examination to the two largest companies by U.S. import entry volume for which a review was requested pursuant to section 777A(e)(2)(A)(ii) of the Tariff Act of 1930, as amended (the Act).[11] Accordingly, Commerce selected Baroque Timber Industries (Baroque Timber) and Jiangsu Guyu for individual examination.[12]  Commerce published its *Multilayered Wood Flooring from China Final Results* on November 27, 2020.  In the *Multilayered Wood Flooring from China Final Results*, Commerce calculated rates of 14.09 percent *ad valorem* for Baroque Timber and 122.92 percent *ad valorem* for Jiangsu Guyu, and determined a weighted-average rate of 20.75 percent *ad valorem* for the non-selected companies under review.[13]

On August 11, 2022, the Court issued the *First Remand Order*, which ordered Commerce to address comments from interested parties on the use of U.S. Customs and Border Protection (CBP) data for respondent selection, and to reconsider the respondent selection determination and the calculation of the CVD subsidy rate for the non-selected companies under review.[14]

---

[10] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 FR 9297 (March 14, 2019).
[11] *See* Memorandum, "Respondent Selection," dated May 21, 2019 (Respondent Selection Memorandum).
[12] *Id.*
[13] *See Multilayered Wood Flooring from China Final Results*, 85 FR at 76012.
[14] *See Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. v. United States*, 589 F. Supp. 3d 1195 (CIT 2022) (*First Remand Order*).

Specifically, the Court found that Commerce did not address comments and evidence that certain CBP data were unreliable and made a respondent selection determination not supported by substantial evidence.[15]  Accordingly, the Court also ordered Commerce to reconsider the calculation of the non-selected company rate, which was based on the two mandatory respondents in the review (*i.e.*, Baroque Timber and Jiangsu Guyu).[16]

On December 7, 2022, we submitted our *First Remand Results* to the Court.[17]  In our *First Remand Results*, we excluded certain CBP data in the ranking of the top two producers and exporters for respondent selection and determined that Jiangsu Guyu was not one of the largest producers and exporters under section 777A(e)(2)(A)(ii) of the Act.[18]  As a result, we deselected Jiangsu Guyu as a mandatory respondent and relied on Baroque Timber as the sole mandatory respondent.[19]  Commerce also removed Jiangsu Guyu's rate from the calculation of the rate applicable to the non-selected companies under review, and assigned the non-selected companies the rate calculated for Baroque Timber (*i.e.*, 14.09 percent).[20]

On January 11, 2023, Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. (Jiangsu Senmao), Jiangsu Keri Wood Co., Ltd. (Keri Wood), and Sino-Maple (Jiangsu) Co., Ltd. (collectively, Jiangsu Senmao *et. al.*) submitted comments in opposition to the *First Remand Results*, requesting that the Court remand this case to Commerce a second time with instructions to select Jiangsu Senmao as a mandatory respondent and recalculate the rate for the non-selected companies.[21]  Jiangsu Senmao *et. al.* relied on intervening legal authority in *YC Rubber* to

---

[15] *Id.*, 589 F. Supp. 3d at 1215.
[16] *Id.*, 589 F. Supp. 3d at 1214.
[17] *See First Remand Results*.
[18] *Id.* at 12-13.
[19] *Id.*
[20] *Id.* at 34.
[21] *See* Jiangsu Senmao *et. al.*'s Comments in Opposition to Remand, dated January 11, 2023 (Jiangsu Senmao *et. al.*'s Post-Remand Comments), at 4.

support its request for the Court to again remand this case to Commerce to select an additional

mandatory respondent and to recalculate the rate assigned to non-selected respondents.[22]  On

February 14, 2023, Commerce requested a voluntary remand to consider whether the Federal

Circuit's recent decision in *YC Rubber* has implications for Commerce's respondent selection

and non-examined company rate determinations in this review, which the Court granted.[23]

## III.    ANALYSIS

The Federal Circuit in *YC Rubber* addressed instances in which Commerce limits its

investigation to fewer than all exporters or producers involved in an administrative review

pursuant to section 777A(c)(2) of the Act.  Section 777A(c)(2) of the Act provides:

> If it is not practicable to make individual weighted average dumping margin
> determinations under paragraph (1) because of the large number of exporters or
> producers involved in the investigation or review, the administering authority may
> determine the weighted average dumping margins for a reasonable number of
> exporters or producers by limiting its examination to:
>
> (A) a sample of exporters, producers, or types of products that is statistically valid
>     based on the information available to the administering authority at the time
>     of selection, or
>
> (B) exporters and producers accounting for the largest volume of the subject
>     merchandise from the exporting country that can be reasonably examined.

The Federal Circuit in *YC Rubber* interpreted this provision to mean that a "reasonable

number" of exporters or producers selected for individual examination is "generally more than

one."[24]  In its comments on the *First Remand Results*, Jiangsu Senmao *et. al.* cite *YC Rubber* as

support for their request for the Court to remand this matter to Commerce again for Commerce to

select Jiangsu Senmao as a replacement mandatory respondent and recalculate the rate assigned

---

[22] *Id.* at 6-7 (citing *YC Rubber*).
[23] *See Remand Order*.
[24] *See YC Rubber* at *4.

to the non-selected companies under review.[25]  After further consideration of respondent selection in this case and the implications of *YC Rubber*, we have determined that it is reasonable and in accordance with law to continue declining to select an additional mandatory respondent in this review.

In *YC Rubber*, the Federal Circuit held that Commerce had erred by examining only a single exporter or producer when multiple had requested review because Commerce had not explained why it would be reasonable to use a single margin in calculating the margin for the non-selected separate rate respondents.  Specifically, the Court held that "{t}he question is whether the statute permits Commerce to review a single exporter or producer when multiple have requested review <u>and Commerce has not demonstrated that it was otherwise reasonable to calculate the all-others rate based on only one respondent.</u>"[26]  In the *First Remand Results*, we determined that it is reasonable to rely on a single rate for the calculation of the non-selected rate, following the deselection of Jiangsu Guyu as a mandatory respondent.[27]  Upon reconsideration of that determination in light of the Court's opinion in *YC Rubber*, we find that, the unique circumstances of this case are such that it is "otherwise reasonable" to continue to calculate the non-selected company rate based on the rate calculated for the sole remaining mandatory respondent (*i.e.*, Baroque Timber).  As discussed in further detail below, the case-specific circumstances here include the established representativeness of Baroque Timber's rate, the timing of the decision *vis-à-vis* this proceeding (*i.e.*, after the final determination of a segment in which Commerce conducted a full review of two mandatory respondents), as well as the administrative burden posed by conducting a full review of an additional mandatory

---

[25] *See* Jiangsu Senmao *et. al.*'s Post-Remand Comments at 6-7.
[26] *See YC Rubber* at *3 (emphasis added).
[27] *See First Remand Results* at 17-18.

respondent.  In short, while we recognize that *YC Rubber* instructs Commerce to generally select more than one mandatory respondent in most circumstances, we do not interpret the language from the Federal Circuit to have intended for such a mandate to apply beyond the circumstances it addressed, and we believe in this case it is reasonable and in accordance with law to continue to rely solely on the rate calculated for Baroque Timber in determining the rate for the non-selected companies under review.

The Federal Circuit in *YC Rubber* concluded that based on the language of section 777A(c)(2) of the Act, Commerce is "generally" required to select more than one mandatory respondent when multiple companies had requested review and it limits its individual examination in the course of an administrative review to a reasonable number of exporters or producers.  Indeed, the Federal Circuit explained that the central question in *YC Rubber* is whether Commerce was permitted to review only a single exporter or producer when "Commerce has not demonstrated that it was otherwise reasonable to calculate the all-others rate based on only one respondent."[28]  We do not interpret the Federal Circuit's language in *YC Rubber* as requiring that Commerce always calculate the non-selected rate in an administrative review based on at least two individually calculated rates.  Instead, it instructs that if Commerce departs from this norm to rely on the rate from only one mandatory respondent, it must demonstrate it is reasonable to do so.  We believe that due to the unique circumstances of this case, it is reasonable to continue relying solely on Baroque Timber's individually calculated rate in determining the non-selected company rate, and declining to select an additional mandatory respondent.

---

[28] *See YC Rubber* at *9.

The purpose of section 735(c)(5) of the Act, which was examined in *YC Rubber*, is to ensure that the all-others rate is representative of the companies not selected for individual examination.[29]  Commerce notes that no other party subject to the non-selected company rate, other than Jiangsu Senmao *et. al.*, has questioned the representativeness of the non-selected company rate that arose from the *First Remand Results* (the rate which is based solely on Baroque Timber's rate) or requested that Commerce select a replacement mandatory respondent in this review.  In fact, in comments on the draft results of that redetermination, one such party, Fine Furniture, argued affirmatively for basing the non-selected company rate solely on the rate assigned to Baroque Timber, which "remains one of the largest producers and is representative of the industry."[30]  Baroque Timber's representativeness of the industry is further substantiated by the fact that it is [        ] exporter/producer during the POR based on the quantity and value (Q&V) information submitted by Baroque Timber and Jiangsu Senmao in their questionnaire responses.[31]  Although the revised CBP data relied on in the *First Remand Results* show Baroque Timber as the [        ] exporter/producer [        ], upon further review of the record within the context of this remand (*e.g.*, Jiangsu Senmao's arguments about the representativeness of Baroque Timber's rate), there is additional record information that should be considered. Specifically, the Q&V information submitted by both parties demonstrates that Baroque Timber [

---

[29] *See First Remand Order*, 589 F. Supp. 3d at 1213-14 (citing *Qingdao Qihang Tyre Co., Ltd. v. United States*, 308 F. Supp. 3d 1329, 1362 (CIT 2018)).
[30] *See* Fine Furniture's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated October 26, 2022, at 16.
[31] *See* Jiangsu Senmao's Letter, "Section III Questionnaire Response," dated July 1, 2019 (Jiangsu Senmao's Voluntary QR), at 6; and Baroque Timber's Letter, "Baroque Timber Initial Questionnaire Response," dated July 16, 2019 (Baroque Timber's IQR), at Exhibits 7a and 7b.

].[32]  While we acknowledge that this information was not available to Commerce at the time of the respondent selection determination in the underlying review, it cannot be ignored in the context of the special circumstances of this remand, wherein parties are questioning the representativeness of the non-selected rate.  Further, Commerce has an established practice in this and prior administrative reviews of this order of relying on certified Q&V information in lieu of CBP data, when such information is available on the record.[33]  Based on Baroque Timber's status as the [      ] exporter/producer during the POR according to the Q&V data, we conclude that the current rate calculated for the non-selected companies is representative of the industry as a whole, and by extension the non-selected companies under review.

Further, we find as speculative Jiangsu Senmao *et. al.*'s argument that our decision not to select Jiangsu Senmao as a replacement mandatory respondent and calculate an individual rate is "unreasonable because it results in an abnormally high {rate for non-selected companies}."[34] While Commerce has assigned Jiangsu Senmao a rate in other recent administrative reviews that is lower than the rate for the non-selected companies in this review,[35] the individual rate we might calculate for it in this review may be higher, which would increase the non-selected company rate, or it could be *de minimis*, which would not change the rate for the non-selected companies under review, under the guidance of section 705(c)(5)(A)(i) of the Act.  Individual subsidy rates for any given respondent can differ from review to review depending on a host of complex factors, including the volume of sales made in a given year, allegations of new subsidy programs being used, changes in the amount of subsidy benefits received by a company, *etc.*, and

---

[32] *Id.*
[33] *See* Respondent Selection Memorandum at 5-6; *see also Multilayered Wood Flooring from China Final Results IDM* at 15.
[34] *See* Jiangsu Senmao *et. al.*'s Post-Remand Comments at 8.
[35] *Id.* at 7-8.

thus, Jiangsu Senmao's assumption that its individual rate, if calculated for the period of this review, would result in a lower non-selected company rate is mere conjecture.  Accordingly, we did not consider such results-oriented arguments in our decision to continue not selecting Jiangsu Senmao as a replacement respondent.

Although in the *First Remand Results* we ultimately relied solely on Baroque Timber's subsidy rate as a result of deselecting Jiangsu Guyu as a mandatory respondent, we had originally selected and examined two companies as mandatory respondents in the underlying review.  While *YC Rubber* holds that Commerce must generally select more than one respondent for individual examination, we do not interpret this statement to mean that Commerce must always calculate the non-selected company rate based on the individual rates of two or more respondents.  Accordingly, we do not believe that *YC Rubber* necessarily encompasses the unique situation presented by this case, wherein Commerce has deselected a mandatory respondent in the course of a remand.  In the underlying review, we selected two mandatory respondents, Baroque Timber and Jiangsu Guyu, then completed an individual investigation and calculated a CVD rate for each.  In the *First Remand Results*, we determined that certain entries in the CBP data were unreliable and consequently deselected Jiangsu Guyu, in accordance with the Court's *First Remand Order*, as it was no longer among the top exporters/producers for the POR.  Thus, we removed Jiangsu Guyu's rate from the calculation of the rate for non-selected companies and relied only on Baroque Timber's rate.  Because we were left with a single mandatory respondent only after the completion of the final results of this administrative review, we believe that it is reasonable under *YC Rubber* that Commerce not be required to select an additional mandatory respondent to replace the one it deselected in order to conform to the Court's *First Remand Order*.  These circumstances are different from the review underlying *YC*

*Rubber*, where one of the two mandatory respondents withdrew its participation only two weeks after Commerce issued the initial questionnaire, and Commerce never selected a replacement respondent, nor explained its decision to not do so.[36]

As we stated in the *First Remand Results*, due to the complexity of the underlying review, the resource constraints Commerce continues to face, and the accelerated timeframe of a redetermination, it is not practicable or reasonable to select a replacement respondent after publishing the final results of this review.[37]   Jiangsu Senmao *et. al*. argue that this justification is not adequately explained and that Commerce can ask the Court for additional time to complete an individual review of it and calculate a rate.[38]   However, we believe that it is reasonable to decline to, in effect, conduct the review anew for a replacement mandatory respondent, even if the company has provided its initial questionnaire response, as Jiangsu Senmao has.   As elaborated below, this review covers several complex programs that require respondent parties to obtain information not currently on the record from entities not directly subject to the review (*i.e.*, Jiangsu Senmao's input suppliers and U.S. customers).   Further, Commerce's resources are constrained by the multiple ongoing administrative reviews of this same order, in addition to a multitude of other ongoing proceedings.

Jiangsu Senmao argues that, because it has already submitted a voluntary response to the initial questionnaire, the burden on Commerce to calculate a rate for it is "significantly lessen{ed}" and the time needed to reach a final remand redetermination is similarly reduced.[39]   However, the initial questionnaire response is merely the first of many steps in calculating a rate in an administrative review and the administrative burden required to do so is still considerable.

---

[36] *See YC Rubber* at *4-5.
[37] *See First Remand Results* at 18.
[38] *See* Jiangsu Senmao *et. al*.'s Post-Remand Comments at 5.
[39] *Id*.

In addition to reviewing Jiangsu Senmao's questionnaire response, Commerce would have to issue supplemental questionnaires regarding certain programs covered by this review. Additionally, Commerce would have to solicit and review an initial questionnaire response from the Government of China (GOC) and would have to issue supplemental questionnaires to the GOC pertaining to the ownership of Jiangsu Senmao's input suppliers under the various less than adequate remuneration (LTAR) programs covered by this review, in addition to any other programs unique to Jiangsu Senmao. Likewise, because this review covers the Export Buyer's Credit program, Commerce would need to request information from U.S. customers. Commerce would also have to allow time for Jiangsu Senmao, and other interested parties, to submit benchmarking information to value the inputs under the above-mentioned LTAR programs. Commerce then would have to allow time to examine all of the information submitted to prepare its preliminary results, after which it must allow time for the parties to review the preliminary results and submit case and rebuttal briefs before issuance of the final results. In all, although the fact that Jiangsu Senmao has already provided an initial questionnaire response may somewhat lessen the time needed to complete an administrative review with respect to it, Commerce normally has up to 365 days at a minimum under section 751(a)(3)(A) of the Act to complete an ordinary administrative review.

Having already examined two respondents in this review, interpreting *YC Rubber* as requiring the selection of a replacement respondent after the final results of review poses an administrative burden greater than that in the review underlying *YC Rubber*, where Commerce effectively only reviewed a single respondent. In this case, Commerce has already completed the investigatory steps described above for two mandatory respondents, and deselected one at the remand stage to comply with the Court's *First Remand Order*. We do not interpret *YC Rubber*

as compelling the selection of a replacement mandatory respondent in these circumstances. After the conclusion of the underlying administrative review where Commerce individually examined multiple companies, there may be any number of hypothetical scenarios where, on remand, Commerce is left with only one valid rate as the basis for the non-selected company rate.  We do not read *YC Rubber* so broadly as to disallow reasonable discretion not to review additional companies in such instances.  Otherwise, Commerce would be endlessly obliged to review period-specific information for additional companies well beyond the original underlying review due to any number of potential outcomes throughout the remand process that could result in Commerce having only one rate to use as the basis for the non-selected company rate.

## IV.    INTERESTED PARTY COMMENTS

We have analyzed and addressed the comments received in the Petitioner's Draft Remand Comments, Jiangsu Guyu's Draft Remand Comments, Jiangsu Senmao's Draft Remand Comments, and Fine Furniture's Draft Remand Comments.  Struxtur and Evolutions stated that they "incorporate by reference and in full" the comments from all other U.S. importers, Chinese producers, and Chinese exporters participating in this proceeding.[40]  As stated above, we continue to reach the same conclusion as in the Draft Remand regarding our decision not to select Jiangsu Senmao as a replacement respondent and assign it an individually calculated CVD rate.

*Petitioner's Comments*

- Commerce has appropriately and reasonably declined to select an additional mandatory respondent in this proceeding and should continue to do so in the final remand determination.[41]
- This case is distinguishable from *YC Rubber*, where the respondent formally withdrew two weeks after the initial questionnaires were issued.[42]  In this case, Commerce

---

[40] *See* Struxtur and Evolutions' Draft Remand Comments at 2.
[41] *See* Petitioner's Draft Remand Comments at 1-2.
[42] *Id*. at 2-3 (citing *YC Rubber* at *2).

investigated two mandatory respondents throughout the entire review, and it was only as part of a remand proceeding that Commerce deselected one of the respondents.[43]

- The breadth of the Federal Circuit's decision in *YC Rubber* is far narrower than Jiangsu Senmao suggests.[44]  The Federal Circuit did not hold that Commerce may never rely on a single mandatory respondent to calculate the non-selected company rate, but that Commerce must "generally" rely on "more than one" respondent rate.[45]

- The Federal Circuit in *YC Rubber* frames the question at issue as whether Commerce has "demonstrated that it was <u>otherwise reasonable</u> to calculate the all-others rate based on only one respondent."[46]  Thus, *YC Rubber* does not require that Commerce always calculate the non-selected rate in an administrative review based on at least two individually calculated rates but requires that if Commerce deviates from this norm that it demonstrates it is reasonable to do so.[47]

- The Federal Circuit's reasoning in *YC Rubber* does not, and should not, foreclose the possibility that Commerce relies on a single rate as the basis for the non-selected company rate, because Commerce may be left with only a single valid rate in any number of hypothetical scenarios after the conclusion of an administrative review and in a remand proceeding.[48]

- Under the circumstances of this case (*i.e.*, fully investigating two mandatory respondents throughout the underlying review), it is "otherwise reasonable" for Commerce not to select another respondent.[49]  In its final remand determination, Commerce should continue to rely solely on Baroque Timber's individually calculated rate in determining the non-selected company rate and decline to select an additional mandatory respondent.[50]

- Commerce's decision not to select an additional mandatory respondent is further supported by the fact that there is already an additional calculated subsidy rate on the record for an individually investigated company (*i.e.*, Jiangsu Guyu).[51]  Commerce should include Jiangsu Guyu's rate in the calculation of the non-selected company rate, consistent with the statute and court precedent.[52]  Relying on Jiangsu Guyu's rate in addition to Baroque Timber's rate would address the concerns the Federal Circuit expressed in *YC Rubber* over the selection of only one mandatory respondent and basing the non-selected company rate on the rate for a single company.[53]

*Jiangsu Senmao's Comments*

- In *YC Rubber*, the Federal Circuit held that basing a rate for non-selected companies on the rate of only one mandatory respondent was not reasonable or in accordance with the

---

[43] *Id*. at 3 (citing Draft Remand at 8-9).
[44] *Id*.
[45] *Id*. (citing *YC Rubber* at *4 and Draft Remand at 8-9).
[46] *Id*. (citing *YC Rubber* at *3 (emphasis added)).
[47] *Id*. at 3-4 (citing Draft Remand at 6-7).
[48] *Id*. at 4 (citing Draft Remand at 11).
[49] *Id*. (citing Draft Remand at 9).
[50] *Id*. (citing Draft Remand at 7).
[51] *Id*. at 5.
[52] *Id*.
[53] *Id*.

statute.[54]  The Federal Circuit concluded that the statute generally requires the "reasonable number" in section 777(c)(2) of the Act to be greater than one.[55]

- The Federal Circuit noted that in *Shaeffler Italia S.R.L. v. United States* the Court reached the same conclusion, writing that "the plural term 'reasonable number of exporters or producers,' read according to its plain meaning, does not encompass a quantity of one."[56]

- In this case, the Court remanded Commerce's *Multilayered Wood Flooring from China Final Results* to "reconsider its selection of mandatory respondents for individual examination and to address the comments made by interested parties concerning the reliability of the Customs data used for respondent selection."[57]  Further, it noted "the key importance of deciding correctly foundational aspects in any investigation or review," which "include respondent selection."[58]

- In the *First Remand Order*, the Court found that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies."[59]  The same issue of representativeness was also "at the heart of the *YC Rubber* case."[60]

- In the Draft Remand, Commerce ignores the problem of representativeness and attempts to limit the application of *YC Rubber* by concentrating on the Court's statement that the statute "generally" requires that the "reasonable number" be greater than one.[61]  Commerce utilizes this opening to claim that the unique circumstances of this case makes it "otherwise reasonable" to calculate the non-selected company rate based on the rate calculated for one mandatory respondent, Baroque Timber.[62]

- However, the circumstances of this case are not unique or difficult to deal with under the law.  It is only because Commerce failed to comply with the law from the outset of this administrative review that it will have to perform the work of reviewing another respondent, the reason for which stems from Commerce's refusal to consider evidence at the time of the initial respondent selection.[63]

- Nothing in this case justifies Commerce's departure from the general rule that it is unreasonable to select only a single mandatory respondent or rely on the rate of a single mandatory respondent in calculating the rate for all other exporters.  It might be reasonable if one exporter accounted for the vast majority of exports during the POR, but that is not the case here, and Commerce admits that [
        ].[64]

---

[54] *See* Jiangsu Senmao's Draft Remand Comments at 2-3 (citing *YC Rubber* and section 777A(c)(2) of the Act).
[55] *Id*. (citing *YC Rubber* at *10-11).
[56] *Id*. at 3 (citing *Shaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358, 1362–3 (CIT 2011) (emphasis in original)).
[57] *Id*. at 4 (citing *First Remand Order* at 1215).
[58] *Id*. (citing *First Remand Order* at 1215).
[59] *Id*. (citing *First Remand Order* at 1214).
[60] *Id*.
[61] *Id*.
[62] *Id*. at 4-5 (citing Draft Remand at 7).
[63] *Id*.
[64] *Id*. at 5 (citing Draft Remand at 7).

- The fact that Baroque Timber was one of the largest exporters does not make its rate alone representative of the rate of non-selected companies, nor does it justify the selection of only Baroque Timber as the sole mandatory respondent.[65]
- The fact that [                                    ] (*i.e.*, Jiangsu Senmao) was not selected is reason enough to conclude that Commerce's decision is not supported by substantial evidence or otherwise in accordance with law.[66]  Had Commerce properly adjusted the CBP data at the start of this review, there is no doubt that Jiangsu Senmao would have been selected as one of the mandatory respondents.[67]
- Commerce also claims to be complying with *YC Rubber* because it initially selected two mandatory respondents, but the selection of one of the two was absurd on its face based on the evidence Commerce ignored at the time of respondent selection.[68]  The Court also found that this respondent selection was not supported by substantial evidence or otherwise in accordance with law.[69]
- This case may be a more egregious abuse of discretion than in the one underlying *YC Rubber*.  In that case, Commerce also initially selected two mandatories, but one dropped out and Commerce failed to replace it.[70]  In this case, Commerce improperly selected the second mandatory respondent and refused to accept evidence at the outset.  In both cases, Commerce failed to comply with the law by not selecting a replacement mandatory respondent and improperly based the rate for non-selected companies on the rate of a single mandatory respondent.  The only fair and just way to comply with the law is for Commerce to select a second mandatory respondent and finish the review in accordance with law.[71]
- In *Siemens Gamesa*, the Court also remanded a respondent selection determination to Commerce to "correct the error it made when it decided, contrary to {section 777A(c)(2) of the Act}, to examine individually only one respondent and, having also decided to proceed according to largest export volume under {section 777A(c)(2)(B) of the Act}, not to examine Siemens Gamesa in particular."[72]  The facts in that case are essentially the same as here, as Commerce's respondent selection decisions were unlawful and resulted in an unreasonable rate for non-selected companies.[73]
- Commerce's argument that no party, aside from Jiangsu Senmao, has questioned the representativeness of the non-selected company rate based only on Baroque Timber's rate cannot be taken seriously.[74]  The number of parties objecting is irrelevant.[75]
- Commerce wrongly rejects Jiangsu Senmao's argument that not selecting it results in an abnormally high rate for non-selected companies under review.  While Jiangsu Senmao cannot guarantee the outcome of this review if selected as a mandatory respondent,

---

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.* at 6 (citing Draft Remand at 8).

[69] *Id.* (citing *First Remand Order*)

[70] *Id.* (citing *YC Rubber* at *4).

[71] *Id.*

[72] *Id.* at 6-7 (citing *Siemens Gamesa Renewable Energy v. United States*, No. 21-00449, 2023 WL 2034254, at *9 (CIT Feb. 16, 2023) (*Siemens Gamesa*)).

[73] *Id.* at 7.

[74] *Id.* (citing Draft Remand at 7).

[75] *Id.*

Jiangsu Senmao has been assigned a rate lower than Baroque Timber's rate (*i.e.*, 14.09 percent) in all recent administrative reviews where it has been a mandatory respondent.[76]

- The Federal Circuit's decision makes the predicted outcome irrelevant as basing the rate for non-selected companies on the rate of a single mandatory respondent is almost never reasonable, including under the facts of this case.  Jiangsu Senmao is [                    ] and the failure to calculate a rate for Jiangsu Senmao, by itself, makes the non-selected company rate unrepresentative of non-selected companies.[77]
- Commerce cannot claim that it would be too burdensome to conduct an individual examination of Jiangsu Senmao and calculate a rate in order to provide a remedy for the unlawful actions in this proceeding.[78]  The burden is irrelevant as Commerce is only in this position because it failed to comply with the law in the initial respondent selection by ignoring the comments parties filed demonstrating that the CBP data used were flawed.[79]  Additionally, Commerce can ask the Court for additional time to complete the remand so that it can reopen the record and reach a determination that is in accordance with law.[80]

*Jiangsu Guyu's Comments*

- Although Commerce states that it "deselected Jiangsu Guyu," Jiangsu Guyu disagrees with this characterization as Commerce's decision, in effect, does not deselect it because Commerce continues to assign Jiangsu Guyu an individually-calculated rate.[81]  Jiangsu Guyu requests that Commerce assign it the non-selected rate if Commerce continues to assert that it deselected Jiangsu Guyu.[82]

*Fine Furniture's Comments*

- Commerce's deselection of Jiangsu Guyu as a mandatory respondent and subsequent exclusion of its subsidy rate from the calculation of the non-selected company rate continues to be supported by substantial evidence and is in accordance with law because Jiangsu Guyu was no longer a top exporter or producer.[83]
- Commerce's determination in the *First Remand Results* was the "only reasonable determination" that complied with the Court's direction in the *First Remand Order*.[84]

---

[76] *Id*. at 7-8 (citing *Multilayered Wood Flooring from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2015*, 83 FR 27750 (June 14, 2018) (finding that Jiangsu Senmao had a *de minimis* margin); *Multilayered Wood Flooring from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2016*, 84 FR 38221 (August 6, 2019) (calculating a rate for Jiangsu Senmao of 2.96 percent); *Multilayered Wood Flooring from the People's Republic of China:  Notice of Amended Final Results of Countervailing Duty Administrative Review; 2018*, 86 FR 68219 (December 1, 2021) (calculating a rate of 6.61 percent for Jiangsu Senmao); *Multilayered Wood Flooring from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 FR 36305 (June 16, 2022) (calculating a rate of 3.36 percent for Jiangsu Senmao)).

[77] *Id*. at 8.

[78] *Id*. at 8-9.

[79] *Id*.

[80] *Id*. at 9.

[81] *See* Jiangsu Guyu *et. al.*'s Draft Remand Comments at 2 (citing Draft Remand at 9).

[82] *Id*.

[83] *See* Fine Furniture's Draft Remand Comments at 3 (citing Draft Remand at 3 and 9).

[84] *Id*. at 3 (citing *First Remand Order*, 589 F. Supp. 3d 1195, 1213-14).

- Fine Furniture takes no position at this time as to whether or not Commerce should select another mandatory respondent in the above-captioned proceeding.[85]  If Commerce selected Jiangsu Senmao as a mandatory respondent at this point or during the appeal, Fine Furniture reserves the right to comment at that time.[86]

**Commerce's Position:**

As an initial matter, Commerce reaffirms its reasoning and conclusions reached in the *First Remand Results* to deselect Jiangsu Guyu as a mandatory respondent and exclude its rate from the calculation of the non-selected company rate.[87]  Additionally, as Jiangsu Guyu notes, in the Draft Remand we continued to apply Jiangsu Guyu's individually calculated CVD rate to Jiangsu Guyu, and we continue to do the same for these final results of redetermination.  As we stated in the *First Remand Results*, "to assign {Jiangsu Guyu} any other rate (*i.e.*, the non-selected rate) would yield a less accurate outcome."[88]  However, we did not include Jiangsu Guyu's rate in the calculation of the rate for non-selected companies because we concluded it was not consistent with the Court's *First Remand Order* after determining Jiangsu Guyu was no longer one of the top exporters or producers of subject merchandise during the POR.[89]

As stated above, we continue to determine that, under the circumstances of this case, it is "otherwise reasonable," in line with the Federal Circuit's interpretation of section 777A(c)(2) of the Act in *YC Rubber,* to rely on the rate of a single mandatory respondent to calculate the rate for non-selected companies, and accordingly are continuing to decline selecting Jiangsu Senmao as a replacement respondent.  None of the arguments raised by Jiangsu Senmao, the only party which argues we should make changes to our positions in the Draft Remand, have altered our

---

[85] *Id.* at 4.
[86] *Id*.
[87] *See First Remand Results* at 34-35.
[88] *Id.* at 24.
[89] *Id.* at 34.

analysis that the case-specific circumstances here are distinguishable from *YC Rubber* and that our decision is supported by substantial evidence and is in accordance with law.

Jiangsu Senmao argues that there are no grounds in this case for Commerce to depart from the general rule and rely on a single mandatory respondent for the calculation of the non-selected rate, noting that "it might be reasonable" to do so if "one exporter accounted for the vast majority of exports during the POR," which is not the case here.[90]  We agree that no one exporter accounts for the "vast majority" of subject merchandise exports during the POR in this case;[91] however, in *YC Rubber* the Federal Circuit does not specify the factors that would make it "otherwise reasonable" to rely on the rate of a single mandatory respondent to determine the rate for non-selected companies, including the relative share of export volume.  As we stated in the Draft Remand, we have concluded that the unique circumstances of this case make it "otherwise reasonable" to rely on the rate calculated for a single mandatory respondent for the calculation of the rate for non-selected companies.[92]  In the "Analysis" section above, we explain that these case-specific circumstances include the established representativeness of Baroque Timber's rate, the timing of the decision vis-à-vis this proceeding (*i.e.*, after the final determination of a segment in which Commerce conducted a full review of two mandatory respondents), as well as the administrative burden posed by conducting a full review of an additional mandatory respondent.

Although Jiangsu Senmao claims that *YC Rubber* and this case are alike because in both cases Commerce "failed to comply with the law by not selecting a replacement mandatory and improperly based the rate for non-selected companies on the rate of a single mandatory

---

[90] *See* Jiangsu Senmao's Draft Remand Comments at 5.
[91] *See First Remand Results* at Attachment II.
[92] *See* Draft Remand at 5-6.

{respondent},"[93] the circumstances in this case are clearly distinguishable from those in the case underlying *YC Rubber*.  In that case, Commerce selected two mandatory respondents, then one withdrew its participation shortly after the initial questionnaire was issued and Commerce did not explain why it did not select a replacement respondent.[94]  Commerce continued with the review at issue in *YC Rubber* with only one respondent and calculated the rate for non-selected companies based on the margin calculated for the sole respondent.[95]  In the underlying administrative review here, we selected and fully investigated two mandatory respondents.[96]  We then deselected one of them (*i.e.*, Jiangsu Guyu) in the *First Remand Results* and calculated the non-selected rate based on the rate of the sole remaining mandatory respondent.[97]  In this case, we are not declining to select a replacement respondent after one of two mandatory respondents dropped out near the beginning of the proceeding, as was the case in *YC Rubber*.  But rather, in accordance with the Court's *First Remand Order*, we have deselected one of the two mandatory respondents, which we fully investigated and assigned a rate in *Multilayered Wood Flooring from China Final Results*, following our reconsideration of the respondent selection in the underlying review in the *First Remand Results*.  As part of our reconsideration of respondent selection, we explained that "it is not practicable at this stage to select another mandatory respondent."[98]

 We also disagree with Jiangsu Senmao's claim that the facts in this case are "essentially the same" as those in the antidumping investigation underlying the Court's recent opinion in *Siemens Gamesa*, in which the Court found that Commerce unlawfully "limited its individual

---

[93] *See* Jiangsu Senmao's Draft Remand Comments at 6.
[94] *See YC Rubber* at *4-5.
[95] *Id.* at *5.
[96] *See* Respondent Selection Memorandum at 6.
[97] *See First Remand Results* at 11-13 and 34-35
[98] *Id*. at 12.

examination to a single respondent, contrary to {section 777A(c)(2) of the Act} as interpreted in *YC Rubber*."[99]   Like *YC Rubber*, *Siemens Gamesa* involved Commerce's decision not to replace a mandatory respondent that dropped out prior to the preliminary results.   This is starkly different from the situation in this case, where Commerce deselected a mandatory respondent after it had fully examined it and another mandatory respondent in the underlying review.   In the *First Remand Results* and again in the Draft Remand, we revisited the respondent selection in this case and concluded that we are unable to select another mandatory respondent, because, *inter alia*, Commerce lacks the resources with which to fully investigate an additional respondent after having examined two mandatory respondents in the underlying review.[100]   Thus, we determine that under these unique case-specific circumstances it is "otherwise reasonable" to rely only on the rate for a single mandatory respondent for the calculation of the non-selected rate, in accordance with the Federal Circuit's interpretation of section 777A(c)(2) of the Act in *YC Rubber*.

   We also note that it is "otherwise reasonable" to rely on only one mandatory respondent's rate for the calculation of the non-selected rate in this case because the company-provided Q&V information supports our conclusion that the non-selected rate based only on Baroque Timber's rate is representative of the industry as a whole.   As discussed above, the Q&V information submitted by Baroque Timber and Jiangsu Senmao demonstrates that Baroque Timber [

   ].[101]   Therefore, based on Baroque Timber's status as the [          ] exporter/producer during the POR based on the Q&V data, we conclude that the current rate calculated for the non-

---

[99] *See* Jiangsu Senmao's Draft Remand Comments at 7; *see also Siemens Gamesa* at *25-26.
[100] *See First Remand Results* at 17-18 and Draft Remand at 9-11.
[101] *See* Jiangsu Senmao's Voluntary QR at 6; and Baroque Timber's IQR, at Exhibits 7a and 7b.

selected companies is representative of the industry as a whole, and by extension the non-selected companies under review.  Thus, we find this Q&V data supports our decision that it is "otherwise reasonable" to rely on only Baroque Timber's rate as the basis for the non-selected rate.  Jiangsu Senmao has not pointed to or identified specific evidence of how the non-selected rate based on Baroque Timber's rate, as determined in the *First Remand Results*,[102] would be considered unrepresentative and no other party has provided or identified such evidence or commented on this issue.

Regarding Jiangsu Senmao's objections to our Draft Remand analysis of its claim that not selecting and reviewing it results in an abnormally high rate for non-selected companies,[103] we agree with Jiangsu Senmao that the magnitude of the non-selected rate and therefore the question of who benefits or does not are irrelevant to our decision not to select a replacement mandatory respondent.  Although Jiangsu Senmao has been assigned a lower rate in previous administrative reviews than the rate assigned to Baroque Timber in this review,[104] as we stated in the Draft Remand, "Jiangsu Senmao's assumption that its individual rate, if calculated for the period of this review, would result in a lower non-selected company rate is mere conjecture."[105] Commerce's determination is not "results-oriented," as suggested by Jiangsu Senmao, but is instead based on the unique circumstances of this case, as explained above, which make it reasonable to not select an additional respondent in this remand proceeding.

Finally, we disagree with Jiangsu Senmao that by not selecting it as a mandatory respondent, Commerce is denying it a remedy for what Jiangsu Senmao states are unlawful

---

[102] *See* Draft Remand at 7.
[103] *See* Jiangsu Senmao's Draft Remand Comments at 7-8.
[104] *Id*.
[105] *See* Draft Remand at 8.

actions in this proceeding.[106]  As stated above, pursuant to the *First Remand Order*, we reconsidered respondent selection and determined that Jiangsu Guyu was no longer a top exporter or producer.  As a result, we deselected Jiangsu Guyu as a mandatory respondent and removed its rate from the calculation of the rate for non-selected companies, which resulted in a lower rate assigned to Jiangsu Senmao and the other non-selected companies.  Jiangsu Senmao submitted a request for voluntary treatment during the underlying administrative review, which Commerce denied due to resource constraints.  In its comments on the *First Remand Results,* Jiangsu Senmao argues that the intervening legal authority of the Federal Circuit's interpretation of section 777A(c)(2) of the Act in *YC Rubber* compels us to select it as a replacement mandatory respondent in order to obtain a second rate to be used in the calculation of the non-selected rate.

However, as a result of our analysis in the Draft Remand, which remains unchanged in these final results of redetermination, we have concluded that under the unique circumstances of this segment of the proceeding, it is reasonable under *YC Rubber* that Commerce not select an additional mandatory respondent to replace the one it deselected.  In *YC Rubber*, one of the two mandatory respondents withdrew its participation only two weeks after Commerce issued the initial questionnaire and Commerce never selected a replacement,[107] meaning Commerce only effectively reviewed a single respondent.  Here, we were left with a single mandatory respondent only after the completion of the final results of this administrative review, which involved the full examination of two mandatory respondents.  In the *First Remand Results* and in the Draft Remand, we reconsidered respondent selection and determined that Jiangsu Guyu is not one of the top exporters or producers during the POR and that it is not practicable to examine any

---

[106] *See* Jiangsu Senmao's Draft Remand Comments at 9.
[107] *See YC Rubber* at *4-5.

additional companies as mandatory respondents.  Thus, we find it reasonable to assign the single rate calculated for Baroque Timber as the rate for the non-selected companies.

Jiangsu Senmao argues that the Court can grant additional time to complete a review of a replacement mandatory respondent, but the potential granting of additional time does not negate the significant administrative burden posed by conducting a review anew for Jiangsu Senmao. As we stated in the Draft Remand, this review involves numerous complex programs requiring information not currently on the record from entities not directly subject to the review and Commerce's resources continue to be constrained by multiple ongoing reviews of this same order, in addition to a multitude of other ongoing proceedings.[108]  Examination of Jiangsu Senmao at this point would require Commerce to perform these investigatory steps for a third time in this review, which poses a significant administrative burden.  Further, as we stated in the Draft Remand, "interpreting *YC Rubber* as requiring the selection of a replacement respondent after the final results of review poses an administrative burden greater than that in the review underlying *YC Rubber*."[109]  For these reasons and the other unique circumstances of this review described above, we do not interpret *YC Rubber* as compelling the selection of a replacement mandatory respondent.  As stated in the Draft Remand, following the final results of an administrative review where Commerce examined multiple companies, any number of hypothetical scenarios may arise where, on remand, Commerce is left with only one rate as the basis for the non-selected company rate.  Therefore, we do not read *YC Rubber* so broadly as to disallow reasonable discretion not to review additional companies in such instances.

---

[108] *See* Draft Remand at 10.
[109] *Id*. at 11.

## V.     FINAL RESULTS OF REDETERMINATION

We have considered the implications of *YC Rubber* on the outcome of the *First Remand Results*, and whether it requires Commerce to select a company that requested voluntary treatment in the underlying review as a replacement mandatory respondent after de-selecting Jiangsu Guyu.  As a result, we have determined that *YC Rubber* does not compel Commerce to select another respondent in this case because we had selected two in the underlying review and deselected one of them only in the remand stage.  Selecting Jiangsu Senmao at this point would require Commerce to essentially conduct the review anew, in order to, *inter alia*, obtain the necessary responses from the GOC and Jiangsu Senmao, as well as information from third parties, which are necessary to calculate an accurate rate.  Moreover, Baroque Timber, the sole remaining mandatory respondent, is one of the largest exporters of subject merchandise during this POR.  Therefore, we have concluded that it is reasonable to decline to select an additional respondent at this stage of the proceeding and continue to assign Jiangsu Senmao and the other non-selected companies a subsidy rate of 14.09 percent *ad valorem*, which is the rate calculated for Baroque Timber.

3/30/2023

X  *Elouaradia*

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance

25