# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

————————————————————————

|  |  |  |
|---|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., *et. al..*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., *et. al.,* | ) ) ) | Consol. Court No. 20-03885 |
| Consolidated Plaintiffs, | ) ) | **PUBLIC VERSION** |
| and | ) ) | |
| FINE FURNITURE (SHANGHAI) LIMITED, *et. al.,* | ) ) ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

————————————————————————

## PLAINTIFFS' COMMENTS IN OPPOSITION TO THE FINAL RESULTS OF THE REDETERMINATION PURSUANT TO COURT REMAND

Jeffrey S. Neeley
Stephen W. Brophy
Husch Blackwell, LLP

1801 New York Ave. N.W.
Suite 1000
Washington, D.C. 20006
(202) 378-2357
Jeffrey.Neeley@huschblackwell.com
Stephen.Brophy@huschblackwell.com

Dated:  May 1, 2023

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................... 2

ARGUMENT ..................................................................................................................... 5

    **I.**   **Judicial Precedent** ................................................................................................ 5

    **II.**  **Commerce's Remand Results are Not Supported by Substantial Evidence or Otherwise in Accordance with Law** ................................................................ 7

        **A.**  **The Rate of Baroque Timber Alone Cannot be Considered Representative** ............ 8

        **B.**  **The Rate Assigned to Mandatory Respondents Would Likely Have Been Lower if Commerce Had Properly Selected Senmao as a Second Mandatory** ...................... 10

        **C.**  **The Timing of this Decision and the Burden on Commerce Are Not Relevant** ..... 11

CONCLUSION ................................................................................................................. 14

## TABLE OF AUTHORITIES

### Cases

*Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995) ............ 2

*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ................................................................................................................................................ 2

*Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984) ......................... 2

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ............................................................... 2

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ...................................... 2

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 589 F. Supp. 3d 1195, 1215 (Ct. Int'l Trade 2022) .......................................................................................................................... 3

*Mid Continent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1269 n.18 (Ct. Int'l Tr. 2013) 6

*Nakornthai Mill Public Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008) 2

*Qingdao Qihang Tyre Co., Ltd. v. United States*, 308 F. Supp. 3d 1329, 1362 (CIT 2018) .......... 5

*Shaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358, 1362–3 (Ct. Int'l Tr. 2011) .......... 6

*Siemens Gamesa Renewable Energy v. United States*, No. 21-00449, 2023 WL 2034254, at *9 (Ct. Int'l Trade Feb. 16, 2023) ...................................................................................................... 6

*Xinjiamei Furniture Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) ................................................................................................................................... 2

*YYC Rubber Co. (N. Am.) LLC v. United States,* No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) ................................................................................................. 4, 5, 11, 12

### Statutes

19 U.S.C. § 1516a ............................................................................................................................ 2
19 U.S.C. § 1677f-1 ......................................................................................................................... 5

### Other Authorities

*Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2015,* 83 Fed. Reg. 27750 (June 14, 2018) ............................................................................................................................................ 10

*Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 38221 (August 6, 2019) ............................................................................................................................ 10

*Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 FR 36305 (June 16, 2022) 10

*Multilayered Wood Flooring from the People's Republic of China: Notice of Amended Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 68219 (December 1, 2021) ............................................................................................................................ 10

# INTRODUCTION

On behalf of Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao"), Jiangsu Keri Wood Co., Ltd. ("Keri Wood"), and Sino-Maple (Jiangsu) Co., Ltd. ("Sino-Maple") (collectively "Plaintiffs") and pursuant to this Court's Order of February 14, 2023 granting a voluntary remand (ECF No. 114) and USCIT Rule 56.2(h)(2), we submit Plaintiffs' comments in opposition to the Final Results of Redetermination Pursuant to Court Remand ("Final Voluntary Remand Results") filed by the U.S. Department of Commerce ("Commerce") on March 31, 2023, ECF No, 118 (2RCR. 3, 2RPR. 9).[1] Commerce filed the administrative record for the First Remand Results on April 14, 2023, ECF No. 120. Prior to the Final Voluntary Remand Results, Commerce had filed its Final Results of Redetermination Pursuant to Court Remand ("First Remand Results") on December 9, 2022, ECF No, 101 (RCR. 4, RPR. 10). Plaintiffs filed comments on those First Remand Results on January 11, 2023 (ECF No. 107) and hereby incorporate those comments by reference.

Commerce's First Remand Results and Final Voluntary Remand Results are not in compliance with the Court's remand order and are otherwise not in accordance with law. Plaintiffs respectfully request that the Court again remand this case to Commerce with instructions to select a Senmao as a mandatory respondent and recalculate the margins for Separate Rate Respondents.

---

[1] References to the administrative record for the Final Voluntary Remand Results are shown as "2RCR" (confidential) and "2RPR" (public). References to the administrative record for the Final Remand Results are shown as "RCR" (confidential) and "RPR" (public). References to the initial administrative record submitted to the Court on January 19, 2021, ECF No. 33, are shown as "CR" (confidential) and "PR" (public).

## STANDARD OF REVIEW

The Court will hold unlawful agency determinations that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Ausimont USA, Inc. v. United States*, 19 CIT 151, 157, 882 F. Supp. 1087, 1092 (1995). Substantial evidence means that there is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court also reviews Commerce's remand redeterminations for compliance with the Court's remand order. *Xinjiamei Furniture Zhangzhou) Co. v. United States*, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quoting *Nakornthai Mill Public Co. v. United States*, 587 F. Supp. 2d 1303, 1306 (Ct. Int'l Trade 2008). In judging Commerce's interpretation of a statute, the Court does so under the framework established by *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). Under Chevron, the Court first asks whether Congress has directly spoken to the precise question at issue. If Congress has done so, the inquiry ends; the Court "must give effect to the unambiguously expressed intent of Congress." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (*quoting Chevron*, 467 U.S. at 842-43). Commerce must act reasonably and may not be arbitrary and capricious. *See e.g., Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1374 (Fed. Cir. 2012) ("Commerce's decision will be set aside if it is arbitrary and capricious.").

## BACKGROUND

The Court remanded Commerce's final results of administrative review to "reconsider its selection of mandatory respondents for individual examination and to address the comments made by interested parties concerning the reliability of the Customs data used for respondent

selection." *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 589 F. Supp. 3d 1195, 1215 (Ct. Int'l Trade 2022). The Court held that Commerce had failed to consider evidence on the record that indicated there were inconsistencies in the Customs data, including information submitted by Senmao concerning container capacity. Id. at 1213. The Court noted the "the key importance of deciding correctly foundational aspects in any investigation or review…", which "include respondent selection." Id. at 1215. The Court found that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies." Id. at 1214. Accordingly, the Court held that Commerce's selection of Jiangsu Guyu and Baroque Timber as mandatory respondents was not supported by substantial evidence and the court remanded the respondent selection determination to Commerce for reconsideration and also remanded to Commerce for reconsideration the calculation of the rate of non-selected respondents. Id. at 1213-1214.

In its First Remand Results filed on December 9, 2022, Commerce conceded that respondents were correct from the start of the review. Commerce agreed that the parties "CBP data comments and the evidence they presented on shipping container size do indicate that certain of the CBP data relating to [

          ] appear to be unrealistic." First Remand Results at 11 (RCR. 4, RPR. 10). As a result, Commerce excluded certain entries with unrealistically large entries from the CBP data. Id. at 12. After adjusting the data, Commerce concluded that the selection of Jiangsu Guyu as a mandatory respondent was not supported by substantial evidence and agrees that deselecting Jiangsu Guyu as a mandatory respondent is appropriate. Id. Based on the adjusted data, Commerce concludes that Baroque Timber and Senmao were the top two exporter/producers

during the period of review. Id. at 17-18. Nevertheless, Commerce concluded that it would be impractical to reopen the record to request Q&V data and continues to rely on the CBP data on the record. Id. at 11-12. It is also determined that it would not be practicable at this stage to select another mandatory respondent and proceed with a full review of the newly selected company. Id. Commerce claimed that selecting Senmao as an additional respondent would require Commerce to "analyze questionnaire responses, prepare supplemental questionnaires and perform the necessary calculations in order to assign an individual rate to the selected company." Id. at 18. Commerce claimed that the given the complexity of the underlying review, the resource constraints Commerce continues to face, and the accelerated timeframe of a redetermination, it would not be practicable to select an additional respondent at this point in the proceeding." Id. As a result, Commerce decided to base the rate for Separate Rate Respondents solely on the rate assigned to Baroque Timber, as the sole mandatory respondent. Id. at 15.

On February 14, 2023, Defendant requested a voluntary remand to consider whether the Federal Circuit's recent decision in *YC Rubber Co. (N. Am.) LLC v. United States,* No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) had implications for Commerce's respondent selection and non-examined company rate determinations in this review, which the Court granted. On March 31, 2023, Commerce filed its Final Voluntary Remand Results with the Court, in which Commerce concluded that the Federal Circuit's decision did not compel Commerce to select another respondent in this case. In making this determination, Commerce essentially relied on the same reasoning it presented to the Court in its initial First Remand Results. Therefore, Commerce continued to base the non-selected company rate solely on the

rate assigned to the only remaining mandatory, Baroque Timber.   Final Voluntary Remand

Results at 25.

## ARGUMENT

### I.    Judicial Precedent

In *YC Rubber,* the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit")  y

held that basing a rate for non-selected companies on the rate of only one mandatory respondent

was not reasonable or in accordance with the statute:

> The statute requires a reasonable foundation for the average dumping margin
> calculated for multiple importers. If a large number of exporters and producers are
> under review, Commerce may "determine the weighted average dumping margins
> for a reasonable number of exporters or producers by limiting examination to—a
> sample of exporters, producers or types of products that is statistically valid ... or
> {to} exporters and producers accounting for the largest volume of the subject
> merchandise."

*YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377, at *3 (Fed.

Cir. Aug. 29, 2022).   The purpose of the statutory provision, which was examined in *YC Rubber*,

is to ensure that the all-others rate is representative of the companies not selected for individual

Examination.  See e.g. *Qingdao Qihang Tyre Co., Ltd. v. United States*, 308 F. Supp. 3d 1329,

1362 (CIT 2018). The Court concluded that the statute generally requires that the "reasonable

number" is greater than one.  Therefore, Commerce generally must select more than one

mandatory respondent and base the rate for non-selected companies on the average of multiple

rates:

> In addition, 19 U.S.C. § 1677f-1(c)(2) specifies that Commerce "may determine
> the weighted average dumping margins for a reasonable number of exporters or
> producers." Congress contemplated the possibility of multiple exporters and
> producers, and that antidumping duties could be determined for a reasonable
> number of exporters and producers that was less than the total number. To be
> sure, Commerce correctly notes that "unless the context indicates otherwise ...
> words importing the plural include the singular." Appellee's Br. 15 (citing 1
> U.S.C. § 1). But here, Commerce must "determine the weighted average" for that

> reasonable number, and Commerce provides no reason why it would be reasonable to "average" a single rate. We conclude that a "reasonable number" is generally more than one.

Id. The Federal Circuit also noted that the U.S. Court of International Trade has reached the same conclusion. In *Shaeffler Italia S.R.L. v. United States*, the court explained:

> In using the terms "reasonable number of exporters or producers" and "large number of exporters or producers" in section 777A(c)(2) of the Tariff Act, Congress has directly spoken to the precise question at issue. The plural term "*reasonable* number of *exporters* or *producers*," read according to its plain meaning, does not encompass a quantity of one. 19 U.S.C. § 1677f-1(c)(2) (emphasis added).

!

*Shaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358, 1362–3 (Ct. Int'l Tr. 2011) (holding that "a reasonable number of exporters or producers must be greater than one"); *see also, e.g., Mid Continent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1269 n.18 (Ct. Int'l Tr. 2013) (referring to "the incontrovertible observation that '{t}he plural term "*reasonable* number of *exporters* or *producers*," read according to its plain meaning, does not encompass a quantity of one' " (emphases in original)). For these reasons, the Federal Circuit concluded that Commerce erred in relying on a single entity for the calculation of a dumping margin for all other respondents.

Moreover, since the Federal Circuit decision in *YC Rubber*, the U.S. International Court of International Trade has also remanded a respondent selection to Commerce to "correct the error it made when it decided, contrary to 19 U.S.C. § 1677f-1(c)(2), to examine individually only one respondent and, having also decided to proceed according to largest export volume under 19 U.S.C. § 1677f-1(c)(2)(B), not to examine Siemens Gamesa in particular." *Siemens Gamesa Renewable Energy v. United States*, No. 21-00449, 2023 WL 2034254, at *9 (Ct. Int'l Trade Feb. 16, 2023). The facts in those cases are essentially the same as here.

In each of these cases, Commerce's respondent selection decisions were unlawful, which resulted in an unreasonable rate for non-selected companies. Commerce must now correct those decisions and the only way to make respondents whole is to select another mandatory respondent, calculate a rate for that new mandatory, and recalculate the rate for non-selected companies based on the rates of more than one mandatory.

## II. Commerce's Remand Results are Not Supported by Substantial Evidence or Otherwise in Accordance with Law

Commerce attempts to limit the application of *YC Rubber* and similar cases by concentrating on the Court's statement that the statute "generally" requires that the "reasonable number" be greater than one and that "{t}he question is whether the statute permits Commerce to review a single exporter or producer when multiple have requested review and Commerce has not demonstrated that it was <u>otherwise reasonable to calculate</u> the all-others rate based on only one respondent." (emphasis added). Final Voluntary Remand Results at 6 *citing YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022). Commerce takes this narrow opening to claim that, under the unique circumstances of this case, it was "otherwise reasonable" to calculate the non-selected company rate based on the rate calculated for one mandatory respondent, Baroque Timber.

Contrary to the claims of Commerce, the circumstances of this case are not unique and cannot be reasonably distinguished from *YC Rubber* or other similar cases. First, Commerce claims that Baroque's rate alone is representative of the non-selected respondents. Final Voluntary Remand Results at 8. As argued below, this is incorrect and based on a selective reading of the record. Second, Commerce claims that the facts and timing of this case are different, that it complied with *YC Rubber* by initially selecting two mandatories, and that selection of a replacement respondent

after the final results of review poses an administrative burden greater than that in the review underlying *YC Rubber*, where Commerce effectively only reviewed a single respondent. Final Voluntary Remand Results at 9-12. As argued below, this is also incorrect. It is only because Commerce failed to comply with law from the outset of this administrative review that it now complains that it will have to do a lot of work if it has to analyze a new respondent at this point. Of course, the reason for such work at this juncture is because Commerce refused to follow the evidence from the outset. Nothing in this case justifies Commerce departing from the general rule that it is unreasonable for Commerce to use the margin of a single mandatory respondent in calculating the rate for all other exporters. The Court should remand this issue to Commerce with instructions to select Senmao as a second mandatory respondent, to calculate a company-specific rate for Senmao, and to recalculate the rate assigned to non-selected respondents based on an average of the rates assigned to Baroque Timber and Senmao.

### A. The Rate of Baroque Timber Alone Cannot be Considered Representative

Commerce claims that not selecting a replacement mandatory is otherwise reasonable because the Baroque Timber's rate is representative of the companies not selected for individual examination. Final Voluntary Remand Results at 8. Commerce's argument is based on an unreasonable and selective reading of the record. First, Commerce argues that no party, aside from Senmao, has questioned the representativeness of the non-selected company rate that is based solely on rate of Baroque Timber. Id. This make-weight argument cannot be taken seriously. Senmao cannot speak for the other parties, but the number or parties objecting is irrelevant, as Commerce should know. Regardless of how many parties object, Commerce must make a decision that is based on substantial evidence and in accordance with law.

Second, Commerce argues that Baroque Timber's rate is representative because the company is [      ] exporter/producer during the POR based on the quantity and value information submitted by Baroque Timber and Senmao in their questionnaire responses. Id. This argument, however, totally negates the Federal Circuit's decision in *YC Rubber* and the CIT's decision in *Siemens*. If Commerce could solve the representativeness problem by simply selecting [    

   ] exporter during the period, then the Courts' decisions that a "reasonable number" is greater than one is totally negated. Moreover, while it might be reasonable to select a single mandatory if the [         ] accounted for the vast majority of exports during the POR, those are not the fact here. Commerce's Final Voluntary Remand Results only reference the export volume of Baroque Timber and Senmao, but totally ignores the total from all exporters. According to Commerce, Baroque Timber exported [            ], which can be converted to [    ] cubic meters. Id. at 8-9. Commerce converts volumes in square meters to cubic meters using a 0.015 mm conversion factor. First Remand Results at Attachment II. In Attachment II of the First Remand Results submitted on December 7, 2022, Commerce provided the cubic meter volumes of the ten largest exporters/producers of subject merchandise after the removal of anomalous entries from the CBP data. Id. Taking into account the total volume exported by just the ten largest exporters, the [    ] cubic meters exported by Baroque Timber accounts for [    ] percent of those exports. Naturally, their percentage of all exports would likely be considerably smaller. It is simply unreasonable for Commerce to claim that an exporter accounting for [    ] percent of total exports from just the ten largest exporters is representative of the industry as a whole and thereby ignore the Court decisions finding that a "reasonable" number of exporters is greater than one.

**B. The Rate Assigned to Mandatory Respondents Would Likely Have Been Lower if Commerce Had Properly Selected Senmao as a Second Mandatory**

Commerce also claims that it is speculative to claim to select Senmao as a mandatory results *Qingdao Qihang Tyre Co., Ltd. v. United States*, 308 F. Supp. 3d 1329, 1362 (CIT 2018). Final Voluntary Remand Results at 9. Commerce claims that individual subsidy rates can vary from review to review and that Senmao's margin could be higher in this review. While Senmao cannot guarantee the outcome of the review if it is selected as a replacement mandatory, the evidence strongly indicates that its rate will be lower than the rate assigned to Baroque Timber, i.e. 14.09 percent. Senmao has been a mandatory respondent in all recent reviews, except for the review under appeal here. In each of those reviews, Senmao received a margin significantly less than 14.09 percent. *Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2015,* 83 Fed. Reg. 27750 (June 14, 2018) (finding that Senmao had a de minimis margin); *Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 38221 (August 6, 2019) (calculating a rate for Senmao of 2.96 percent); *Multilayered Wood Flooring from the People's Republic of China: Notice of Amended Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 68219 (December 1, 2021) (calculating a rate of 6.61 percent for Senmao; *Multilayered Wood Flooring from the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019*, 87 FR 36305 (June 16, 2022) (calculating a rate of 3.36 percent for Senmao). Therefore, while it is not guaranteed, a lower rate for non-selected companies is the likely result of selecting Senmao as a second mandatory. In any event, the Federal Circuit's decision makes the predicted outcome (which Commerce also cannot know for certain) irrelevant. Basing the margin for non-selected

companies on the rate of single mandatory is almost never reasonable and is not reasonable under the facts of this case. *YC Rubber Co. (N. Am.) LLC v. United States,* No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022). ("Having determined that Commerce unlawfully restricted its examination to a single mandatory respondent, substantial evidence does not support Commerce's application of Junhong's rate to the other separate rate respondents."). It does not matter who benefits or who does not benefit. It is surprising that Commerce would suggest such a result-orient approach to legal obligations. A "reasonable number" is more than one is all that Commerce needs to know to fulfill its legal obligations.

### C.  The Timing of this Decision and the Burden on Commerce Are Not Relevant

Commerce also attempts to get around the Federal Circuit's opinion by claiming that it complied by initially selecting two mandatories. Final Voluntary Remand Results at 10. This fact, however, does not distinguish this case from either *YC Rubber*, where Commerce also initially selected two mandatories but one dropped out. *YC Rubber Co. (N. Am.) LLC v. United States,* No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022). The fact that Commerce failed to follow the statute at a different stage of the proceeding is irrelevant to the issue at hand.

Of course, Commerce also fails to mention that the selection of one of the two initial mandatories in this case was absurd on its face based on the data that Commerce ignored. It also ignores the fact that the U.S. Court of International Trade held that the respondent selection was not supported by substantial evidence and otherwise in accordance with law. In fact, Commerce now has conceded that respondents were correct on the absurdity of the data used from the start of the review in its initial remand results. If anything, the current case may be a more egregious abuse of discretion than that in *YK Rubber.* In that case, Commerce also initially selected two mandatories, but one dropped out and Commerce failed to replace them. *YC Rubber Co. (N. Am.)*

11

*LLC v. United States,* No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022). In this case, Commerce improperly selected the second mandatory by ignoring or refusing to accept evidence at the outset of the case. In both cases, Commerce failed to comply with the law by not selecting a replacement mandatory and improperly based the rate for non-selected companies on the rate of a single mandatory. The route Commerce took to reach the unlawful result is irrelevant. In each of these cases, the respondent selection decisions were remanded to Commerce. Commerce cannot now claim that it cannot comply with the law because it is too late.

While we do not know how Commerce intends to comply with the Federal Circuit's decision in *YF Rubber* or this Court's decision in *Siemens* on remand, we believe that the only fair and just way to comply with the law is to select a second mandatory and finish the review in accordance with the law. Nor do we know how Commerce can comply with those decisions other than by selecting another mandatory and redoing the review, regardless of how burdensome it might be to Commerce. In each of those cases, Commerce's respondent selection decisions were unlawful, which resulted in an unreasonable rate for non-selected companies. Commerce must now correct those decisions and the only way to make respondents whole is to select another mandatory respondent, calculate a rate for that new mandatory, and recalculate the rate for non-selected companies based on the rates of more than one mandatory. The same is true in this case.

Finally, Commerce claims it would be too burdensome to calculate a rate for Senmao at this point, even considering the fact that Senmao submitted a response to the initial questionnaire. The existence of Senmao's initial questionnaire response and Commerce's long history reviewing Senmao significantly lessens the burden. However, even assuming that the burden is still significant, the burden on Commerce is irrelevant. Commerce is only in this

position because it repeatedly declined to comply with the law over the objections of the parties. The parties filed comments demonstrating that the CBP data used for respondent selection was flawed, but Commerce ignored the comments. The parties objected to the respondent selection and Senmao volunteered to be a voluntary respondent, but Commerce ignored those arguments and declined to select Senmao as a voluntary. It is ludicrous for Commerce to now claim that it would be too burdensome to provide a remedy for its unlawful actions. Moreover, allowing Commerce to avoid complying with the law just because the case is on remand provides no incentive for Commerce to comply with the law in future cases. Commerce can continue to ignore the law and simply claim on remand that it is too late to correct its decision now. In addition, there is nothing stopping Commerce from asking the Court for more time to complete the remand that so that it can reopen the record and reach a determination that is accordance with law. Commerce cannot argue that it is too late to correct its mistake when it has not even tried to correct its mistakes. In short, Commerce's justification for failing to correct its legal error and provide Senmao with a remedy is not just or reasonable.

## CONCLUSION

Thus, for these reasons, we respectfully request that the Court remand the case to Commerce for reconsideration to correct for errors raised in these comments.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Stephen W. Brophy
**Husch Blackwell LLP**
1801 Pennsylvania Ave. N.W., Suite 1000
Washington, DC 20006
(202) 378-2409
Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., Jiangsu Keri Wood Co., Ltd., and Sino-Maple (Jiangsu) Co., Ltd.*

Dated: May 1, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(2), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Consolidated Plaintiff's Reply Brief as computed by Husch Blackwell's word processing system Microsoft Word, is 4,025 words.


<u>/s/Jeffrey S. Neeley</u>
Jeffrey S. Neeley
**Husch Blackwell LLP**