UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., *et. al..*, | )<br>)<br>) |
| Plaintiffs, | ) |
| and | ) |
| BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., *et. al.,* | ) Consol. Court No. 20-03885<br>) |
| Consolidated Plaintiffs, | ) |
| and | ) |
| FINE FURNITURE (SHANGHAI) LIMITED, *et. al.,* | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING | ) |
| Defendant-Intervenor. | ) |

**PLAINTIFFS' COMMENTS IN SUPPORT OF CERTAIN ASPECTS OF THE FINAL RESULTS OF THE REDETERMINATION PURSUANT TO COURT REMAND**

Jeffrey S. Neeley
Stephen W. Brophy
Husch Blackwell, LLP

1801 Pennsylvania Ave. N.W.

Suite 1000
Washington, D.C. 20006
(202) 378-2357
Jeffrey.Neeley@huschblackwell.com
Stephen.Brophy@huschblackwell.com

Dated:  May 31, 2023

**TABLE OF CONTENTS**

**I.      INTRODUCTION** ........................................................................................................... 1
**II.     ARGUMENT** ................................................................................................................. 2
**III.    CONCLUSION** ............................................................................................................. 8

# TABLE OF AUTHORITIES

## Cases

*Aectra Ref. & Mktg. Inc. v. United States,* 31 C.I.T. 2086, 2093 (2007), aff'd, 565 F.3d 1364 (Fed. Cir. 2009) ............................................................................................................... 4

*Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017) .............. 5

*Diamond Sawblades Manufacturers Coalition, et. al. v. United States*, 359 F. Supp. 3d 1374, 1376 (Ct. Int'l Trade 2019) ........................................................................................... 7

*Husteel Co. v. United States,* 98 F. Supp. 3d 1315, 1330 (Ct. Int'l Trade 2015) ........................... 4

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1347 (Ct. Int'l Trade 2018) ............................................................................................................ 5

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 589 F. Supp. 3d 1195, 1214 (Ct. Int'l Trade 2022) ............................................................................................................ 2

*MacLean-Fogg Co. v. United States,* 753 F3d. 1237 (Fed. Cir. 2014) .......................................... 6

*Nat'l Knitwear & Sportswear Ass'n v. United States,* 779 F.Supp. 1364, 1373–74, 15 C.I.T. 548, 559 (1991) ................................................................................................................... 5

*NTN Bearing Corp. of Am. v. United States*, 26 CIT 53, 102–03, 186 F.Supp.2d 1257, 1303 (2002) ........................................................................................................................ 4

*Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1362 (Ct. Int'l Trade 2018) ... 5

*Shanxi Hairui Trade Co. v. United States*, No. 19-00072, 2021 WL 1291671, at *10 (Ct. Int'l Trade Apr. 7, 2021) ..................................................................................................... 5

*YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367, 1380 (Ct. Int'l Trade 2020) ............................................................................................................................. 5

## Statutes

19 U.S.C. § 1677f–1(c)(2)(B) ........................................................................................................ 5

19 U.S.C. §1671d(c)(5) ................................................................................................................. 3

19 U.S.C. §1677f-1(e) ........................................................................................................ 2, 3, 4, 7

I.  INTRODUCTION

On behalf of Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. ("Senmao"), Jiangsu Keri Wood Co., Ltd. ("Keri Wood"), and Sino-Maple (Jiangsu) Co., Ltd. ("Sino-Maple") (collectively "Plaintiffs"), we submit Plaintiffs' comments in support of certain aspects of the Final Results of Redetermination Pursuant to Court Remand ("Final Remand Results") filed by the U.S. Department of Commerce ("Commerce") on December 9, 2022, ECF No, 101 (RCR. 4, RPR. 10) and March 31, 2023, ECF No, 118 (2RCR. 3, 2RPR. 9).[1]  On January 11, 2023 and May 1, 2023, Plaintiffs submitted comments in opposition to the Final Remand Results with respect to Commerce's decision not to select Senmao as an additional mandatory respondent and to include Senmao's resulting margin in the calculation of the separate rate.

Regardless of whether the Court agrees, however, Plaintiffs support Commerce's decision not to include the rate of Jiangsu Guyu International Trading Co., Ltd. ("Jiangsu Guyu") in the calculation of the rate for non-selected companies.  On January 11, 2023, Defendant-Intervenor the American Manufacturers of Multilayered Wood Flooring ("AMMWF") submitted comments in opposition to Commerce's Final Remand Results, opposing Commerce's decision to exclude Jiangsu Guyu's rate from consideration in the calculation of the non-selected companies' rate.  Since the Court granted Commerce's request for a voluntary remand before reply comments were due, no party every responded to AMMWF's submission.   Therefore, Plaintiffs now provide comments in support Commerce's decision not to include the rate of Jiangsu Guyu International Trading Co., Ltd. ("Jiangsu Guyu") in the calculation of the non-selected companies' rate.

---

[1]  References to the administrative record for the *Final Remand* are shown as "RCR" (confidential) and "RPR" (public). References to the initial administrative record submitted to the Court on January 19, 2021, ECF No. 33, are shown as "CR" (confidential) and "PR" (public).

## II. ARGUMENT

In its Remand Opinion and Order, the Court explicitly stated that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies." *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 589 F. Supp. 3d 1195, 1214 (Ct. Int'l Trade 2022). In its Final Remand Results, Commerce conceded that Jiangsu Guyu was improperly selected as a mandatory respondent as it was not one of the top exporters or producers of subject merchandise during the period of review. Therefore, it assigned non-selected companies the rate of the sole mandatory respondent, Baroque Timber Industries ("Baroque Timber"). Final Remand Results at 34. The exclusion of Jiangsu Guyu from the calculation of the rate for non-selected respondents was consistent with the Court's Remand Opinion and Order, as well as the statute.

In its comments in opposition to the remand redetermination, Defendant-Intervenor the AMMWF argues that Commerce erred by excluding the Jiangsu Guyu's margin in the calculation of the non-selected companies' rate because Jiangsu Guyu was "individually examined". Defendant-Intervenor AMMWF's Opposition to the Final Results of Redetermination Pursuant to Court Remand, dated January 11, 2023 ("AMMWF's Comments") at 1. According to AMMWF, the portion of the statute dealing with respondent selection and the portion of the statute dealing with the calculation of the non-selected company rate are separate and distinct. Specifically, AMMWF argues that it is not relevant whether Jiangsu Guyu was one of the largest exporters under 19 U.S.C. §1677f-1(e) and that Commerce was still required to include its rate in the calculation of the rate assigned to non-selected companies under 19 U.S.C.

§1671d(c)(5).  Id. at 3.  This is a misreading of the statute that would lead to ridiculous results and a decision contrary to the Court's Remand Order and Opinion in this case.

With respect to respondent selection, the statute provides the following:

> (2) EXCEPTION, If the administering authority determines that it is not practicable to determine individual countervailable subsidy rates under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may—
> (A) determine individual countervailable subsidy rates for a reasonable number of exporters or producers by limiting its examination to—
> (i) a sample of exporters or producers that the administering authority determines is statistically valid based on the information available to the administering authority at the time of selection, or
> (ii) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that the administering authority determines can be reasonably examined;

19 U.S.C. §1677f-1(e)(2).  This portion of the statute governs the selection of the "individual" companies to be investigated and requires Commerce to either select the largest exporters and producers or a statistically valid sample of all exporters or producers.   With respect to the rate for non-selected companies, the statute provides the following:

> For purposes of this subsection and section 1671b(d) of this title, the all-others rate shall be an amount equal to the weighted average countervailable subsidy rates established for exporters and producers individually investigated, excluding any zero and de minimis countervailable subsidy rates, and any rates determined entirely under section 1677e of this title.

19 U.S.C. 1671d(c)(5).  This portion of the statute has been reasonably read to mean that Commerce will calculate a rate for non-selected companies based on the rates assigned to the companies that were individually selected under 19 U.S.C. §1677f-1(e)(2). AMMWF's interpretation of the term "individually investigated" and its conclusion that all companies receiving a company-specific rate must be included in the calculation of

the "all others" rate is incorrect. and the interpretation ignores the principle of statutory interpretation that a statute must be read as a whole:

> In construing an act of Congress, it is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act." [citation omitted]. Rather, "each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole." [citation omitted].

*Aectra Ref. & Mktg. Inc. v. United States,* 31 C.I.T. 2086, 2093 (2007), aff'd, 565 F.3d 1364 (Fed. Cir. 2009) citing *NTN Bearing Corp. of Am. v. United States,* 26 CIT 53, 102–03, 186 F.Supp.2d 1257, 1303 (2002). The only reasonable reading the statute as a whole is that where a company is improperly selected for individual examination, its rate cannot be included in the rate assigned to all other companies, which is the case here. This interpretation is supported by precedent. The courts have held that the rates of the largest exporters and producers selected under 19 U.S.C. §1677f-1(e)(2) can be used in the calculation of the rate for all other companies because they are considered representative by virtue of being the largest exporters and producers. As this Court has stated, the purpose of the respondent selection provision of the statute is to ensure that Commerce captures a representative sample of the export market:

> It is not unreasonable to assume that the goals of these provisions are to capture a broadly representative sample of the export market, whether through the use of a statistically valid sample based on factors pertinent to the case or by the fact that capturing a large percentage of the imported merchandise generally will reflect the various commercial realities in the home market.

*Husteel Co. v. United States,* 98 F. Supp. 3d 1315, 1330 (Ct. Int'l Trade 2015). As this Court has found in the antidumping context, and which is equally applicable to the countervailing duty context, the largest exporters are considered representative, which allows Commerce to calculate an all other rate based on their data:

> The method Congress expressly provided for in 19 U.S.C. § 1677f–1(c)(2)(B) necessarily produces an "all-others" rate that is "untethered to actual record data"

> on the sales of individual, unexamined respondents. Any "relationship to their actual dumping margins" that exists under § 1677f–1(c)(2)(B) is, by definition, the relationship that exists because the examined respondents are treated as representative of other respondents by virtue of being the largest exporters. Commerce assigned a margin based on the margins of the two largest exporters to the unexamined ("separate rate") respondents because it concluded that the circumstance described in § 1677f–1(c)(2) existed, notwithstanding the margin that an unexamined respondent would have been assigned had it been individually examined.

*Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1362 (Ct. Int'l Trade 2018); *see also Shanxi Hairui Trade Co. v. United States*, No. 19-00072, 2021 WL 1291671, at *10 (Ct. Int'l Trade Apr. 7, 2021); *YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367, 1380 (Ct. Int'l Trade 2020); *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, 322 F. Supp. 3d 1308, 1347 (Ct. Int'l Trade 2018) (Because Senmao was one of the "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country," see 19 U.S.C. § 1677f–1(c)(2)(B), its pricing practices are presumptively representative of the other exporters and producers of subject merchandise."). The Federal Circuit has also found that the representativeness of the largest exporters and producers enables Commerce to reasonably approximate the margins for all known exporters and producers:

> The very fact that the statute contemplates using data from the largest volume exporters suggests an assumption that those data can be viewed as representative of all exporters. The statute assumes that, absent such evidence, reviewing only a limited number of exporters will enable Commerce to reasonably approximate the margins of all known exporters. As the CIT has explained, "[t]he representativeness of the investigated exporters is the essential characteristic that justifies an 'all others' rate based on a weighted average for such respondents."

*Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016) *quoting Nat'l Knitwear & Sportswear Ass'n v. United States,* 779 F.Supp. 1364, 1373–74, 15 C.I.T. 548, 559 (1991); *see also Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017).

Here not only is Jiangsu Guyu not one of the largest exporters or producers, but the import data relied upon by Commerce to select Guyu at all has been found to be clearly incorrect. Therefore, its margin cannot be considered representative of the margin for all producers and exporters, as a required by the statute and precedent, and cannot be included in the rate assigned to non-selected respondents under review. Indeed, the Guyu data are as plainly unrepresentative as is imaginable.

In this case, Jiangsu Guyu was not one of the largest exporters or producers and its rate cannot be considered representative of the rates of the non-selected companies. AMMWF only wishes to bring in, through the back door, a company's data that should have been rejected as inaccurate at the outset, which this Court has already addressed. If the Court were to accept AMMWF's reading of the statute, non-selected companies would have no remedy in this case, despite the fact that it has been established that Commerce erred in its selection of the largest exporters or producers. It would be contrary to principles of equity and justice, as well as the statutory language for Commerce to err in its initial decision but not provide respondents with any remedy as AMMWF advocates. For all of the above reasons, the only lawful determination is to exclude Jiangsu Guyu's rate from the calculation of the non-examined companies' rate, given that it was improperly selected for individual examination and its rate is not representative.

AMMWF cites to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") decision in *MacLean-Fogg Co. v. United States,* 753 F3d. 1237 (Fed. Cir. 2014). However, in that case, the Federal Circuit was deciding whether a voluntary respondent's rate should be included in the rate for non-selected companies. It was not dealing with a case where Commerce unlawfully selected a respondent for individual examination. Moreover, the Federal Circuit in that case was dealing with a countervailing duty investigation where all three selected mandatory

respondents refused to cooperate and were assigned rates based solely on adverse facts available. Appellants argued that Commerce should have included the rates calculated for the voluntary respondents instead of using the AFA rates applicable to mandatory respondents in order to calculate the all others rate. Thus, the facts and circumstances in *MacLean-Fogg* are different and distinguishable as none of these facts are present in this case.

Finally, AMMWF's cites to *Diamond Sawblades Manufacturers Coalition, et. al. v. United States*, 359 F. Supp. 3d 1374, 1376 (Ct. Int'l Trade 2019), in which the Court held that Commerce should have allowed a mandatory respondent to withdraw its review request and rescind the review for the company. On remand, Commerce rescinded the review for that mandatory respondent, but the Court subsequently held that it should continue to include the rate calculated for the rescinded company in the calculation of the all-others rate. That case, however, is also distinguishable because the Court found that the rate assigned to the other mandatory respondent by itself was not representative of an appropriate all-others rate and Commerce failed to select another mandatory to take the place of the rescinded company. As Senmao has argued in its Comments in Opposition to the Remand Redetermination, the Court should remand this case to Commerce again to select Senmao as a mandatory respondent. Even if the Court denies this request, however, AMMWF has not provided any evidence that the rate assigned to Jiangsu Guyu needs to be included in the rate assigned to non-selected companies in order for that rate to be considered representative. Most importantly, there was no question in *Diamond Sawblades* that both mandatory respondents were the largest exporters or producers and that they had both been appropriately chosen pursuant to the statute at 19 U.S.C. §1677f-1(e)(2). In this case, by contrast, the statute was not followed. As a result, the rate assigned to

Guyu cannot be considered representative and cannot be included in the rate assigned to non-selected companies.

## III. CONCLUSION

Thus, for these reasons, we continue to request that the Court remand this case to Commerce to select Senmao as a mandatory respondent and to include Senmao's resulting margin the calculation of the separate rate. However, regardless of whether the Court agrees, it should affirm Commerce's decision not to include the rate of Jiangsu Guyu International Trading Co., Ltd. in the calculation of the non-selected companies' rate.

Respectfully submitted,

/s/Jeffrey S. Neeley
Jeffrey S. Neeley
Stephen W. Brophy
**Husch Blackwell LLP**
1801 Pennsylvania Ave. N.W., Suite 1000
Washington, DC 20006
(202) 378-2409
Jeffrey.Neeley@huschblackwell.com

*Counsel for Plaintiffs Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., Jiangsu Keri Wood Co., Ltd., and Sino-Maple (Jiangsu) Co., Ltd.*

Dated: May 31, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirements. The word count for this submission as computed by Husch Blackwell's word processing system Microsoft Word is 2,399 words.

/s/Jeffrey S. Neeley<br>
Jeffrey S. Neeley<br>
**Husch Blackwell LLP**