IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

_____

JIANGSU SENMAO BAMBOO AND WOOD
INDUSTRY CO., LTD., *et al.*,

            Plaintiffs,

BAROQUE TIMBER INDUSTRIES
 (ZHONGSHAN) CO., LTD., *et al.*,

            Consolidated Plaintiffs,

    and

FINE FURNITURE (SHANGHAI)
LIMITED, *et al.*,

            Plaintiff-Intervenors,

    v.

UNITED STATES,

            Defendant,

    and

AMERICAN MANUFACTURERS OF
MULTILAYERED WOOD FLOORING,

            Defendant-Intervenor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Consol. Court No. 20-03885

**PUBLIC VERSION**
Business Proprietary Information
Denoted by Brackets on Page 20

**<u>DEFENDANT'S COMMENTS SUPPORTING REMAND REDETERMINATION</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:                                      KELLY M. GEDDES
JonZachary Forbes                                Trial Attorney
Attorney                                         U.S. Department of Justice
Office of the Chief Counsel                      Civil Division
for Trade Enforcement and Compliance             Commercial Litigation Branch
U.S. Department of Commerce                      P.O. Box 480
Washington, D.C.                                 Ben Franklin Station
                                                 Washington, D.C. 20044
                                                 Telephone: (202) 307-2867
                                                 E-mail: Kelly.Geddes2@usdoj.gov

May 31, 2023                                     Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ............................................................................................................... 2

    I.    The Administrative Determination Under Review ........................................... 2

    II.    The Court's August 11, 2022 Remand Order .................................................. 3

    III.    Commerce's First Remand Results .................................................................. 4

    IV.    The Court's February 14, 2023 Remand Order ............................................... 5

    V.    Commerce's Second Remand Results .............................................................. 6

ARGUMENT ..................................................................................................................... 7

    I.    Standard Of Review ........................................................................................ 7

    II.    Commerce's Remand Results Are In Accordance With The Court's Orders ................. 7

    III.    Commerce's Remand Results Are Supported By Substantial Evidence And In
Accordance With Law ..................................................................................... 8

        A.    Commerce's Determination To Assign Jiangsu Guyu Its Individually Calculated
Rate Is Supported By Substantial Evidence And In Accordance With Law .......... 9

        B.    Commerce's Determination To Not Include Jiangsu Guyu's Individually
Calculated Rate In The Non-Selected Company Rate Is In Accordance With Law
..................................................................................................... 13

        C.    Commerce's Determination Not To Individually Review Jiangsu Senmao Is In
Accordance With Law ...................................................................... 17

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)...................................................... 7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ......................................................................... 7

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966)....................................................................... 7

*CSC Sugar LLC v. United States*, 461 F. Supp. 3d 1352 (Ct. Int'l Trade 2020) .......................... 21

*Diamond Sawblade Manufacturers' Coalition v. United States*, 359 F. Supp. 3d 1374 (Ct. Int'l Trade 2019) ............................................................................................................. 12, 16, 17

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015)................ 7, 15

*McEachern v. Office of Personnel Management*, 776 F.2d 1539 (Fed. Cir. 1985) ...................... 21

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990)........................................ 11

*Siemens Gamesa Renewable Energy v. United States*, No. 21-00449, 2023 WL 2034254 (Ct. Int'l Trade Feb. 16, 2023) ............................................................................................................. 19

*YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022)...................................................................................................................... passim

## Statutes

19 U.S.C. § 1516a ...................................................................................................................... 2, 7

19 U.S.C. § 1671d........................................................................................................................ passim

19 U.S.C. § 1677f-1 .............................................................................................................. 5, 10, 17

## Other Authorities

H.R. Rep. No. 103-316, Vol. 1 (1994)........................................................................................... 10

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

_____

|  |  |  |
|---|---|---|
| JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., *et al.*, | ) ) ) | |
| Consolidated Plaintiffs, | ) ) | |
| and | ) ) | |
| FINE FURNITURE (SHANGHAI) LIMITED, *et al.*, | ) ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | Consol. Court No. 20-03885 |
| UNITED STATES, | ) ) | **PUBLIC VERSION** |
| Defendant, | ) ) ) | Business Proprietary Information Denoted by Brackets on Page 20 |
| and | ) ) | |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) | |
| Defendant-Intervenor. | ) ) ) | |

_____

## DEFENDANT'S COMMENTS SUPPORTING REMAND REDETERMINATION

Defendant, the United States, respectfully submits these comments in response to the

comments of plaintiffs, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. *et al.* (Jiangsu

Senmao) (ECF Nos. 106, 121), consolidated plaintiffs, Struxtur, Inc., *et al.* (Struxtur) (ECF Nos.

108, 123), Metropolitan Hardwood Floors, Inc. *et al.* (Metropolitan) (ECF Nos. 111, 125), and

Zhejiang Dadongwu GreenHome Wood. Co., Ltd. (GreenHome) (ECF No. 126), plaintiff-intervenors, Jiangsu Guyu International Trading Co., Ltd., *et al.* (Jiangsu Guyu) (ECF Nos. 109, 124), and defendant-intervenor, the American Manufacturers of Multilayered Wood Flooring (AMMWF) (ECF No. 110).

Our comments support the final remand redetermination filed by the Department of Commerce in accordance with the August 11, 2022 Remand Order and Opinion and the final remand redetermination filed by Commerce in accordance with the February 14, 2023 Remand Order wherein Commerce further considered its respondent selection determination as a result of the Federal Circuit's intervening final mandate in *YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377 (Fed. Cir. 2022). *See Final Results of Redetermination Pursuant to Court Remand* (ECF Nos. 101, 102) (*First Remand Results*); *Final Results of Redetermination Pursuant to Court Remand* (ECF Nos. 118, 119) (*Second Remand Results*).[1] For the reasons set forth below, we respectfully request that the Court sustain Commerce's first and second remand results and enter final judgment.

## **BACKGROUND**

## I.   **The Administrative Determination Under Review**

The administrative determination under review is the final results of the 2017 countervailing duty review covering multilayered wood flooring from China. *Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of*

---

[1]  In Commerce's second remand results, Commerce noted "As an initial matter, Commerce reaffirms its reasoning and conclusions reached in the *First Remand Results* to deselect Jiangsu Guyu as a mandatory respondent and exclude its rate from the calculation of the non-selected company rate.  Additionally, as Jiangsu Guyu notes, "in the Draft Remand we continued to apply Jiangsu Guyu's individually calculated CVD rate to Jiangsu Guyu, and we continue to do the same for these final results of redetermination."  *Second Remand Results* at 18.  Therefore, we ask the Court to sustain both remand redeterminations.

*Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 76,011 (Dep't of Commerce Nov. 27, 2020) (P.R. 369), and accompanying Issues and Decisions Memorandum (P.R. 361). The period of review is January 1, 2017, through December 31, 2017.

## II.    The Court's August 11, 2022 Remand Order

On August 11, 2022, this Court remanded Commerce's final results of review in the 2017 countervailing duty administrative review of multilayered wood flooring from China.  *See Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, 589 F. Supp. 3d 1195 (Ct. Int'l Trade Aug. 11, 2022) (*First Remand Order*).  The Court held that Commerce did not adequately address timely comments from parties at the time of respondent selection showing that Customs and Border Protection (CBP) data used by Commerce in its selection of mandatory respondents contained unrealistic entry volumes.  *Id.* at 1212-13.  The Court further held that the evidence of those unrealistic entry volumes was sufficient to undermine the reliability of the CBP data.  *Id.* at 31-32.  Therefore, the Court held that the selection of Jiangsu Guyu and Baroque Timber as mandatory respondents was not supported by substantial evidence. *Id.* at 1213.  The Court remanded the respondent selection determination to Commerce for reconsideration.  *Id.*

In addition, the Court held that because Commerce's selection of mandatory respondents was not supported by substantial evidence, the calculation of the rate for non-selected companies using the individual margins assigned to the mandatory respondents was not reasonable, holding that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies." *Id.* at 1213-14.  The Court therefore remanded the calculation of the rate for non-selected companies.

### III.    **Commerce's First Remand Results**

Consistent with the Court's remand order, Commerce on remand addressed interested parties' comments concerning certain unrealistic entry volumes contained in the CBP data and determined that a certain subset of CBP data entries with unrealistically large quantities is unreliable for the purpose of selecting mandatory respondents for individual review.  *First Remand Results* at 11.  The entries with unrealistically large quantities constitute a small fraction of all entries in the CBP data and Commerce found that, once the entries with unrealistically large quantities were removed from the dataset, there is no indication based on record evidence in this review that the remaining entries—the vast majority—are unusable.  *Id.*

After removing the entries with unreasonably large quantities from the CBP data, Commerce found that Jiangsu Guyu was not one of the two largest exporters of subject merchandise by volume during the period of review.  *Id.* at 12.  Accordingly, it determined that it was not appropriate to treat Jiangsu Guyu as a mandatory respondent.  *Id.*

By contrast, Commerce found that after removing the unrealistically large quantities from the CBP data, Baroque Timber continued to be one of the largest exporters of the subject merchandise by volume during the period of review.  Commerce therefore continued to treat Baroque Timber as a mandatory respondent. *Id.* at 13.  No party challenged this determination. *See First Remand Results* at 13.

Commerce also determined that its decision to exclude certain CBP data entries did not invalidate the individual subsidy rates calculated for Jiangsu Guyu and Baroque Timber, as those calculated rates were calculated using the companies' own submitted data.  *Id.*  Accordingly, Commerce continued to apply the individual rates calculated for Jiangsu Guyu and Baroque Timber to each company, respectively.  *Id.*

However, because it concluded that it was not appropriate to treat Jiangsu Guyu as a mandatory respondent, Commerce removed Jiangsu Guyu's assigned rate from the calculations for the non-selected company rate.  *Id.* at 14.  Commerce relied in part on language from the remand order that, "where there is a question of whether the selected respondents were the largest exporters during the {period of review}, the respondents can nether be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies."  *Id.* (citing *First Remand Order* at 36).  Commerce therefore applied Baroque Timber's individual countervailable subsidy rate as the rate assigned to non-selected companies. *Id.* at 15.

**IV.    The Court's February 14, 2023 Remand Order**

After the submission of the first remand results, the Court of Appeals for the Federal Circuit issued the final mandate in *YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) (*YC Rubber*).  In *YC Rubber*, the Federal Circuit concluded that when Commerce is required to calculate an average dumping margin from "'a reasonable number of exporters or producers'" to assign to exporters or producers that were not individually investigated, "a 'reasonable number' is generally more than one."  *YC Rubber*, 2022 WL 3711377 at *4 (quoting 19 U.S.C. § 1677f-1(c)(2)).

Because Commerce had determined in the first remand results to use the calculated countervailable subsidy rate from only one respondent, Baroque Timber, to calculate the rate for non-selected companies, Commerce requested a voluntary remand to determine if the judgment in *YC Rubber* may implicate Commerce's respondent selection determination at issue in this litigation.  *See* ECF No. 113.  On February 14, 2023, the Court granted our request and remanded the case "for further consideration of the respondent selection decision at issue in this case." (ECF No. 114).

V.      **Commerce's Second Remand Results**

In the second remand results, Commerce further considered respondent selection and considered whether the holding of *YC Rubber* implicates those determinations.  Commerce concluded that it is reasonable and in accordance with *YC Rubber* to continue to decline to select an additional mandatory respondent on remand.  *Second Remand Results* at 3.  Commerce specifically looked to the Federal Circuit's language in *YC Rubber* stating that "{t}he question is whether the statute permits Commerce to review a single exporter or producer when multiple have requested review and Commerce has not demonstrated that it was otherwise reasonable to calculate the all-others rate based on only one respondent."  *Id.* at 6.  Commerce determined that *YC Rubber* does not require that Commerce always calculate the non-selected rate in an administrative review based on at least two individually calculated rates, but instead instructs that if Commerce departs from this norm, it must demonstrate why it is reasonable to do so.  *Id.* at 7.

Consistent with this Court's second remand order, Commerce further considered its respondent selection determination and determined that the unique circumstances of this case are such that it is "otherwise reasonable" to continue to calculate the non-selected company rate based on the rate calculated for the sole remaining mandatory respondent, Baroque Timber.  *Id.* at 6.  In this case, relying solely on Baroque Timber's rate is reasonable because record evidence shows that it is reasonably representative of other exporters and producers, and because the only alternative is to in effect restart the review of a period that ended more than five years ago, and conduct a full investigation of an entirely new respondent.  Reopening the record and conducting a full investigation of an entirely new respondent would impose an unreasonable administrative burden on Commerce and would lead to excessively prolonged reviews in any cases where, like

here, the number of mandatory respondents was reduced on remand for reasons unforeseeable at the beginning of the review. *See Second Remand Results* at 11-13.

## ARGUMENT

### I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and "supported by substantial evidence and otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). Substantial evidence is "more than a mere scintilla" of relevant and reasonable evidence to support the underlying conclusions. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The requisite proof amounts to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" in light of "the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (footnote and internal quotation marks omitted).

That the Court may draw two inconsistent conclusions from the record "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) (citation omitted)).

### II.   Commerce's Remand Results Are In Accordance With The Court's Orders

The Court should sustain Commerce's remand results because Commerce complied with the Court's remand orders. In its first remand order, the Court directed Commerce to address the parties' comments on the CBP data that Commerce relied on for purposes of respondent selection, and to reconsider its selection of mandatory respondents accordingly. *Remand Order and Opinion* at 38. As explained above, in its first remand, Commerce did so. Commerce addressed the parties' various comments on the use of CBP data, concluded that some of the

CBP data consisted of unrealistic entries, and therefore excluded those entries and reconsidered its respondent selection and rate determinations accordingly.  *See First Remand Results* at 10-13. Commerce also complied with the February 14, 2023 Order by further reconsidering its respondent selection decision, particularly in light of *YC Rubber*.  *See Second Remand Results* at 5-13.

Although the parties challenge Commerce's remand redeterminations on the basis that they lack substantial evidence or are not in accordance with law, no party contends that Commerce did not comply with the remand orders.  As such, and as we demonstrate below, the Court should sustain Commerce's remand results because they are supported by substantial evidence and are in accordance with law.

### III.    Commerce's Remand Results Are Supported By Substantial Evidence And In Accordance With Law

The plaintiffs have made three challenges to Commerce's remand redetermination. Plaintiffs Jiangsu Guyu and Metropolitan argue that, because Commerce determined that it was no longer appropriate to treat Jiangsu Guyu as a mandatory respondent, Commerce should have assigned Jiangsu Guyu the "all-others" rate, rather than the individual rate Commerce had already calculated.  Plaintiff AMMFW, on the other hand, argues that because Commerce individually investigated Jiangsu Guyu, it was required to include Jiangsu Guyu's rate when calculating the all-others rate.  Finally, plaintiff Jiangsu Senmao argues that Commerce's reliance on a single mandatory respondent for calculation of the all-others rate was unlawful, and that Commerce should instead have investigated Jiangsu Senmao as a second mandatory respondent.  For the reasons explained below, however, each of these challenges fails, and Commerce's determinations were supported by substantial evidence and in accordance with law.

A.      **Commerce's Determination To Assign Jiangsu Guyu Its Individually
         Calculated Rate Is Supported By Substantial Evidence And In Accordance
         With Law**

Jiangsu Guyu and Metropolitan contend that it was unlawful for Commerce to continue

to assign Jiangsu Guyu its individually calculated rate after determining that it was not

appropriate to treat Jiangsu Guyu as a mandatory respondent.  *See* Jiangsu Guyu Comments on

First Remand Results (ECF No. 109) at 3-9; Jiangsu Guyu Comments on Second Remand

Results (ECF No. 124) at 1-3; Metropolitan Comments on First Remand Results (ECF No. 111)

at 1-2.  Jiangsu Guyu and Metropolitan argue that Commerce lacked statutory authority to do so

and that its decision was otherwise unsupported by substantial evidence.  *See* Jiangsu Guyu

Comments on First Remand Results at 4-9.

However, Commerce's determination to continue to assign Jiangsu Guyu its individually

calculated rate is consistent with Commerce's statutory authority and supported by substantial

evidence.  Commerce determined that, pursuant to 19 U.S.C. § 1671d, which governs the

calculation of the "all-others" rate, it would be inappropriate to assign Jiangsu Guyu the same

rate as the non-selected companies.  The statute describes the "all-others rate" as applicable to

"the exporters and producers not individually investigated."  19 U.S.C. § 1671d(c)(5)(A).

Commerce reasonably determined that, because Jiangsu Guyu was fully investigated in the

review, that Jiangsu Guyu was an individually investigated exporter/producer, despite

Commerce's determination on remand not to treat Jiangsu Guyu as a mandatory respondent.  *See*

*First Remand Results* at 13-14.  As a result, Commerce reasonably concluded that Jiangsu Guyu

should not be assigned the all-others rate pursuant to 19 U.S.C. § 1671d(c)(5)(A).  *Id.*

This conclusion is consistent with the overall statutory scheme:  Commerce ideally "shall

determine an individual countervailable subsidy rate for each known exporter or producer," and

relies instead on a subset of exporters or producers only if "it is not practicable to make

individual weighted average dumping margin determinations…because of the large number of exporters or producers involved in the investigation or review."  19 U.S.C. § 1677f-1(e).

Given this statutory preference for individual rates, there was no reason for Commerce apply the all-others rate to Jiangsu Guyu when its individual rate was available.  ⸺  Indeed, it would have been contrary to law for Commerce to do so.  Rather, Commerce determined that "assigning {Jiangsu} Guyu the individual rate that has already been calculated for it from record evidence is…consistent with the general goal of {19 U.S.C. § 1677f-1(e)} that Commerce calculate individual subsidy rates for as many exporters or producers as possible." *First Remand Results* at 26.

Jiangsu Guyu's arguments are unpersuasive.  It argues that Commerce's decision "lacked statutory authority," but ignores the actual statutory language and relies on a misguided analysis in a brief submitted by Fine Furniture (Shanghai) Limited (Fine Furniture) during the first remand.  *See* Jiangsu Guyu Comments on First Remand at 4 (citing Fine Furniture Comments on Draft Remand (*First Remand Results* P.R. 7)).  In that brief, Fine Furniture argued that the key question was whether a company was a "selected" respondent, not whether it was individually investigated.  Ignoring the plain language of 19 U.S.C. § 1671d(c)(5)(A), Fine Furniture relied on a passage from the Statement of Administrative Action accompanying the Uruguay Round Agreements Act, which stated that "'Commerce will calculate individual dumping margins *for those firms selected for examination* and an 'all others' rate to be applied to those firms not selected for examination.'"  *See* Fine Furniture Comments on Draft Remand at 5 (citing H.R. Rep. No. 103-316, Vol. 1 (1994) at 872 (SAA)) (emphasis added by Fine Furniture).

However, the SAA was issued in conjunction with a set of statutory revisions, and the language quoted by Fine Furniture is taken from the section of the SAA describing Commerce's

practice *before* the implementation of the revisions, and as applied to antidumping, rather than countervailing duty, investigations.  *See* SAA at 872 (explaining Commerce's "existing practice" for calculating dumping margins and then stating that "certain statutory amendments" are being made).  It is therefore irrelevant here.  By contrast, the section of the SAA describing the current governing statute for countervailing duty (CVD) determinations, 19 U.S.C. § 1671d(c), explains that "when Commerce issues an affirmative preliminary CVD determination, it will determine an individual countervailable subsidy rate to be applied to each exporter and producer individually investigated and an 'all-others' rate to be applied to those exporters and producers who were not individually investigated. . . . {19 U.S.C. § 1671d}(c)(l)(B) would apply similar rules to affirmative final {countervailing duty} determinations."  SAA at 941.  Accordingly, the SAA mirrors the language of the statute and instructs Commerce to look to whether a company has been individually investigated—not whether it is selected as a mandatory respondent—to determine whether or not it should receive the "all-others" rate.

Further, "the basic purpose of the statute {is} determining current margins as accurately as possible."  *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).  The calculation of an accurate margin for Jiangsu Guyu is best achieved by using the information Jiangsu Guyu submitted, which show its production and sales experience for the period of review, rather than using Baroque Timber's data, or any other proxy.

As explained above, while it is often not feasible to individually calculate a rate for all exporters, and Commerce must therefore rely on information from mandatory respondents to calculate representative rates to apply to other exporters, there is no reason to resort to an all-others rate when Commerce has already collected the actual data from a specific exporter and calculated its individual rate based on that data.  Because Commerce had already done this for

Jiangsu Guyu, and therefore calculated an individual rate representing Jiangsu Guyu's actual

production and sales experience, Commerce reasonably concluded that it would further the

purpose of the statute to continue to assign Jiangsu Guyu that individual rate rather than

replacing it with a representative rate based on data from Baroque Timbers.  *See First Remand*

*Results* at 24 ("{W}e have already calculated an individual rate for {Jiangsu Guyu}, and to

assign it any other rate (*i.e.*, the non-selected rate) would yield a less accurate outcome.").

Jiangsu Guyu further argues that its individual rate is not supported by substantial

evidence because the decision to select Jiangsu Guyu as a mandatory respondent was not based

on substantial evidence.  Jiangsu Guyu Comments on First Remand Results at 7-9.  This

argument conflates two distinct issues.  Specifically, the issue of whether Jiangsu Guyu was one

of the largest exporters of subject merchandise and should therefore have been treated as a

mandatory respondent is unrelated to whether its individual calculated rate is supported by

substantial evidence.  To get around this, Jiangsu Guyu makes a "fruit of the poisonous tree"

argument, contending that its information was "unlawfully obtained" and should therefore be

excluded.  *Id.* at 6.  It complains that it was deprived of its "ability to participate in this

administrative review as a non-investigated company" and that Commerce undermined Jiangsu

Guyu's attempt to avoid the "burden" of investigation by "mak{ing} business decisions to limit

{its} export volumes."  *Id.* at 7-8.

However, "there is no right not to be subject to review or individual examination."

*Diamond Sawblade Manufacturers' Coalition v. United States*, 359 F. Supp. 3d 1374, 1380 (Ct.

Int'l Trade 2019); *see also First Remand Results* at 27.  Accordingly, the fact that Commerce

would not have investigated Jiangsu Guyu if not for certain unrealistic quantities contained in the

CBP data does not mean that Commerce obtained anything from Jiangsu Guyu "unlawfully" or

deprived it of any entitlement to "freedom from participation in the proceeding."  Jiangsu Guyu

Comments on First Remand Results at 7-8.  Jiangsu Guyu has no such entitlement, and any

efforts it may have made to avoid review do not create such an entitlement.  Further, there is

simply no authority for Jiangsu Guyu's contention that if a party was selected for investigation

based on data that turned out to be erroneous, it should therefore be treated as though it was

never investigated.  Jiangsu Guyu was in fact investigated, and its individual rate has been

calculated based on its own submitted information.

Finally, as Commerce noted, Jiangsu Guyu *requested* to be reviewed in this

administrative review.  *First Remand Results* at 27 (citing Requests for Administrative Review

of Multilayered Wood Flooring from the People's Republic of China (Dec. 20, 2018) (P.R. 3)).

Accordingly, it cannot credibly argue that Commerce's investigation was "unlawful" or that

Jiangsu Guyu is owed "relief" from participating in the review and being assigned an individual

rate based on its own submitted information.  Rather, this request indicates Jiangsu Guyu's

willingness to participate in the administrative review, and it cannot object to the fact that it was

reviewed simply because it is unhappy with the outcome of that individual review.

For these reasons and those provided in our initial Rule 56.2 response brief, Commerce's

determination to assign Jiangsu Guyu its own individually calculated rate, and the calculation of

that rate, is supported by substantial evidence and in accordance with law.

**B.    Commerce's Determination To Not Include Jiangsu Guyu's Individually Calculated Rate In The Non-Selected Company Rate Is In Accordance With Law**

In its comments, AMMWF contends that even though Commerce no longer considered

Jiangsu Guyu to be a mandatory respondent, Commerce was required to include Jiangsu Guyu's

individually calculated rate in the non-selected company "all-others" rate.  AMMWF Comments

on First Remand (ECF 110) at 2-11.  AMMWF argues that 19 U.S.C. § 1671d(c)(5)(A)(i)

requires Commerce to calculate the all-others rate using "the weighted average countervailable subsidy rates established for exporters and producers individually investigated," and that this necessarily includes Jiangsu Guyu.  *Id.* at 3-4.

Commerce acknowledged in its first remand results that 19 U.S.C. § 1671d(c)(5)(A)(i) provides the general rule for calculating the "all-others" rate but concluded that including Jiangsu Guyu's rate in the calculation of the all-others rate in this case would not be consistent with the first remand order.  *First Remand Results* at 34.  In that order, the Court held that "where there is a question of whether the selected respondents were the largest exporters during the POR, the respondents can neither be treated as representative nor can they be relied upon by Commerce to calculate the rate for non-examined companies."  *Remand Order and Opinion* at 36.  Commerce relied upon this language as providing clear instruction from the Court on how to address this issue.  AMMWF argues that that language should not govern, *see* AMMWF Comments on First Remand at 6, but Commerce reasonably viewed this language as a clear instruction from the Court not to include any such rate in the calculation of the all-others rate. *See First Remand Results* at 34.

Moreover, in light of the unique circumstances of this case, Commerce appropriately excluded Jiangsu Guyu from the all-others rate, despite the general rule that the rates of all "individually investigated" parties be included.  In this case, Jiangsu Guyu was only individually investigated because it was mistakenly determined to be one of the two largest exporters of subject merchandise, and therefore representative of the industry.  This is an unusual circumstance that Congress was unlikely to foresee when it crafted 19 U.S.C. § 1671d(c)(5)(A)(i).  Nonetheless, were Commerce to apply the statute and average Jiangsu's rate with Baroque Timber's rate, it would lead to an absurd result that would undermine the

overall statutory framework.  Yet this is what would occur if Commerce initially investigated Jiangsu Guyu because it determined that it was one of the largest exporters or producers and therefore representative of the industry, on remand concluded that this determination was mistaken and that it should not have been investigated, but nonetheless included its rate in the non-selected company rate removing the ultimate effect of deselecting it as a mandatory respondent.

AMMWF also cites *MacLean-Fogg Co. v. United States*, 753 F.3d 1237 (Fed. Cir. 2014) to argue that the rates of all individually investigated exporters or producers must be included in the all-others rate, and that there can be no exception to this rule unless the exception is explicitly provided by statute.  *See* AMMWF Comments on First Remand (ECF 110) at 7-9 *MacLean-Fogg* held that Congress had spoken directly to the question of whether the rates of all voluntary respondents must be included in the calculation of the all-others rate.  *MacLean-Fogg*, 753 F.3d at 1246.  It reached this conclusion because voluntary respondents are individually investigated, and the statute provides that the rates of individually investigated must be included in the all-others rate unless specific exceptions apply.  *Id.* at 1241-43.

However, voluntary respondents are in a different position than parties such as Jiangsu Guyu:  Jiangsu Guyu was investigated because Commerce determined that it should be treated as a *mandatory* respondent, but Commerce later reconsidered that determination and ultimately concluded Jiangsu Guyu should not be treated as a mandatory respondent.  This distinction is important because, while Congress contemplated the existence of voluntary respondents when it enacted 19 U.S.C. § 1671d(c)(5)(A)(i), it had no reason to specifically consider the unusual scenario presented here:  a company that was individually investigated as a mandatory respondent and assigned an individual rate, but that Commerce would later determine should not

15

be treated as a mandatory respondent.  In the case of voluntary respondents, the Federal Circuit reasoned that since they did not fall within one of the specified exclusions to the rule that all rates for "individually investigated" companies be included in the all-others rate, Congress must have intended that they be included.  But this reasoning does not apply to a unique situation Congress did not specifically contemplate.  In this circumstance, Commerce reasonably determined that it was consistent with the overall statutory purpose to exclude Jiangsu Guyu's rate from the all-others rate.

Finally, AMMWF argues that the holding in *Diamond Sawblades*, 359 F. Supp. 3d 1374 (Ct. Int'l Trade 2019), requires inclusion of Jiangsu Guyu's rate in the all-others calculation.  In *Diamond Sawblades*, Commerce determined on remand that it should have granted the motion of a company called Weihai to withdraw its request for review, and Commerce therefore rescinded its Weihai's review and calculated the all-others rate based on the sole other mandatory respondent.  *Id.* at 1377.  However, the record showed that the other mandatory respondent's rate "was not likely representative of an appropriate antidumping duty all-others rate."  *Id.* at 1381.  Thus, "Commerce should have known it likely was not making a representative selection and was rather choosing an unreliable rate."  *Id.* at 1381-82.  The Court therefore held that "the choice to rescind the review of Weihai paired with the decision to not select a substitute mandatory respondent…was not supported by substantial evidence."  *Id.* at 1382.  But the Court did not conclude that Commerce was required to include Weihai's rate in calculation of the all-others rate.  Rather, it expressly provided several alternatives.  Specifically, it "remand{ed} the matter to Commerce to withdraw the rescission of review as to Weihai; choose a suitable substitute mandatory respondent; *or* use any other record evidence to devise a fair, equitable, and reasonably accurate all-others rate."  *Id.* at 1383 (emphasis added).

Accordingly, *Diamond Sawblades* only held that Commerce must choose a reasonable all-others rate supported by substantial evidence.  It did not hold that an individually investigated party's rate must always be included, but rather allowed that Commerce might exclude the rate of an individually investigated party where the review was later rescinded, so long as Commerce arrived at a reasonable all-others rate.  *Diamond Sawblades* therefore supports Commerce's decision to exclude Jiangsu Guyu's rate from the all-others calculation in this case after determining that it was inappropriate to treat Jiangsu Guyu as a mandatory respondent.

### C.     Commerce's Determination Not To Individually Review Jiangsu Senmao Is In Accordance With Law

Jiangsu Senmao argues that *YC Rubber* requires that Commerce must select an additional respondent on remand to include in its calculation of the non-selected company rate.  *See* Jiangsu Senmao Comments on Second Remand (ECF No. 121) at 5-8.  Commerce considered this argument, and ultimately rejected it, in its second remand results.  *Second Remand Results* at 18-25.  Commerce therefore declined to review additional respondents, which is not required and would be unduly burdensome at this late stage in the proceeding.  This decision is in accordance with law.

In *YC Rubber*, as in this case, Commerce determined that it was not practicable to individually investigate all exporters or producers of the subject merchandise and chose instead to examine "a reasonable number" of exporters or producers pursuant to 19 U.S.C. § 1677f-1(c)(2).  *YC Rubber*, 2022 WL 3711377 at *1.  Commerce selected two mandatory respondents, and when one of them withdrew from participation shortly after receiving the initial questionnaire, Commerce declined to select any additional respondents.  *Id.* at *2.  As the Federal Circuit explained:  "The question is whether the statute permits Commerce to review a single exporter or producer when multiple have requested review and Commerce has not

demonstrated that it was otherwise reasonable to calculate the all-others rate based on only one respondent." *Id.* at *3.  The Federal Circuit concluded that "{t}he statute generally requires that the 'reasonable umber' is greater than one." *Id.*

Commerce reasonably interpreted this language in *YC Rubber* as instructing that if Commerce departs from the norm of selecting more than one mandatory respondent when multiple companies had requested review and when Commerce has decided to limit its individual examination to a "reasonable number" of exporters or producers, it must demonstrate it is "reasonable" to do so.  *See Second Remand Results* at 7.  This is the most natural reading of the Federal Circuit's holding that the statute "generally" requires more than one individual investigation, as well as the court's emphasis on the fact that Commerce did not "demonstrate{} that it was otherwise reasonable to calculate the all-others rate based on only on respondent." *YC Rubber*, 2022 WL 3711377 at *3.  If there were no exceptions to this "general" rule, Commerce could be endlessly obliged to review period-specific information for additional companies well beyond the original review.  This is because, following the final results of an administrative review where Commerce examined multiple companies, any number of hypothetical scenarios may arise where, on remand, Commerce is left with only one rate as the basis for the non-selected company rate.  Therefore, Commerce understood the language from *YC Rubber* as allowing it to exercise reasonable discretion not to review additional companies in such instances.  *Second Remand Results* at 24-25.

Although the Federal Circuit found that it was not "otherwise reasonable" to examine only one respondent in the circumstances of *YC Rubber*, in this case the circumstances justify departing from the general rule.  In *YC Rubber*, the second respondent withdrew its participation from the proceeding only a few weeks after the initial questionnaire was issued, at a point in the

proceeding when it would not have been very burdensome to select an additional respondent.  *YC Rubber*, 2022 WL 3711377 at *2.  Further, Commerce did not explain why it did not select a replacement respondent.  Here, by contrast, Commerce fully reviewed two companies throughout the administrative review.  It was only after the Court remanded the case that Commerce was left with only one mandatory respondent to use as the basis for the non-selected company rate.  This also distinguishes this case from *Siemens Gamesa*, the other case Jiangsu Senmao relies on.  *See* Jiangsu Senmao Comments on Second Remand at 6-7 (citing *Siemens Gamesa Renewable Energy v. United States*, No. 21-00449, 2023 WL 2034254 (Ct. Int'l Trade Feb. 16, 2023)).  In *Siemens Gamesa*, Commerce decided not to replace the singular mandatory respondent that dropped out prior to the issuance of the preliminary results and proceeded with the investigation with no participating mandatory respondents.  *See Second Remand Results* at 21.

In its second remand results, Commerce explained the significant administrative burden that reviewing an additional mandatory respondent would entail, even though Jiangsu Senmao already submitted its initial questionnaire response:

> In addition to reviewing Jiangsu Senmao's questionnaire response, Commerce would have to issue supplemental questionnaires regarding certain programs covered by this review.  Additionally, Commerce would have to solicit and review an initial questionnaire response from the Government of China (GOC) and would have to issue supplemental questionnaires to the GOC pertaining to the ownership of Jiangsu Senmao's input suppliers under the various less than adequate remuneration (LTAR) programs covered by this review, in addition to any other programs unique to Jiangsu Senmao.  Likewise, because this review covers the Export Buyer's Credit program, Commerce would need to request information from U.S. customers.  Commerce would also have to allow time for Jiangsu Senmao, and other interested parties, to submit benchmarking information to value the inputs under the above-mentioned LTAR programs.  Commerce then would have to allow time to examine all of the information submitted to prepare its preliminary results, after which it must allow time for the parties to review the preliminary results and

> submit case and rebuttal briefs before issuance of the final results.
> In all, although the fact that Jiangsu Senmao has already provided
> an initial questionnaire response may somewhat lessen the time
> needed to complete an administrative review with respect to it,
> Commerce normally has up to 365 days at a minimum under
> section 751(a)(3)(A) of the Act to complete an ordinary
> administrative review.

*Second Remand Results* at 12; *see also id.* at 24.  This extensive and detailed explanation

demonstrates that it was "otherwise reasonable" to decline to select an additional mandatory

respondent on remand.  That decision was therefore consistent with *YC Rubber*.

Further, as Commerce also explained, record evidence supports the conclusion that

Baroque Timber's data is reasonably representative of other exporters and producers.  As

Commerce explained, Baroque Timber [                                                    ] during the period of

review based on quantity and value information submitted by Baroque Timber and Jiangsu

Senmao.  *Second Remand Results* at 8.  Further, no party other than Jiangsu Senmao has

challenged Baroque Timber's representativeness, and one party—Fine Furniture—argued during

remand that Commerce should rely entirely on Baroque Timber's rate because of its

representativeness.  *Id.*  Jiangsu Senmao does not offer any evidence that Baroque Timber's rate

is not representative, other than arguing that it does not constitute a large enough fraction of the

industry.  *See* Jiangsu Senmao Comments On Second Remand Results at 8-9.  Ultimately, it was

reasonable for Commerce to conclude that under these circumstances, it was reasonable to rely

on the rate of a single exporter rather than to incur the substantial burden of reviewing another

respondent at this point in the review.

Finally, Jiangsu Senmao argues that Commerce's burden is "irrelevant" because it results

from Commerce's "unlawful" selection of mandatory respondents.  Jiangsu Senmao Comments

On Second Remand Results at 11-13.  Further, Jiangsu Senmao suggests that if Commerce is not

required to review an additional respondent, "Commerce can continue to ignore the law and simply claim on remand that it is too late to correct its decision now." *Id.* This concern is greatly exaggerated. Despite Commerce's best efforts to comply with the law, there are inevitably cases where the Court disagrees with Commerce's conclusions and, to comply with the Court's orders, Commerce must change its determinations on remand. Such decisions may leave Commerce with only a single mandatory respondent in some cases, and in such cases it is most reasonable for Commerce to weigh the burden of reviewing additional respondents against the benefits of doing so. Further, Jiangsu Senmao appears to be suggesting that despite *YC Rubber* Commerce would, in future reviews, review a single company at the outset without justification and claim on remand that it would be too burdensome to review an additional respondent. But government officials are presumed to act in good faith in discharging their duties, so the Court should reject the implication that Commerce would be incentivized to willfully ignore the law. *See CSC Sugar LLC v. United States*, 461 F. Supp. 3d 1352, 1356-57 (Ct. Int'l Trade 2020) (citing *McEachern v. Office of Personnel Management*, 776 F.2d 1539, 1544 (Fed. Cir. 1985)). In any case, that is not what happened in this case, where Commerce reviewed multiple companies through the course of the underlying administrative review and calculated individual rates for multiple mandatory respondents for use in calculating a non-selected company rate, but later reconsidered one of the mandatory respondents' status. In short, Commerce ended up with only one respondent on remand as the result of unforeseen issues, and it was reasonable in that circumstance to weigh the costs and benefits of reviewing additional respondents.

Based on the above, the Court should find that Commerce's remand redeterminations are supported by substantial evidence and in accordance with law.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand

redetermination and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director


/s/ Kelly M. Geddes
OF COUNSEL:                          KELLY M. GEDDES
JonZachary Forbes                    Trial Attorney
Attorney                             U.S. Department of Justice
Office of the Chief Counsel          Civil Division
for Trade Enforcement and Compliance Commercial Litigation Branch
U.S. Department of Commerce          P.O. Box 480
Washington, D.C.                     Ben Franklin Station
                                     Washington, D.C. 20044
                                     Telephone: (202) 307-2867
                                     E-mail: Kelly.Geddes2@usdoj.gov


May 31, 2023                         Attorneys for Defendant

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE

_____
                                                            )
JIANGSU SENMAO BAMBOO AND WOOD          )
INDUSTRY CO., LTD., *et al.*,                          )
                                                            )
              Plaintiffs,                                  )
                                                            )
BAROQUE TIMBER INDUSTRIES                   )
 (ZHONGSHAN) CO., LTD., *et al.*,                )
                                                            )
              Consolidated Plaintiffs,            )
                                                            )
        and                                              )
                                                            )
FINE FURNITURE (SHANGHAI)                      )
LIMITED, *et al.*,                                       )
                                                            )
              Plaintiff-Intervenors,               )
                                                            )
        v.                                                 )          Consol. Court No. 20-03885
                                                            )
UNITED STATES,                                       )
                                                            )
              Defendant,                              )
                                                            )
        and                                              )
                                                            )
AMERICAN MANUFACTURERS OF              )
MULTILAYERED WOOD FLOORING,          )
                                                            )
              Defendant-Intervenor.             )
_____)

## ORDER

Upon consideration of the Department of Commerce's (Commerce) remand redetermination, plaintiffs', consolidated plaintiffs', and plaintiff-intervenors' comments on the remand redetermination, defendant's and defendant-intervenor's responses thereto, and all other pertinent papers and proceedings in this action, it is hereby

ORDERED that Commerce's remand results are sustained.


Dated: _____, 2023
      New York, NY                                     Timothy M. Reif, Judge

CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6,217 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s Kelly M. Geddes
Kelly M. Geddes