C-570-971
Remand
Slip Op. 25-28
POR:  01/01/2017 – 12/31/2017
~~Business Proprietary Document~~
**Public Version**
E&C/OVIII:  LJS

***Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States***
**Court No. 20-03885, Slip Op. 25-28 (CIT March 24, 2025)**
**Multilayered Wood Flooring from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the third opinion and remand order of the U.S. Court of International

Trade (the Court) in *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United*

*States*, Consol. Court No. 20-03885, Slip Op. 25-28, 769 F. Supp. 3d 1344 (March 24, 2025)

(*Third Remand Opinion and Order*).  These final results of redetermination concern the final

results of the 2017 administrative review of the countervailing duty (CVD) order on multilayered

wood flooring from the People's Republic of China (China),[1] as amended by Commerce's *First*

*Remand Results*[2] and *Second Remand Results*.[3]  In the *First Remand Results*, Commerce further

clarified our analysis concerning respondent selection and the use of U.S. Customs and Border

---

[1] *See Multilayered Wood Flooring from the People's Republic of China:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2017*, 85 FR 76011 (November 27, 2020) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Final Results of Redetermination Pursuant to Court Remand, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, Consol. Court No. 20-03885, Slip Op. 22-93 (CIT 2022), dated December 7, 2022 (*First Remand Results*), available at https://access.trade.gov/resources/remands/22-93.pdf; *see also Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, 589 F. Supp. 3d 1195 (CIT 2022) (*First Remand Order*).
[3] *See Final Results of Redetermination Pursuant to Court Remand, Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, Consol. Court No. 20-03885, Remand (CIT 2023), dated February 14, 2023 (*Second Remand Results*), available at https://access.trade.gov/resources/remands/20-03885.pdf; *see also Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, Consol. Court No. 20-03885, February 14, 2023 (ECF 114). (*Second Remand Order*).

Protection (CBP) data, and the assignment of Jiangsu Guyu International Trading Co., Ltd. (Jiangsu Guyu)'s individually calculated rate to itself. In the *Second Remand Results*, Commerce voluntarily reconsidered the implications of the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) recent decision in *YC Rubber*[4] on Commerce's respondent selection, finding it reasonable under *YC Rubber* to not select an additional mandatory respondent to replace the respondent Commerce deselected pursuant to the Court's *First Remand Order*.[5]

In the *Third Remand Opinion and Order*, the Court sustained in part, and remanded in part, the *Second Remand Results*. The Court ordered Commerce to select for examination Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. (Jiangsu Senmao) as a mandatory respondent in the 2017 administrative review of multilayered wood flooring from China, and further explain or revise certain of Commerce's benchmark calculations for the provision of plywood and veneer for less than adequate remuneration (LTAR) programs.[6] On July 16, 2025, we released our Draft Remand to interested parties.[7] On July 23, 2025, we received comments from Fine Furniture (Shanghai) Limited and Double F Limited (collectively, Fine Furniture).[8] No other interested party filed comments.

As discussed below, pursuant to the Court's *Third Remand Opinion and Order*, Commerce has addressed party's comments regarding Commerce's examination of Jiangsu Senmao as a mandatory respondent during the period of review (POR) and Commerce's removal of HS 4412.99 from the benchmark calculation under the provision of plywood for LTAR

---

[4] *See YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489 (Fed. Circ. 2022) (*YC Rubber*).
[5] *See Second Remand Results* at 10.
[6] *See Third Remand Opinion and Order*, 769 F. Supp. 3d at 1409.
[7] *See* Draft Results of Remand Redetermination, *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et al. v. United States*, Consol. Court No. 20-03885, Slip Op. 25-28 (CIT 2025), dated July 16, 2025 (Draft Remand).
[8] *See* Fine Furniture's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated July 23, 2025 (Fine Furniture Draft Remand Comments).

program for Baroque Timber Industries (Zhongshan) Co., Ltd. (Baroque Timber), a cross-owned

affiliate of Riverside Plywood Corporation (Riverside Plywood).[9]

## II.    BACKGROUND

### A.  Background to Treatment of Jiangsu Senmao

On March 14, 2019, Commerce initiated an administrative review of the CVD order on

multilayered wood flooring from China for 170 producers and exporters of subject merchandise

for the POR January 1, 2017, through December 31, 2017.[10]  On May 21, 2019, Commerce

issued its Respondent Selection Memorandum selecting Baroque Timber and Jiangsu Guyu as

mandatory respondents in this administrative review.[11]  On May 31, 2019, Jiangsu Senmao filed

comments on respondent selection.[12]

On June 14, 2019, Jiangsu Senmao filed a request for voluntary respondent treatment and

timely filed its affiliation questionnaire response.[13]  On July 1, 2019, Jiangsu Senmao timely

filed its complete initial questionnaire response.[14]  The petitioner[15] submitted new subsidy

allegations (NSAs) on August 12, 2019, however, Jiangsu Senmao did not file a response to

Commerce's subsequent NSA supplemental questionnaire in light of Commerce's voluntary

respondent determination.[16]  On October 17, 2019, Commerce published its initiation of an

investigation into the four programs presented by the petitioner as NSAs and, on February 6,

---

[9] *Id.*

[10] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 FR 9297 (March 14, 2019).

[11] *See* Memorandum, "Respondent Selection," dated May 21, 2019.

[12] *See* Jiangsu Senmao's Letter, "Response to Department's Rejection of Comments on Respondent Selection," dated May 31, 2019; *see also* Commerce's Letter, "Accepting Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.'s (Senmao) May 31 and June 3, 2019 Submissions," dated June 13, 2019.

[13] *See* Jiangsu Senmao's Letters, "Request for Voluntary Respondent Treatment" and "Section III Affiliation Questionnaire Response," dated June 14, 2019.

[14] *See* Jiangsu Senmao's Letter, "Section III Questionnaire Response," dated July 1, 2019.

[15] The petitioner in this review is the American Manufacturers of Multilayered Wood Flooring.

[16] *See* Petitioner's Letter, "New Subsidy Allegations," dated August 12, 2019; *see also* Memoranda, "Whether to Select Voluntary Respondents," dated September 26, 2029; and "Decision Memorandum on New Subsidy Allegations," dated October 17, 2019.

2020, Commerce published its *Preliminary Results* in this administrative review.[17]  On

November 27, 2020, Commerce published its *Final Results* in this administrative review.[18]

   In the *First Remand Opinion and Order*, the Court found that Commerce's selection of

Jiangsu Guyu and Baroque Timber as mandatory respondents was not supported by substantial

evidence and remanded Commerce to reconsider its respondent selection determination.[19]

Commerce subsequently addressed the Court's request for reconsideration by addressing

interested parties' comments on the use of CBP data for respondent selection, continuing to

select Baroque Timber as the sole mandatory respondent and de-selecting Jiangsu Guyu as a

mandatory respondent, instead assigning Jiangsu Guyu an individually calculated CVD subsidy

rate for the purposes of the final results of redetermination.[20]  The Court then granted

Commerce's February 14, 2023, request for a voluntary remand to consider whether the Federal

Circuit's decision in *YC Rubber* had implications for Commerce's respondent selection and non-

examined company rate determinations in this administrative review.[21]  In the *Second Remand*

*Results*, Commerce explained that it was reasonable to continue relying solely on Baroque

Timber's individually calculated rate in determining the non-selected company rate, declining to

select an additional mandatory respondent.[22]

---

[17] *See* Memorandum, "Decision Memorandum on New Subsidy Allegations," dated October 17, 2019; *see also Multilayered Wood Flooring from the People's Republic of China:  Preliminary Results of Countervailing Duty Administrative Review, and Intent to Rescind Review, in Part; 2017*, 85 FR 6908 (February 5, 2020) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM).
[18] *See* Jiangsu Senmao's Letter, "Letter in Lieu of Rebuttal Brief," dated March 24, 2020; *see also Final Results* IDM.
[19] *See First Remand Opinion and Order*, 589 F. Supp. 3d at 1215
[20] *See First Remand Results* at 35.
[21] *See Second Remand Results* at 1-2; *see also YC Rubber*, No. 2021-1489.
[22] *See Second Remand Results*.

## B. Background to Inputs for LTAR Benchmark Calculations

With respect to the benchmark calculation issues for certain inputs for LTAR outlined above, on August 12 and November 13, 2019, the Government of China (GOC) and Baroque Timber submitted data for Commerce to consider as benchmarks in the LTAR subsidy rate calculations, including benchmarks for the provision of veneers and plywood for LTAR programs.[23] On September 3 and November 13, 2019, the petitioner submitted benchmark information also including the provision of veneers and plywood for LTAR programs.[24] On November 25, 2019, Baroque Timber submitted rebuttal comments to the petitioner's benchmark submissions.[25] On January 3, 2020, Commerce requested information to be used to benchmark reported domestic transportation;[26] on January 10, 2020, the petitioner and Baroque Timber submitted the requested benchmark information.[27] In the *Preliminary Results*, Commerce evaluated all benchmark information provided for measuring the adequacy of remuneration in accordance with 19 CFR 351.511(a)(2) and removed certain Harmonized System (HS) codes from the benchmark calculations.[28] In case and rebuttal briefs, interested parties commented on Commerce's plywood and veneer benchmarks for the provision of plywood and veneers for

---

[23] *See* GOC's Letter, "GOC's Initial Benchmark Submission," dated August 12, 2019; *see also* Baroque Timber's Letter, "Benchmark Data Submission," dated August 12, 2019 (Baroque Timber Benchmark Submission); and Baroque Timber's Letter, "Second Benchmark Data Submission," dated November 13, 2019.

[24] *See* Petitioner's Letter, "Other Factual Information and Benchmark Pricing Information," dated September 3, 2019 (Petitioner Benchmark Submission); *see also* Petitioner's Letter, "Other Factual Information and Benchmark Pricing Information Regarding New Subsidy Allegations," dated November 13, 2019 (Petitioner Second Benchmark Submission).

[25] *See* Baroque Timber's Letter, "Benchmark Rebuttal," dated November 25, 2019 (Baroque Timber Rebuttal Benchmark Submission).

[26] *See* Commerce's Memorandum, "Request for Domestic Transportation Costs Benchmark," dated January 3, 2020.

[27] *See* Petitioner's Letter, "Pricing Information Regarding Domestic Transportation and Related Costs," dated January 10, 2020; *see also* Baroque Timber's Letter, "Comments on Domestic Inland Freight Benchmark," dated January 10, 2020.

[28] *See Preliminary Results* PDM at 13-15.

LTAR programs.[29]  In the *Final Results*, Commerce further revised its plywood benchmark[30] and found that Jiangsu Guyu's purchases of poplar core sheets fall under the scope's description of a veneer, and therefore included such purchases in the calculation of the provision of veneers for LTAR program.[31]

## III.    REMAND OPINION AND ORDER

In the *Third Remand Opinion and Order*, the Court ordered Commerce to select Jiangsu Senmao for examination as a mandatory respondent, to reconsider its decision to include data from HS category 4412.99 in its plywood for LTAR benchmark calculation, and to further explain its reasoning or provide Jiangsu Guyu the opportunity to submit additional benchmark data with respect to the veneers for LTAR program.

Specifically, in the *Third Remand Opinion and Order*, the Court concluded that Commerce's decision to not calculate an individual rate for Jiangsu Senmao was not consistent with *YC Rubber*.  The Court explained that Commerce, by deselecting Jiangsu Guyu and not examining another respondent, did not sufficiently demonstrate that it was otherwise reasonable to calculate the all-others rate based on only one respondent.[32]  Further, the Court directed Commerce to select Jiangsu Senmao for examination because it was one of the two largest exporters or producers accounting for entries of subject merchandise during the POR.[33]

Additionally, in the *Third Remand Opinion and Order*, the Court found that Commerce's decision to include data from HS 4412.99 in the plywood for LTAR benchmark is unsupported

---

[29] *See* Petitioner's Letter, "Case Brief," dated March 13, 2020; *see also* Fine Furniture's Letter, "Case Brief," dated March 13, 2020; Baroque Timber's Letter, "Administrative Case Brief," dated March 13, 2020 (Baroque Timber Case Brief); Jiangsu Guyu's Letter, "Resubmittal of Case Brief," dated March 19, 2020; Petitioner's Letter, "Rebuttal Brief," dated March 24, 2020; and Jiangsu Guyu's Letter, "Rebuttal Case Brief," dated March 24, 2020.
[30] *See Final Results* IDM at Comment 6.
[31] *Id*. at Comments 3 and 5.
[32] *See Third Remand Opinion and Order,* 769 F. Supp. 3d at 1359-60.
[33] *Id.* at 1360.

by substantial evidence.[34]  The Court found that Commerce's conclusion that "all plywood is a laminate structure," and for that reason HS 4412.99 covers products "comparable" to those plywood inputs purchased by Baroque Timber during the POR, is also unsupported by substantial evidence.[35]  The Court found that uncontroverted record evidence demonstrates that "plywood" and "laminated wood" are distinct products, covered by distinct HS subcategories, and that Baroque Timber did not use products covered by HS 4412.99 during the POR.[36]  The Court remanded Commerce to reconsider its decision to include HS 4412.99 data in the plywood for LTAR benchmark calculation.[37]

With respect to the veneers for LTAR program, the Court found that Commerce's inclusion of Jiangsu Guyu's purchases of poplar core sheets in the veneers for LTAR program is supported by substantial evidence.[38]  However, the Court remanded the calculation of the benchmark for the veneer for LTAR program to Commerce, explaining that the calculation for Jiangsu Guyu is not supported by substantial evidence and is therefore not in accordance with law.[39]  Although the Court held that Commerce did not abuse its discretion by denying interested parties from submitting additional benchmark information for poplar core sheet following the *Preliminary Results*, it found that Commerce did not adequately explain its reasoning that the veneer benchmark data on the record were appropriate to benchmark Jiangsu Guyu's purchases of poplar core sheet.[40]  Accordingly, the Court ordered Commerce to reconsider its conclusion that record benchmark data for veneers were "sufficient" and "usable" to calculate a benefit for Jiangsu Guyu's reported purchases of poplar core sheet during the POR by either:  (1) reopening

---

[34] *Id.* at 1374.
[35] *Id.* at 1371-74.
[36] *Id.* at 1373-74.
[37] *Id.* at 1374.
[38] *Id.* at 1376-79.
[39] *Id.* at 1380-82.
[40] *Id.* at 1379-82.

the record to accept additional benchmark information; or (2) provide a more thorough explanation of Commerce's conclusion that record benchmark data is sufficient to measure the adequacy of remuneration.[41]

Therefore, Commerce is addressing the Court's order to select Jiangsu Senmao for examination and reconsider its plywood and veneer for LTAR benchmark calculations.

**A.     Commerce's Examination of Jiangsu Senmao as a Mandatory Respondent**

As noted above, the Court ordered Commerce to select Jiangsu Senmao for examination as a mandatory respondent. In line with the Court's *Third Remand Opinion and Order*, we reconsidered record evidence submitted by Jiangsu Senmao and calculated an individual subsidy rate for Jiangsu Senmao as one of the two exporters and/or producers accounting for the largest volume of subject merchandise into the U.S. during the POR in the underlying administrative review. Accordingly, Commerce calculates a total *ad valorem* subsidy rate of 2.45 percent to Jiangsu Senmao during the POR. For a complete analysis of Commerce's calculation of an individual subsidy rate for this respondent, *see* the Preliminary Analysis Memorandum.[42]

**B.     Whether to Revise the Plywood for LTAR Benchmark**

The Court in its *Third Remand Opinion and Order* concludes that Commerce's decision to include HS 4412.99 in the plywood for LTAR benchmark calculation is unsupported by substantial evidence.[43] In the underlying review, Commerce found that "all plywood is a laminate structure," however, the Court states that record evidence demonstrates "plywood" and "laminated wood" are distinct products, covered by distinct HS subcategories.[44]

---

[41] *Id.* at 1382.
[42] *See* Memorandum, " Preliminary Analysis Memorandum for Jiangsu Senmao Bamboo and Wood Industry Co. Ltd Pursuant to Court Remand," dated July 16, 2025 (Preliminary Analysis Memorandum).
[43] *See Third Remand Opinion and Order* at 41.
[44] *Id.* at 42.

In the *Final Results*, Commerce stated that HS code 4412.99 covers products comparable to the plywood input reported by the mandatory respondents.[45]  Commerce disagreed with Baroque Timber and Fine Furniture's contention that HS code 4412.99 covers a laminated wood not used in the production of subject merchandise.[46]  Baroque Timber specifically claims that it used plywood made of beech or eucalyptus, not laminated wood covered by HS category 4412.99, and Commerce disagreed, reasoning that all plywood is a laminate structure which uses thin layers of wood to form plywood.[47]  The Court held that this reasoning was unsupported by record evidence because Commerce's reasoning was conclusory, did not consider contextual record evidence, and did not consider the entirety of record evidence at Commerce's disposal.[48]  Upon further reconsideration, we find it appropriate to remove HS code 4412.99 from the plywood for LTAR benchmark following our reexamination of record evidence, as detailed below.

Accordingly, upon further examination of the record, we agree with the Court's finding and conclude that HS code 4412.99 is not representative of comparable products to measure the adequacy of remuneration for plywood purchases during the POR.  Specifically, HS subheading 4412.99 covers, "Plywood; not containing an outer layer of non-coniferous wood, not containing a layer of particle board."[49]  In its case brief, Baroque Timber claims that the imports into China under this HS subheading are not plywood, but "laminated wood."  Baroque Timber contends that it did not use laminated wood during the POR, but instead used plywood made of beech or eucalyptus, as evidenced by the purchase contract, export declaration and warehouse in-slip it

---

[45] *See Final Results* IDM at Comment 9.
[46] *Id.* at 39.
[47] *Id*.
[48] *See Third Remand Opinion and Order* at 37-49.
[49] *See* Petitioner Second Benchmark Submission at Exhibit 1.

provided.[50]  Baroque Timber further elaborates in its Rebuttal Benchmark Submission, stating

that laminated wood products are distinct from plywood as may be demonstrated by the

classification system of wood-based composites (*i.e.* the classification of wood material products

adhesively bonded together), which categorizes "laminated wood" and "plywood" into distinct

wood-based composite classes with different classifications and performance standards.[51]

Record evidence describes the classification for plywood as those wood material products

consisting of a layer, also termed "ply" or "plies," of either a single ply or of two or more plies

laminated together with their grain direction parallel.[52]  This description contradicts Commerce's

decision that all plywood is a laminated structure, as plywood is described in the classification of

wood-based composite materials as including those materials consisting of a single ply.[53]  This

description indicates that a single layer of plywood may or may not be laminated, depending on

whether the layer consists of a single ply or of two or more plies laminated together.[54]  For this

reason, the Court stated that the record evidence supports the determination that "plywood" and

"laminated wood" are distinct products covered by clearly differentiated HS subcategories.[55]

Moreover, Baroque Timber reported that all its purchases of plywood during the POR

consisted of beech or eucalyptus wood, *i.e.* non-coniferous woods.[56]  Baroque Timber provided a

purchase invoice contemporaneous to the POR that is representative of its plywood purchases

---

[50] *See* Baroque Timber Case Brief at 6-7.
[51] *See* Baroque Timber Rebuttal Benchmark Submission at Exhibit 4c; *see also Third Remand Opinion and Order* at
42.
[52] *See* Baroque Timber Rebuttal Benchmark Submission at Exhibit 4c at p. 11-5 to 11-6.
[53] *Id*.
[54] *See Third Remand Opinion and Order* at 42.
[55] *Id.* at 43-44.
[56] *See* Baroque Timber's Letter, "Baroque Timber New Subsidy Allegations Questionnaire Response," dated
November 12, 2019, at 1-2.

during that time period, further demonstrating its plywood purchases are not covered by HS

4412.99, which requires the covered product to contain an outer layer of coniferous wood.[57]

Therefore, Commerce finds that there is sufficient record evidence to support the

respondent's claim that it did not purchase plywood covered by HS code 4412.99.[58]  Consistent

with Commerce's practice to normally rely on data reflecting the narrowest category of products

encompassing the input product used by the respondent, when substantiated with adequate

supporting documentation, we are excluding data for products which Baroque Timber did not

purchase from the benchmark calculation for plywood for LTAR for Baroque Timber.[59]

Specifically, we are excluding data submitted by interested parties for HS code 4412.99 from

Baroque Timber's benchmark calculation for the plywood for LTAR program, because Baroque

Timber provided evidence that explicitly demonstrates HS 4412.99 covers products not

comparable to the input product used by Baroque Timber in the production of subject

merchandise during the POR.[60]  Further, based on the Court's remand noting that the record

demonstrates that "plywood" and "laminated wood" are distinct products, we find HS category

4412.99 is not reflective of products comparable to the plywood input used in wood flooring

production by Baroque Timber.  Subsequently, we have removed data covering HS 4412.99 from

the calculation of the plywood input benchmark used to calculate the plywood for LTAR

program benefit.  Accordingly, the new subsidy rate calculated for Baroque Timber under the

---

[57] *See* Baroque Timber Rebuttal Benchmark Submission at Exhibit 1a.
[58] *See Third Remand Opinion and Order* at 47.
[59] *See, e.g. Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review; 2015*, 83 FR 34828 (July 23, 2018), and accompanying IDM at Comment 3; *see also Certain Uncoated Paper from the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 81 FR 3110 (January 2, 2016), and accompanying IDM at 25-26.
[60] *See* Baroque Timber Rebuttal Benchmark Submission at 3 and Exhibit 1.

plywood for LTAR program is 9.35 percent *ad valorem*.[61]  The revised total *ad valorem* subsidy rate attributable to Baroque Timber during the POR is 13.18 percent.[62]

## C.    Whether to Revise the Veneer Benchmark for Jiangsu Guyu

Finally, in its *Third Remand Opinion and Order*, the Court upheld Commerce's decision to include Jiangsu Senmao's purchases of poplar core sheets in the provision of veneers for LTAR program[63] and Commerce's denial of Jiangsu Guyu's request to reopen the record to solicit new factual information to benchmark its purchases of poplar core sheet following the *Preliminary Results* in the underlying review.[64]  However, the Court found that Commerce did not adequately explain the reasons that benchmark data on the record for veneers are suitable for valuing Jiangsu Guyu's purchases of poplar core sheet, in terms of Commerce's practice, regulations, and the Tariff Act of 1930, as amended (the Act).[65]  After reconsideration of the record, Commerce continues to find that the benchmark selected in the *Preliminary Results* to benchmark poplar core sheet is sufficiently comparable to Jiangsu Guyu's purchases of poplar core sheet for the reasons explained below.

Under 19 CFR 351.511(a)(2), Commerce measures the remuneration received by a government authority for goods or services against comparable benchmark prices to determine whether the government authority provided goods or services for LTAR.  In accordance with 19 CFR 351.511(a)(2)(i), Commerce will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or services, *i.e.* market prices from actual transactions within the country under review (*e.g.*, actual sales, actual

---

[61] *See* Memorandum, "Calculation for Draft Results of Redetermination Pursuant to Court Remand," dated July 16, 2025, at Attachment.
[62] *Id.*
[63] *See Third Remand Opinion and Order* at 54.
[64] *Id.* at 58-60.
[65] *Id.* at 62.

imports, or competitively run government auctions) (tier one). If there is no useable market-determined price, Commerce will then compare the government price to a world market price where it is reasonable to conclude that such a price would be available to purchasers in the country under review, *i.e.* world market prices that would be available to purchasers in the country under review (tier two). If no comparable price is available, Commerce will measure the adequacy of remuneration by assessing whether the government price is consistent with market principles (tier three).[66] In the underlying review, Commerce found that the domestic markets for veneer input purchases were distorted by the GOC's involvement in those markets and, accordingly, relied on world market (tier two) prices to measure the adequacy of remuneration for the provision of veneers for LTAR.[67]

Specifically, section 771(5)(E)(iv) of the Act requires Commerce to determine the adequacy of remuneration "in relation to prevailing market conditions for the good or service being provided," including the "price, quality, availability, marketability, transportation, and other conditions of purchase or sale."[68] Section 351.511(a)(2)(i) of Commerce's regulations requires Commerce, when creating its benchmark to measure the adequacy of remuneration, to consider "product similarity; quantities sold, imported, or auctioned; and other factors affecting comparability."[69] Moreover, it is Commerce's well established practice to rely on data reflecting the narrowest category of products encompassing the input product in question.[70] Jiangsu Guyu reported that its affiliated producer of subject merchandise, Jiangsu Shengyu Flooring Co., Ltd. (Shengyu), purchased poplar core sheets during the POR, an input used in the production of

---

[66] *See* 19 CFR 351.511(a)(2).
[67] *See Preliminary Results* PDM at 14, unchanged in *Final Results*.
[68] *See* section 771(5)(E)(iv) of the Act.
[69] *See* 19 CFR 351.511(a)(2)(i).
[70] *See Final Results* IDM at 37.

plywood.[71]  As described above, in the *Final Results*, Commerce found that such purchases are classifiable as veneers based on the scope language of the *Order*.[72]  Commerce further found that record benchmark data to measure the adequacy of remuneration with respect to face veneer (*i.e.*, as opposed to other types of veneer) purchases were sufficient to value Jiangsu Guyu's poplar core sheet purchases, because such data included data for "other species" of wood, and thereby were not limited to certain reported species.[73]

Commerce continues to find record benchmark data sufficient and usable to calculate a benchmark for Jiangsu Guyu's poplar core sheet purchases under the provision of veneers for LTAR program.  Jiangsu Guyu reports that, in comparison to face veneer, its poplar core sheet purchases are made of [                                        ], consisting of a [                                        ].[74]  Additionally, Jiangsu Guyu reports that its poplar core sheets are [          ] and have a thickness of between [        ] millimeters (mm).[75]  Based on these physical characteristics and the descriptions provided for the record benchmark data used in the *Final Results*, these data are appropriate to value Jiangsu Guyu's poplar core sheet.[76]

Specifically, as explained above, in the *Final Results* Commerce used HS subheadings 4408.10, 4408.39, and 4408.90 to calculate the benchmark for Jiangsu Guyu's poplar core sheet purchases.[77]  All of these HS subheadings describe "Sheets for veneering (including those obtained by slicing laminated wood), *for plywood* or for similar laminated wood and other wood,

---

[71] *See Preliminary Results* PDM at 34 (citing Jiangsu Guyu's Letter, "Response to New Subsidy Allegations," dated November 8, 2019 (Jiangsu Guyu NSA Response), at 2).
[72] *See Final Results* IDM at Comment 3.
[73] *Id.* at Comment 3.
[74] *See* Jiangsu Guyu NSA Response at 1-2; *see also* Jiangsu Guyu's Letter, "Response to Second Supplemental Questionnaire," dated January 8, 2020, at 2-3.
[75] *Id*.
[76] *See* Baroque Timber Benchmark Submission at 1; *see also* Petitioner Benchmark Submission at 3.
[77] *See Final Results* IDM at Comment 3.

*sawn lengthwise, sliced or peeled*, whether or not planed, sanded spliced or joint-ended, *of a thickness not exceeding 6mm*" (emphasis added).[78]  Rather than disqualifying these benchmark data, the reported end-use and physical characteristics of Jiangsu Guyu's poplar core sheet (*i.e.*, used to make plywood, [              ], and [          ] thick) make plain that such merchandise would be covered under these HS subheadings.

Although Jiangsu Guyu and other parties have challenged the composition of Commerce's veneer benchmark, parties have not offered specific arguments based on the descriptions of the HS subheadings used to calculate the veneer benchmark.  Instead, interested parties claim that such benchmark data exclusively describe "face-grade veneers," without evidence.[79]  We do not disagree that poplar core sheet and face-grade veneers have different physical characteristics, but find that, based on their descriptions, HS subheadings 4408.10, 4408.39, and 4408.90 are descriptive of both.  Jiangsu Guyu provided limited information about its poplar core sheet and how such merchandise would be categorized in HS subheadings, besides the aforementioned statements about its physical characteristics and end-use.  Consequently, after evaluating the reported end-use and physical characteristics of poplar core sheets, Commerce concludes that poplar core sheets are described by the UN Comtrade data already on the record and, thus, finds these data are suitable for benchmarking Guyu's purchases of poplar core sheet.  Therefore, Commerce makes no change to the *Final Results* and continues to find Jiangsu Guyu's purchases of poplar core sheet classifiable as veneers, and that record benchmark data is sufficient to measure the adequacy of remuneration for such purchases during the POR.

---

[78] *Id*; *see also Third Remand Opinion and Order* at 62; and Baroque Timber Second Benchmark Submission at Exhibit 2 at page 44-14.

[79] *See, e.g.*, Jiangsu Guyu's Letter, "Resubmittal of Case Brief," dated March 19, 2020, at 10.

## IV.    INTERESTED PARTY COMMENTS

We have addressed the comments received in the Fine Furniture Draft Remand

Comments.  As stated above and explained further below, Fine Furniture supports Commerce's

examination of Jiangsu Senmao as a mandatory respondent in the underlying administrative

review and Commerce's removal of HS 4412.99 from Baroque Timber's benchmark calculation

for the provision of plywood for LTAR program.[80]

**Issue 1:    Whether Commerce's Redetermination in Selecting Jiangsu Senmao as an Additional Mandatory Respondent is Supported by Substantial Evidence**

*Fine Furniture Draft Remand Comments:*

The following is a verbatim summary of argument submitted by Fine Furniture.  For

further details, *see* Fine Furniture Draft Remand Comments at 2.

> Pursuant to the order of the {CIT}, {Commerce} properly selected {Jiangsu Senmao} as an additional respondent for individual examination because Jiangsu Senmao accounted for one of the two largest exporters and/or producers of subject merchandise following deselection of {Jiangsu Guyu}.

**Commerce's Position:**

Fine Furniture agrees with Commerce's redetermination that examines Jiangsu Senmao

as an additional mandatory respondent and calculates an individual subsidy rate attributable to

Jiangsu Senmao for the POR.[81]  No interested party contested Commerce's finding; therefore,

Commerce continues to select Jiangsu Senmao as a mandatory respondent in the underlying

administrative review and find that the calculated, individual subsidy rate attributable to Jiangsu

Senmao during the POR is 2.45 percent *ad valorem.*

---

[80] *See* Fine Furniture Draft Remand Comments at 2-4.
[81] *Id.*

**Issue 2:**    **Whether Commerce's Redetermination in Removing HS 4412.99 from Baroque Timber's Benchmark Calculation for the Plywood for LTAR Program is Supported by Substantial Evidence**

*Fine Furniture Draft Remand Comments:*

The following is a verbatim summary of argument submitted by Fine Furniture.  For

further details, *see* Fine Furniture Draft Remand Comments at 3-4.

> Commerce's exclusion of HS 4412.99 from the benchmark calculation for plywood for {LTAR} program of {Baroque Timber} is supported by substantial evidence because Baroque Timber did not use or purchase laminated wood during the {POR}.

**Commerce's Position:**

Fine Furniture agrees with Commerce's redetermination that revises the benchmark

calculation for the provision of plywood for LTAR program to remove HS 4412.99, thereby

reflecting the most comparable benchmark prices on which Commerce measures the adequacy of

remuneration for Baroque Timber's plywood purchases during the POR.[82]  No party contested

Commerce's finding; therefore, Commerce continues to find the calculated subsidy rate for

Baroque Timber under the plywood for LTAR program to be 9.35 percent *ad valorem*.

## V.    FINAL RESULTS OF REDETERMINATION

Consistent with the *Third Remand Opinion and Order*, we have examined Jiangsu

Senmao as a mandatory respondent in the underlying administrative review and reconsidered the

benchmark calculations for the provision of plywood for LTAR program with respect to Baroque

Timber and the provision of veneer for LTAR program with respect to Jiangsu Guyu.  As a

result, we have assigned a calculated, individual CVD subsidy rate of 2.45 percent *ad valorem* to

Jiangsu Senmao.  In addition, we further explained the suitability of the benchmark data on the

record for the provision of veneer for LTAR program to describe Jiangsu Guyu's purchases of

---

[82] *Id.*

poplar core sheet, and revised the benchmark calculation for the provision of plywood for LTAR program to reflect the most comparable benchmark prices on which Commerce measures the adequacy of remuneration. The resulting revised total *ad valorem* subsidy rate attributable to Baroque Timber is 13.18 percent and the rate for Jiangsu Guyu remains 122.94 percent.

Finally, based on the revised rate for Baroque Timber and the new individually calculated rate for Jiangsu Senmao, we have calculated a revised rate of 10.02 percent for the non-selected companies under review.[83] Consistent with Commerce's *Second Remand Results* and as sustained by the Court, we continue not to rely on the rate assigned to Jiangsu Guyu in calculating the non-selected company rate.

If Commerce's final results of redetermination are sustained by the Court, Commerce intends to publish a *Timken*[84] notice with the amended final determination in the *Federal Register* and issue appropriate customs instructions to CBP, consistent with the discussion above.

8/7/2025

X *Chris P. Abbott*

Signed by: CHRISTOPHER ABBOTT